# Exhibit C
# (Carroll Affidavit)

*Exhibit C*
*Carroll Affidavit*

# DECLARATION

**AHN SUN JU** of 101-909 Hyundai APT, #75, Dunchon-dong, Gangdong-gu, Seoul, Korea **STATES AS FOLLOWS:-**

1.  I read and speak English. The information in this Declaration is based on my personal knowledge of this matter, but I have prepared this Declaration with the assistance of attorneys, for clarity.

2.  I am the Manager of the Business Team of Sunwoo Merchant Marine Co Ltd ("Sunwoo") a company incorporated and based in Korea. I am familiar with the disputes which have arisen in relation to a cargo of coils and bundles of steel bars loaded in Changshu, China on about 21 May 2007 and discharged in Jeddah, Saudi Arabia in about June 2007 (to which I refer as the "Cargo") on the vessel "WORADA NAREE" (to which I refer as "the Vessel").

3.  These disputes concern a claim which has been notified to the Vessel's Owners, Precious Pearls Ltd of Thailand ("Precious") by the named notified party in the relevant bills of lading (Saudi Group for Construction Materials - "SGCM"). The Cargo was apparently noted to have pre-shipment rust damage on loading and the original bill of lading naming Nanyuan Shipping Shipping Co Ltd as Carrier was claused noting this damage. I refer to this as the "Original Bill". However, I understand that SGCM are claiming against Precious under a second bill of lading, which indicates that the Cargo was loaded clean on board and naming Precious as carrier. I refer to this as the "Clean Bill".

4.  In a Verified Complaint issued on 24 September 2007 in the New York District Court, Precious have asserted a claim against Tiger International Line Pte Ltd of Singapore ("Tiger") and Sunwoo. The basis of Precious' claim (set out in paragraph 12 of the Complaint) is that Tiger fraudulently obtained the issuance of the Clean Bill. As a consequence, Precious has obtained a Rule B Attachment in the amount of US$ 8,500,000 against Tiger and Sunwoo. To prevent further serious disruption to Sunwoo's and Tiger's business (both companies have various vessels on time charter, where the hire is paid in US dollars) and strictly without prejudice, Sunwoo has deposited the sum of US$ 8,500,000 in New York.

1

5.  The relevant charterparty chain is as follows. On 11 April 2007, Precious chartered the Vessel to Tiger on an amended NYPE time charter for a period of minimum 11 months up to about 13 months plus 15 days in Charterers' option. Tiger's performance under this charterparty was guaranteed by Sunwoo on 16 April 2007 (on the terms attached hereto as Exhibit "1" – the "Guarantee").

6.  On 9 May 2007, Tiger sub-chartered to Sunwoo again on terms of an amended NYPE for a period of minimum 11 months up to about 13 months.

7.  I should explain the relationship between Tiger and Sunwoo. The two companies have a close business relationship, but are not part of the same group. Effectively, Tiger has been used as a chartering intermediary for tax purposes. This is also the reason for the existence of the Guarantee.

8.  On 11 May 2007, Sunwoo sub-chartered the Vessel to NASCO or other nominee for two laden legs, duration of about 65 days. A copy of this Charterparty is at Exhibit "2". NASCO is an abbreviation for Nanjing Ocean Shipping Co Ltd. Although NASCO have never made an express nomination of a substitute charterer to Sunwoo, their position is that the nominated charterer was a company called Nanyuan Shipping Co Ltd ("Nanyuan"). This position is disputed by Sunwoo.

9.  Sunwoo have a commercial relationship at arms length with NASCO. Otherwise, NASCO are not in any way related to Sunwoo.

10. Upon sub-chartering the Vessel, NASCO issued voyage instructions to the Master (Exhibit "3"). Thereafter, all instructions to the Master and the Vessel in relation to cargo operations came from NASCO. The first voyage under the NASCO/Sunwoo charterparty was from Changshu to Jeddah. The Cargo was carried on this voyage. The Original Bill (which was claused to reflect pre-shipment damage) was issued by Nanyuan "as carrier" and signed by Changshu Hotheart International Shipping Agency Co Ltd ("Changshu Hotheart") as agents. As can be seen from the voyage instructions at Exhibit "3" Changshu Hotheart were NASCOs' appointed agents in Changshu.

11. Changshu Hotheart have also apparently signed the Clean Bill (under which cargo interests have made a claim in Saudi Arabia against Precious).

2

12.  I can confirm that neither Sunwoo, nor Tiger were involved with the loading or discharging of the Cargo or the booking of the Cargo and the issue of any related bills of lading. Further, no instructions were given by Sunwoo or Tiger to Changshu Hotheart. It is my belief that this was all dealt with by NASCO or Nanyuan. I can also confirm that Sunwoo and Tiger had nothing to do with the issue of the Clean Bill in connection with which this dispute has arisen. Indeed, Tiger and Sunwoo first became aware of the existence of the Clean Bill, when they were notified about SGCM's claim by Precious on about 19 September 2007.

13.  The allegation in paragraph 12 of the Verified Complaint that Tiger acted fraudulently is therefore misconceived and incorrect. Our London solicitors instructed in this matter (Hill Dickinson LLP) have asked Precious' London representatives to produce evidence of the alleged fraud by Tiger, but nothing has been forthcoming.

14.  I understand that this claim has only been notified to Precious and that (1) no proceedings have been commenced yet against Precious by SGCM (2) Precious has not settled or paid SGCM's claim and (3) security has not even been requested yet by SGCM from Precious.

15.  The action taken by Precious and the steps we have been forced to take (in depositing a very large sum of money) have severely disrupted the business of Sunwoo and Tiger. It has also put us to considerable inconvenience and expense. In addition and of great concern, is the nature of the fraud allegations which have been made against Tiger and by implication against Sunwoo, whose performance Sunwoo has guaranteed. At Exhibit "4", is an article which appeared in Tradewinds magazine (a widely read shipping circular) on 5 October 2007. This is based on the Verified Complaint filed by Precious. The article makes reference to fraud and states that Tiger issued the Clean Bill. Sunwoo are apparently associated with this. As I have said above, this allegation is misconceived and incorrect. Although it is early days, it is possible that the Tradewinds article (which has appeared solely as a result of Precious' Complaint) will damage Sunwoo's commercial reputation.

16.  Finally, disputes under the Tiger/Precious charterparty are subject to English law and London Arbitration. Disputes under the Guarantee are subject to English law and the jurisdiction of the English High Court. I can confirm that at

the time of making this Declaration, Precious have taken no steps to commerce arbitration or High Court proceedings, despite having attached a very large sum of money in New York in connection with this dispute.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

.................................................

**AHN SUN JU**

Dated: Seoul, Korea 16 October 2007

4

# Exhibit 1
## (Ahn Sun Ju Declaration)

*Exhibit 1*
*Ahn Sun Ju Declaration*

 # SUNWOO MERCHANT MARINE CO., LTD.

DATE : 16TH APR 2007

TO : M/S. PRECIOUS PEARLS LIMITED, BANGKOK

THE OWNERS OF THE M.V. WORADA NAREE

DEAR SIRS,

VESSEL: M.V. WORADA NAREE

CHARTERPARTY: MADE AND CONCLUDED IN BANGKOK ON 11TH APR 2007 ON NYPE FORM

DESCRIPTION: TIME CHARTER PERIOD OF MINIMUM 11 MONTHS UPTO ABOUT 13 MONTHS IN CHARTERERS OPTION

CHARTERERS:  M/S TIGER INTERNATIONAL LINE PTE., LTD.,
20, PRINCE EDWARD ROAD, #03-10,
PSA FINGER PIER BUILDING,
SINGAPORE 079213.

GUARANTORS : M/S SUNWOO MERCHANT MARINE CO., LTD., SEOUL.

IN CONSIDERATION OF YOUR HAVING ENTERED INTO THE CAPTIONED CHARTERPARTY DATED 11TH APR 2007 WITH M/S. TIGER INTERNATIONAL LINE PTE., LTD., SINGAPORE, WE, M/S. SUNWOO MERCHANT MARINE CO., LTD., SEOUL, HEREBY UNCONDITIONALLY AND IRREVOCABLY GUARANTEE THE PERFORMANCE OF THIS CHARTER BY THE SAID CHARTERERS, AND AGREE AS FOLLOWS :

1. TO PAY YOU IMMEDIATELY ON DEMAND THE UNDISPUTED HIRE, OTHER UNDISPUTED AMOUNTS AND ARBITRATION AWARDS, IF ANY, DUE TO YOU UNDER THE CAPTIONED CHARTERPARTY IF SAME IS NOT RECEIVED BY YOU.

2. TO INDEMNIFY YOU, YOUR SERVANTS AND AGENTS AND TO HOLD ALL OF YOU HARMLESS IN RESPECT OF ANY LIABILITY, LOSS, DAMAGE OR EXPENSE OF WHATSOEVER NATURE WHCH YOU MAY SUSTAIN BY REASON OF NON-PERFORMANCE AND/OR ANY BREACH OF THE CAPTIONED CHARTERPARTY.

3. IN THE EVENT OF ANY PROCEEDINGS BEING COMMENCED AGAINST YOU OR ANY OF YOUR SERVANTS OR AGENTS IN CONNECTION WITH NON-PERFORMANCE AND/OR ANY BREACH OF THE CAPTIONED CHARTERPARTY, TO PROVIDE YOU OR THEM ON DEMAND WITH SUFFICIENT FUNDS TO DEFEND THE SAME.

4. IF, IN CONNECTION WITH THE NON-PERFORMANCE AND/OR BREACH OF THE CAPTIONED CHARTERPARTY, THE VESSEL OR ANY OTHER VESSEL OR PROPERTY IN THE SAME OR ASSOCIATED OWNERSHIP, MANAGEMENT OR CONTROL, SHOULD BE ARRESTED OR DETAINED OR SHOULD THE ARREST OR DETENTION THEREOF BE THREATENED, OR SHOULD THERE BE ANY INTERFERENCE IN THE USE OR TRADING OF THE VESSEL (WHETHER BY VIRTUE OF A CAVEAT BEING ENTERED ON THE VESSEL'S REGISTRY OR OTHERWISE HOWSOEVER), TO PROVIDE ON DEMAND SUCH BAIL OR OTHER SECURITY AS MAY BE REQUIRED TO PREVENT SUCH ARREST OR DETENTION OR TO SECURE THE RELEASE OF SUCH VESSEL OR PROPERTY OR TO REMOVE SUCH INTERFERENCE AND TO INDEMNIFY YOU IN RESPECT OF ANY LIABILITY, LOSS, DAMAGE OR EXPENSE CAUSED BY SUCH ARREST OR DETENTION OR THREATENED ARREST OR DETENTION OR SUCH INTERFERENCE, WHETHER OR NOT SUCH ARREST OR DETENTION OR THREATENED ARREST OR DETENTION OR SUCH INTERFERENCE MAY BE JUSTIFIED.

5. THE LIABILITY OF EACH AND EVERY PERSON UNDER THIS GUARANTEE SHALL BE JOINT AND SEVERAL AND SHALL NOT BE CONDITIONAL UPON YOUR PROCEEDING FIRST AGAINST

 # SUNWOO MERCHANT MARINE CO., LTD.

ANY PERSON, WHETHER OR NOT SUCH PERSON IS PARTY TO OR LIABLE UNDER THIS GUARANTEE.

6. THIS GUARANTEE SHALL REMAIN VALID AND IN FULL FORCE AND EFFECT UNTIL 730 DAYS AFTER THE DATE THE VESSEL IS REDELIVERED TO THE OWNERS BY THE CHARTERERS, OR THE DATE THE VESSEL WOULD HAVE BEEN REDELIVERED IF THE VESSEL IS LOST, AND ANY CLAIM FOR WHICH NOTICE HAS BEEN RECEIVED WITHIN THE 730 DAYS SHALL BE SUBJECT TO THIS GUARANTEE, UNTIL THE CLAIM HAS BEEN PAID OR OTHERWISE RESOLVED.

7. THIS GUARANTEE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW AND EACH AND EVERY PERSON LIABLE UNDER THIS INDEMNITY SHALL AT YOUR REQUEST SUBMIT TO THE JURISDICTION OF THE HIGH COURT OF JUSTICE OF ENGLAND.

YOURS FAITHFULLY,

FOR AND ON BEHALF OF

M/S. SUNWOO MERCHANT MARINE CO., LTD., SEOUL

THE GUARANTORS

For and on behalf of
SUNWOO MERCHANT MARINE CO., LTD.

..........................................
Authorized Signature (s)
--------------------------

**S.J AHN, D.G. Manager**
**Chartering Team**

# Exhibit 2
## (Ahn Sun Ju Declaration)

*Exhibit 2*
*Ahn Sun Ju Declaration*

# Time Charter

**GOVERNMENT FORM**
Approved by the New York Produce Exchange
November 6th, 1913-Amended October 20th, 1921 ; August 6th, 1931 ; October 3rd, 1946

1. **This Charter Party,** made and concluded in ........ *Seoul* ........ 11ᵗʰ ............... day of ........ *May* ........ 9ᵗʰ. ........ *2007* ........

2. B e t w e e n ....................................................................... *Sunwoo  Merchant  Marine  Co.,Ltd,  Seoul*

3. Owners of the good ....... *Thai Flag*........................... steamship/Motorship *"WORADA NAREE"*............ of ........ *(See Clause 62)*

4. of ................ 15269 ........ tons gross register, and ..9023........ tons net register, having engines of ................ indicated horse power

5. and with hull, machinery and equipment in a thoroughly efficient state, and classed ................ *NKK* ........

6. at ................ of about ..11555871.59/1097830.34........................... cubic feet bale capacity, and about ................ 25424................ tons of 2240 lbs.

7. deadweight capacity (cargo and bunkers, ~~including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,~~

8. ~~allowing a minimum of fifty tons~~) on a draft of 10.229........ feet Meter... inches on Summer *salt water draft* ... freeboard, inclusive of permanent bunkers,

9. which are of the capacity of about .................................... tons of fuel, and capable of steaming, fully laden, under good weather

10. conditions about 12.50.......... knots on a consumption of about 24.0 Metric tons of ~~best Welsh coal best grade fuel oil best grade Diesel oil,~~ IFO ( 180CST) plus about2.0metric tons MDO

11. now ....... Trading ...............................................................................................................................................

12. ........and ........ *NASCO OR OTHER NOMI* ..... Charterers of the City of ........ china .............................................

13. **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14. about ....... **TWO(2) LADEN LEGS TIME CHARTER** *via safe port(s), safe anchorage(s) safe berth(s), safe anchorage(s) always afloat always accessible always within IWL About 65days to Max 80days with Via Ice-free ports acess with lawful, harmless cargoes always subject to the trading and cargo exclusions of this charter party. Charterers option to breach Iwl, always subject to Owners underwriters approval, against paying owners the additional premium for such breach. The additional premium to not excess that quote by Lloyds of London. Charterers to pay the additional premium upon owners faxing their underwriters /brokers invoice and the original. Invoice to follow later by mail. Vessel not to ordered to iceboard ports/areas. vessel not to force ice notice of readiness follow ice-breakers. within below mentioned trading limits.*

15. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

16. the fulfillment of this Charter Party................................................................................................................

17. Vessel to be placed at the disposal of the Charterers, *On dropping last outward sea pilot station   ZHOUSHAN*

18. *any time day or night Sunday and holidays included*

19. ~~or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No.6),~~ as

20. ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No.5.~~

21. Vessel on her *arrival loading port* delivery to be

22. ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the *ordinary cargo* service and to be so maintained throughout the currency of this

23. charter party, having water ballast, winches and ................................................................................................

24. donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

25. time (and with full complement of officers, seamen, engineers and firemen according to regulations for a vessel of her tonnage), to be employed, in carrying lawful merchandies, ~~including petroleum or its products, in proper containers,~~ excluding ........ *(See Clause 61)* ..............................................

*Cna Shipping Co., Ltd.*

26. (vessel is not to be employed in the carriage of Live Stock, ~~but Charterers are to have the privilege of shipping a small number on deck at their risk,~~
27. ~~all necessary fittings and other requirements to be for account of Charterers~~), in such lawful trades, between safe port and/or ports ~~in British North~~
28. ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~ and/or Europe between
29. ~~Mexico, and/or South America.~~
30. ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~
31. ~~October 31st and May 15th, Hudson Bay and all unsafe ports , also excluding, when out of season, White Sea, Black Sea and the Baltic~~
32. ...... Trading exclusion **(See Clause No 88)**
33. ......
34. ......
35. as the Charterers or their Agents shall direct, on the following conditions.
36. 1. That the Owners shall provide and pay for all provisions, wages, drinking water, immigration and consular shipping and discharging fees of the Crew: shall pay for the
37. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
38. the vessel in a thoroughly efficient state in hull with all inspection certificates necessary to comply with all current requirements at port of call and canals. Cargo space, machinery
    and equipment for and during the service
39. 2. That **whilst on hire** the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Pilotages, Agencies, **Canal fee, boatage for with Charterer's business,** Commissions,
40. Consular Charges (except those pertaining to the Crew ) and flag, and all other usual expenses including river canal, dues and waterway tolls, taxes on cargo freight and hire except ~~those before states except those before stated,~~ but when the vessel puts into
41. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42. illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43. charter to be for Charterers account. ~~All other fumigations to be for Charterers account after vessel has been on charter for a continuous period~~
44. ~~of six months or more.~~ See Clauses No 40,
45. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46. Owners to allow them the use of any dunnage, and shifting boards already aboard vessel. ~~Charterers to have the privilege of using shifting boards~~
47. ~~for dunnage, they making good any damage thereto.~~ See Clause NO 43.
48. 3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on
49. board the vessel ~~at the current prices in the respective ports, the vessel to be delivered with not less than~~ ...... tons ~~and not more than~~
50. ...... ~~tons and to be re-delivered with not less than~~ ...... tons ~~and not more than~~ ...... tons—See Clause No 30..
51. 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of **USD 21,500 daily including over time payable**
52. **15 days in advance** ...... ~~United States Currency per ten on vessel's total deadweight carrying capacity, including bunkers and~~
53. ~~stores, on~~ ...... ~~summer freeboard, per Calendar Month,~~ commencing on and from the day **and time** of her delivery, as aforesaid, and at
54. and after the same rate for any part of a Month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55. wear and tear excepted, to the Owners (unless lost) at **on dropping last outward sea pilot, See Clause No 104.**
56. ......unless otherwise mutually agreed. Charterers are to give Owners not less than ...... 20/15/10/7 ...... days
57. notice of vessels expected date of re-delivery, and probable port, *if any time during the period  of this charter the voyage involves sailing from east Africa including islands to Red Sea, Gulf of Oman, Persian Gulf, Arabian Gulf or any other ports/areas on this rout and/or vice vera,the vessel not to sail/pass between the somalian coast and scotra island but to always sail/pass of socotra island which not to be considered as a deviation...*
58. 5. Payment of said hire to be made in owners nominated bank account ~~New York~~ in cash in United States Currency, **every 15 days** ~~semi-monthly~~ in advance, and for the last

Cna Shipping Co., Ltd.

59. part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60. due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61. hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-
62. terers after serving minimum 3 banking days notice, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working~~
~~day~~

63. ~~following that on which written notice of readiness has been give to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~
64. ~~to have the privilege of using vessel at once, such time used to count as hire.~~ ................................................................................................
65. Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, Subject to owners' approval, by the Charterers or their Agents, subject
66. to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67. of such advances.

68. 6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *any* place that Charterers or their Agents may
69. direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessel to safely~~
70. lie aground. *In BuenaVentura and River Plate ports only where it is customary NAABSA ports with soft mud which will not cause any damage to vessel, and*
    *nor other ports subject to owners prior approval which not to be unreasonably withheld.*

71. 7. That the whole reach of the Vessel's Hold, Decks, and usual place of loading (not more than she can reasonably stow and carry), also
72. accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73. tackle, apparel, furniture, provisions, stores and lash, secure and discharge fuel. ~~Charterers have the privilege of passengers as far as accommodations allow. Charterers~~
74. ~~paying Owners ..... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~
75. ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~
76. 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77. boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78. agency, and Charterers are to load, stow, and trim the cargo at their expense under the supervision of the Captain, who if requested to do so by charterers, is to sign Bills of Lading for
79. cargo as presented, in conformity with Mate's *and* ~~or~~ Tally Clerk's receipts. See Clause No 56. No liners Bills of Lading to be issued in this charter party
80. 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81. receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.
82. 10. That the Charterers shall have permission to appoint a Supercargo, who shall *subject to availability of life-boat capacity/accommodation and signing Letter of*
    *Indemnity in Owners P & I Club format/wordings* accompany the vessel and see that voyages are prosecuted
83. with the utmost despatch. He is to be furnished with free and suitable accommodation, and same fare as provided for Captain's table, Charterers paying at the
84. rate of $10.00 per day, Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally
85. Clerks, Stevedore's Foreman, etc., Charterers ~~paying at the current rate USD5.00 per meal, for all such victualling~~ *(See Clause No 74)*.
86. 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87. Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88. terers, their Agents and surveyor or Supercargo, when required, with a true copy of daily Logs, deck and engine logs extracts, in English on from supplied by charterers showing the course
    of the vessel and distance run and the con-
89. sumption of fuel. .............................................................................................................................

90. 12. That the Captain shall use diligence in caring for the ventilation of the cargo. .......................................
91. 13. ~~That the Charterers shall have the option of continuing this charter for a further period.~~
92. ..............................................................................................................................................

**15 days** half month or

93. on giving written notice thereof to the Owners or their Agents .. days previous to the expiration of the first named term, or any declared option.

94. 14. That if required by Charterers, time not to commence before 0001Hours 13th May 2007 and should vessel

95. not have given notice of delivery written notice of readiness on or before 2400Hours 18th May 2007 but not later than 4 p.m. Charterers or

96. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. ...............

97. 15. That in the event of the loss of time from deficiency **and/or default** of officer, and crew and/or strike or sabotage by officers/crew or deficiency of or stores, fire,

98. grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause except as a result of default of or

99. preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

100. defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101. thereof, and all direct relevant undisputed extra expenses shall be deducted from the hire. **See Clause No 52.**

102. 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103. returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104. Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessel in distress, and to deviate for the

106. purpose of saving life and property. ...............

107. 17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at London New York,

108. one to be appointed by each of the parties hereto, and the third by the two so chosen, their decision or that of any two of them, shall be final, and for

109. the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial *Shipping* men.

110. 18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Aver-

111. age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112. deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113. might have priority over the title and interest of the owners in the vessel. ...............

114. 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115. Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, and Rule f of

116. York Antwerp Rules 1994 at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these

117. Rules, according to the laws and usages at the port of London New York. In such adjustment disbursements in foreign currencies shall be exchanged into

118. United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at

119. the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or

120. bond and such additional security as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier

121. or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if

122. required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the

123. carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the

124. place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in

125. United States money. New Jason clause as Attached. ...............

126. In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,

127. whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the

128. goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,

losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the

*Cna Shipping Co., Ltd.*

129. goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or
130. ships belonged to strangers. ...Hire not to contribute to General Average.
131.    Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.
132. 20. Fuel used by the Vessel while on hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity and the
133. cost of replacing same, to be allowed by Owners.
134. 21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a
135. convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary at least once in every six months, reckoning from
136. time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.
137. vessel not to be dry docked whilst performing this chartering except in case of emergency.
138. .................
139. 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts as per vessel's description up to three tons, also
140. providing ropes, falls, slings and blocks as on board. If vessel is fitted with derricks capable of handing heavier lifts, Owners are to provide necessary gear for
141. same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel sufficient light as on board for night work free of expensed
      to charterers  lanterns and oil for
142. night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The
143. Charterers to have the use of any gear on board the vessel.
144. 23. Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging
145. steamer to provide one winchman per hatch to work winches day and night, as required. Charterers agreeing to pay officers, engineers, winchmen,
146. deck-hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the
147. port, or labour unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers, shore crane to be employed and paid for by charterers In the event of a disabled crane/cranes
      winch or winches, or
148. insufficient power to operate winches, Owners to pay for shore appliance engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned
149. thereby. ..................................................................................................  **See Clause No 51.**
150.    24. It is also mutually agreed that this Charter is subject all the terms and provisions of and all the exemptions from liability contained
151. in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;
152. etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clause, both
153. of which are to be included in all bills of lading issued hereunder : .........................................................................
154.                      U.S.A. Clause Paramount
155. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
156. 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
157. any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any terms of this bill of lading
158. be repugnant to said Act any extent, such terms shall be void to that extent, but no further. .  .
159.                    Both-to-Blame Collision Clause
160. If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
161. Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
162. hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss
163. or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-
164. carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non carrying ship or her
165. owners as part of their claim against the carrying ship or carrier. ..... **SEE CLAUSE No 57** . . . .

166.    25. The vessel shall not be required to *force ice or follow ice breakers nor to* enter *any ice bound port or* any ice-bound port, or any port where lights or light-ships have been or are about to be with.......

167. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

168. port or to get out after having completed loading or discharging. ..............

169.    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

170. navigation of the vessel, *acts of pilots and tugboats,* insurance, crew, and all other matters, same as when trading for their own account.

171.    27. A commission of 1.25 per cent is payable by the Vessel and Owners to to *CNA SHIPPING CO.,LTD* .

172. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter. ..............

173.    28. An address commission of 2.5 per cent payable to ... *Charterers* ....... on the hire earned and paid under this Charter.

*Clause No. 29 to 104 as attached, this charterparty form part of this charter to read as" Rider Clauses no 29 to 105 both inclusive, New both*

*to Blame collision clause, New Jason Clause, Bimco Standard War risks Clause for Time Charter 2004(Code Name) : conwartime 2004), General*

*Clause Paramount, U.S.A Clause Paramount as attached are fully incorporated to this charter party..*

*For Owners :*

SUNWOO MERCHANT MARINE CO.,LTD

*For Charterers :*

NANJING OCEAN SHIPPING CO.,LTD

*Cna Shipping Co., Ltd.*

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

CLAUSE 29

CHARTERERS TO HAVE THE OPTION OF HOLDING A SUPERFICIAL INSPECTION PRIOR TO DELIVERY AND ALSO AT ANY TIME OF THIS CHARTER. OWNERS AND MASTER GIVING EVERY FACILITY AND ASSISTANCE TO CARRY THIS OUT.

CLAUSE 30.

BUNKERS ON DELY ABT 300 MTS IFO AND ABT 40 MTS MDO. BUNKERS ON REDLY TO BE ABT THE SAME QTIES AS ACTUALLY ON BOARD ON DELY. PRICES USD. 350.00 PMT FOR IFO AND USD. 600.00 PMT FOR MDO BOTH ENDS. CHRTRS TO PAY FOR THE VALUE OF BUNKERS ON DELY TOGETHER WITH FIRST HIRE PAYMENT WITHIN 3 BANKGING DAY. CHRTRS ENTITLED TO DEDUCT THE VALUE OF ESTIMATED BUNKERS ON REDLY FROM THE LAST SUFFICIENT HIRE PAYMENT/S. CHRTRS MAY SUPPLY BUNKERS TO THE VSL ON THEIR ACCOUNT AT DELIVERY PORT PROVIDED SAME DOES NOT INTERFERE WITH OWNERS OPERATIONS AND ALWAYS SUBJECT TO OWNERS PRIOR APPROVAL. OWNERS HAVE THE RIVILEDGE TO BUNKER THE VSL FOR THEIR OWN ACCOUNT DURING THE LAST OR PENNULTIMATE VOYAGE OF THIS CHARTER WITHOUT INTERFERING WITH CHARTERERS CARGO OPERATIONS.

CLAUSE 31.

ILOHC ON REDLY USD 4,000 LUMPSUM INCL REMOVAL AND/OR DISPOSAL OF DUNNAGE/LASHING MATERIAL/DEBRIS. HOWEVER IF REMOVAL AND/OR DISPOSAL OF DUNNAGE/LASHING MATERIALS/DEBRIS BY SHORE LABOUR OBLIGATORY THEN SAME TO BE ARRANGED AND PAID BY CHRTRS. IN ANYCASE IF THE REDLY PORT IS IN U.S.A THEN REMOVAL AND/OR DISPOSAL OF DUNNAGE/LASHING MATERIALS/DEBRIS TO BE ARRANGED BY CHRTRS AT THEIR TIME AND EXPENSE PRIOR TO REDLY OF VSL. IF REMOVAL AND DISPOSAL OF DUNNAGE/LASHING METERIALS/DEBRIS ARRANGED BY CHRTRS AT THEIR TIME AND EXPENSES THEN ILOHC USD. 3,500.00 LUMPSUM

DUNNAGE/LASHING/PACKING MATERIALS TO BE USDA-APHIS APPROVED.

INTERMEDIATE HOLD CLEANING:

INTERMEDIATE HOLD CLEANINGS TO BE PERFORMED BY CHARTERERS AT THEIR RISK, TIME AND COSTS. HOWEVER IF REQUESTED BY CHARTERERS CREW TO PERFORM SAME, PROVIDED SHORE/LOCAL/LABOUR REGULATIONS AND WEATHER CONDITIONS PERMITTING, AT CHARTERERS RISK, TIME AND COSTS BUT VESSEL/OWNERS/CREW NOT RESPONSIBLE/LIABLE IN THE EVENT VESSEL FAILS SUBSEQUENT HOLD INSPECTIONS. CHARTERERS TO PROVIDE REQUIRED MATERIALS FOR CLEANING HOLDS INCLUDING FRESH WATER. CHARTERERS TO PAY OWNERS THE FOLLOWING RATES FOR EACH SUCH INTERMEDIATE HOLD'CLEANING PERFORMED BY CREW:-

   USD. 500.00 PER HOLD FOR SWEEPING ONLY.

   USD. 750.00 PER HOLD FOR SWEEPING AND WASHING.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

REMOVAL AND DISPOSAL OF DUNNAGE, LASHING MATERIALS, DEBRIS BETWEEN INTERMEDIATE VOYAGES TO BE ARRANGED BY CHARTERERS AT THEIR TIME AND EXPENSE.

THROUGHOUT THE CURRENCY OF THIS CHARTER PARTY, THE CHARTERERS SHALL REMAIN RESPONSIBLE FOR ALL COSTS AND TIME, INCLUDING DEVIATION, IF ANY, ASSOCIATED WITH THE REMOVAL AND DISPOSAL OF CARGO RELATED RESIDUES AND/OR HOLD WASHING WATER AND/OR CHEMICALS AND DETERGENTS AND/OR WASTE AS DEFINED BY MARPOL ANNEX V, SECTION 1 OR OTHER APPLICABLE RULES RELATING TO THE DISPOSAL OF SUCH SUBSTANCES.

## CLAUSE 32.

JOINT ON/OFF-HIRE SURVEYS TO ASCERTAIN THE VESSEL'S CONDITION AND THE QUANTITY OF BUNKERS REMAINING ON BOARD SHALL BE CARRIED OUT ON DELIVERY AND REDELIVERY BY MUTUALLY AGREED SURVEYORS. JOINT ON-HIRE SURVEY TO BE CARRIED OUT AT FIRST LOADING PORT AFTER DELIVERY OF VESSEL AND JOINT OFF-HIRE SURVEY TO BE CARRIED OUT AT LAST DISCHARGING PORT PRIOR TO REDELIVERY OF VESSEL. THE TIME AND COSTS FOR JOINT ON/OFF-HIRE SURVEYS TO BE SHARED EQUALLY BETWEEN OWNERS AND CHARTERERS, HOWEVER VESSEL

TO REMAIN ON-HIRE IF THE SURVEYS ARE CARRIED OUT WITHOUT INTERUPTION TO CHARTERERS OPERATIONS.

## CLAUSE 33.

CHARTERERS TO BE RESPONSIBLE FOR ALL DAMAGES CAUSED TO THE VESSEL AND/OR HER EQUIPMENTS BY STEVEDORES AND/OR CHARTERERS SERVANTS/ AGENTS. MASTER TO NOTIFY CHARTERERS OR THEIR AGENTS IN WRITING/TELEX/ CABLE/E-MAIL OF SUCH DAMAGE WITHIN 24 HOURS OF OCCURANCE, OR IN CASE OF HIDDEN DAMAGE AS SOON AS PRACTICABLE AFTER DISCOVERY OF SAME BUT IN ANY CASE PRIOR TO REDELIVERY OF THE VESSEL. MASTER TO COOPERATE WITH CHARTERERS OR THEIR AGENTS IN NOTIFYING THE PARTY WHO CAUSED THE DAMAGE AND TO HOLD THEM RESPONSIBLE. IF CHARTERERS OR THEIR AGENTS ARRANGE FOR A SURVEY OF THE DAMAGE AT CHARTERERS TIME AND COST, MASTER TO COOPERATE WITH THE SURVEYORS. DAMAGES WHICH AFFECTS VESSEL'S SEAWORTHINESS AND/OR CLASS AND/OR WORKING/TRADING CAPACITY AND/OR SAFETY OF CREW TO BE REPAIRED BY CHATERERS WITHOUT DELAY AFTER EACH OCCURRENCE IN CHARTERERS TIME AND COSTS. SUCH REPAIRS TO BE CARRIED OUT TO CLASS SURVEYORS APPROVAL. DAMAGES WHICH DO NOT AFFECT VESSEL'S SEAWORTHINESS AND/OR CLASS AND/OR WORKING/TRADING CAPACITY AND/OR SAFETY OF CREW MAY BE REPAIRED DURING VESSEL'S NEXT REGULAR DRYDOCK CONCURRENTLY WITH OWNERS WORK AND CHARTERERS TO PAY OWNERS THE REPAIR COSTS AGAINST VOUCHERS AND ALSO FOR THE TIME (INSOFAR AS THE TIME EXCEEDS THE TIME NECESSARY TO CARRY OUT OWNERS WORK). CHARTERERS HAVE THE RIGHT TO BE REPRESENTED AT THE TIME OF REPAIRS IN DRYDOCK. OWNERS TO GIVE CHARTERERS REASONABLE NOTICE OF SAME AS FAR AS POSSIBLE.

### RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
### CHARTER PARTY DATED 11TH MAY, 2007

## CLAUSE 34.

VESSEL' S CARGO GEAR, AND ALL OTHER EQUIPMENTS TO COMPLY WITH THE REGULATIONS AND/OR REQUIREMENTS IN AFFECT AT PORTS OF CALL AND CANALS AND VESSEL IS AT ALL TIMES IN POSSESSION OF VALID AND UP-TO-DATE CERTIFICATE ONBOARD NECESSARY TO COMPLY WITH SUCH REGULATIONS, AND/OR REQUIREMENTS, INCLUDING GEAR DISPUTE. ALTHOUGH OTHER

PROVISIONS OF THE TIME CHARTER MAKE IT THE RESPONSIBILITY OF OWNERS IT IS AGREED THAT, SHOULD VESSEL NOT MEET THE REGULATIONS AND/OR REQUIREMENTS, OWNERS TO MAKE IMMEDIATE CORRECTIVE MEASURES AND THAT TIME LOST THEREBY, AND STEVEDORES' STANDBY TIME AND PROVEN EXTRA EXPENSES INVOLVED TO BE FOR OWNERS' ACCOUNT.

## CLAUSE 35.

IN THE EVENT OF TIME LOSS OF DUE TO BOYCOTT OF THE VESSEL BY SHORE LABOR, LINESMEN, PILOTS AND TUGBOATS OR ARISING FROM GOVERNMENT RESTRICTIONS BY REASON OF THE TERMS AND CONDITIONS OF WHICH CAPTAIN, OFFICERS AND MEMBERS OF THE CREW ARE EMPLOYED OR IMMOBILIZING THE VESSEL, PAYMENT OF HIRE SHALL CEASE FOR THE TIME THEREBY LOST AND ALL EXTRA EXPENSES DIRECTLY INCURRED TO BE FOR OWNERS' ACCOUNT.

## CLAUSE 36.

THE VESSEL IS SUITABLE FOR GRAB DISCHARGE, AS FAR AS A VESSEL OF HER TYPE/DESCRIPTION. NO CARGO IS TO BE LOADED IN DEEP TANKS, BUNKER SPACES OR SIMILAR CONFINES COMPARTMENTS.

## CLAUSE 37.

OWNERS BY PRODUCTION OF A CERTIFICATE OF INSURANCE OR OTHERWISE SHALL SATIFY THE REQUIREMENTS OF:

A)     SECTION 311(P) OF THE UNITED STATES FEDERAL WATER POLLUTION CONTROL ACT AS AMENDED ( TITLE 33 U.S. CODE, SECTION 1321 ( P ) )

B)     ARTICLE VII OF THE INTERNATIONAL CONVENTION ON CIVIL LIABILITY FOR OIL POLLUTION DAMAGE 1969, AS FAR AS APPLICABLE.

NOTWITHSTANDING  ANYTHING WHETHER PRINTED OR TYPED HEREIN TO THE CONTRARY  : SAVE AS AFORESAID OWNERS SHALL NOT BE REQUIRED BY CHARTERERS TO ESTABLISH OR MAINTAIN FINANCIAL SECURITY OR RESPONSIBILITY IN RESPECT OF OIL OR OTHER POLLUTION DAMAGE TO ENABLE THE VESSEL LAWFULLY TO ENTER, REMAIN IN OR LEAVE

ANY PORT, PLACE, TERRITORIAL OR CONTIGUOUS WATER OF ANY COUNTRY, STATE OF TERRITORY IN PERFORMANCE OF THIS CHARTER.

C)     OWNERS WARRANT THAT THE ABOVE CERTIFICATES WILL NOT EXPIRE PRIOR TO THE TERMINATION OF THIS CHARTER PARTY. FAILING WHICH OWNERS TO BE RESPONSIBLE FOR ALL CONSEQUENCES RESULTING FROM SUCH BREACH.

RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
CHARTER PARTY DATED 11TH MAY, 2007

CLAUSE 38.

OWNERS CONFIRM VESSEL IS FITTED FOR PANAMA/SUEZ CANAL IS ACCORDANCE WITH CURRENT REQUIREMENT OF THE RESPECTIVE AUTHORITIES.

CLAUSE 39.

OWNERS GUARANTEE THAT NEITHER VESSEL NOR ANY OTHER VESSEL UNDER THEIR OWNERSHIP/MANAGEMENT/CONTROL HAS EVER CALLED AT AN ISRAEL, AND WILL NOT CALL AT ANY SUCH PRIOR TO OR DURING THE CURRENCY OF THIS CHARTER. OWNERS ALSO GUARANTEE THAT NEITHER THIS VESSEL NOR ANY OTHER VESSEL UNDER THEIR OWNERSHIP/MANAGEMENT /CONTROL IS BLACKLIST BY ANY ARAB COUNTRIES ( BUT CHARTERERS TO PROVIDE OWNERS WITH BLACK –LIST MADE BY ARAB COUNTRIES, IF ANY). OWNERS WARRANT VESSEL HAS NOT TRADED TO ISRAEL , NORTH KOREA AND NOT TRADED TO CUBA IN LAST 180 DAYS IMMEDIATELY PRIOR TO VESSEL' S DELIVERY AND VESSEL IS NOT BALCKLISTED BY A SOUTH AFRICAN PORT AUTHORITY OR GOVERNMENT.

CLAUSE 40.

VESSEL TO BE DELIVERED WITH DERATISATION OR DERATISATION EXEMTION CERTIFICATE ON BOARD, AND IF THIS DOES NOT COVER THE WHOLE PERIOD OF THIS CHARTER AND RENEWAL OF CERTIFICATE OR FUMIGATION IS NECESSARY, COST OF SAME AND DELAY OF VESSEL AND ANY PROVEN EXTRA EXPENSES INCURRED THEREFROM TO BE FOR OWNERS' ACCOUNT, UNLESS CAUSED BY PORTS CALLED OR CARGOES CARRIED UNDER THIS CHARTER PARTY.

CLAUSE 41.

NORMAL QUARANTINE TIME AND EXPENSES TO ENTER THE PORT TO BE FOR CHARTERERS' ACCOUNT, BUT ANY TIME OF DETENTION AND EXPENSES FOR QUARANTINE DUE TO PESTILENCE, ILLNESS, ETC. OF MASTER, OFFCERS AND CREW TO BE FOR OWNERS' ACCOUNT, UNLESS CAUSED  BY PORTS CALLED OR CARGOES CARRIED UNDER THIS CHARTER PARTY.

CLAUSE 42.

OWNERS TO ARRANGE AT THEIR EXPENSE THAT MASTER, OFFICERS AND CREW OF VESSEL HOLD VALID VACCINATION CERTIFICATES AGAINST YELLOW FEVER, SMALLPOX, CHOLERA OR OTHER NECESSARY HEALTH CERTIFICATES REQUIRED BY ANY COUNTRY/STATE VESSEL CALLS DURING THE CHARTER.

CLAUSE 43.

OWNERS AND MASTER TO UNDERTAKE BEST EFFORT TO CO-OPERATE WITH CHARTERERS FOR BEST STOWAGE OF CARGO AND MASTER TO MAKE EFFORTS TO COLLECT, RESTOW AND PROVIDE ANY USEFUL DUNNAGE, LASHING, ETC. INCLUDING PRESLING/WIRE SLING, NOT BROKEN FOR NEST USE

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

AFTER COMPLETION OF THE VOYAGE DURING THE CURRECNY OF THIS CHARTER, IF REQUESTED TO DO SO BY CHARTERERS.

### CLAUSE 44.

BEFORE AND UPON ARRIVAL AT A PORT, VESSEL' S OFFICERS/CREW TO SHADE UP VESSEL' S HATCHES, CRANES AND GANGWAY IN ORDER TO COMMENCE LOADING AND/OR DISCHARGING WITHOUT DELAY. FIRST  OPENING/LAST CLOSING OF ALL HATCH COVER, IF NECESSARY, SHALL BE DONE BY OFFICERS/CREW AT FREE OF EXPENSES, PROVIDED SHORE REGULATIONS AND VESSEL' S SAFETY PERMIT.

### CLAUSE 45.

ANY DELAY, EXPENSES AND/OR FINE INCURRED ON ACCOUNT OF SMUGGLING TO BE FOR CHARTERERS' ACCOUNT IF CAUSED BY CHARTERERS, SUPERCARGO AND/OR THEIR STAFF OR AGENTS, OR TO BE FOR OWNERS' ACCOUNT ACCOUNT IF CAUSED BY OFFICERS AND/OR CREW.

### CLAUSE 46.

EXPENSES FOR GANGWAY WATCHMEN, IF ORDERED BY THE VESSEL TO BE FOR OWNERS' ACCOUNT, BUT IF ORDERED BY THE CHARTERERS OR REQUIRED BY A PORT REGULATION OR SHORE UNION SUCH EXPENSES SHALL BE FOR THE CHARTERERS' ACCOUNT. WATCHMEN FOR CARGO ALWAYS FOR CHARTERERS' ACCOUNT.

### CLAUSE 47.

DELETED

### CLAUSE 48.

CHARTERERS SHALL HAVE THE LIBERTY TO DEDUCT FROM HIRE PAYMENT ANY AMOUNT DISBURSED FOR OWNERS ACCOUNT' SANCTIONED BY MASTER OR OWNERS SUPPORTED BY VOUCHERS. CHARTERERS HAVE THE FURTHER LIBERTY TO DEDUCT FROM FINAL HIRE PAYMENT ESTIMATED AMOUNT OF BUNKERS REMAINING ON REDELIVERY.

### CLAUSE 49.

SHOULD THE VESSEL PUT BACK WHILST ON VOYAGE BY REASON OF BREAK DOWN OF MACHINERY, COLLISION, STANDING, FIRE OR OTHER ACCIDENT OF DAMAGE TO THE VESSEL, OR DRY-DOCKING OR PERIODICAL SURVEY, OR DEVIATE FROM THE COURSE OF THE VOYAGE CAUSED BY SICKNESS OF OR ACCIDENT TO THE CAPTAIN, OFFICERS, CREW OR ANY PERSON ON BOARD THE  VESSEL OTHER THAN PERSONS TRAVELING AT THE CHARTERERS' REQUEST, SALVAGE OR BY REASON OF THE REFUSAL OF THE CAPTAIN, OFFICERS OR CREW TO DO THEIR DUTIES WITHOUT ANY SPECIFIC AND

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

VALID GROUND FOR REJECTION, OR ANY OWNERS' MATTER, THE PAYMENT OF HIRE SHALL BE SUSPENDED FROM THE TIME OF INEFFICIENCY IN PORT OR AT SEA UNTIL THE VESSEL IS AGAIN EFFICIENT IN THE SAME POSITION OR REGAIN  A POINT OF PROGRESS EQUIVALENT TO THAT THE HIRE CEASED HEREUNDER. BUNKERS CONSUMED WHILE THE VESSEL IS OFF-HIRE AND ALL EXTRA EXPENSES INCURRED DURING SUCH PERIOD SHALL BE FOR OWNERS 'ACCOUNT.


## CLAUSE 50.

OWNERS SHALL HAVE THE LIBERTY TO DEVIATE FOR THE PURPOSE OF SAVING LIFE AT SEA AND LANDING A PERSON SAVED.


## CLAUSE 51.

IN THE EVENT OF BREAKDOWN OF A DERRICK OR DERRICKS BY REASON OF DISABLEMENT OR INSUFFICIENT POWER, THE HIRE TO BE REDUCED PRO-RATA FOR THE PERIOD OF SUCH  INEFFICIENCY ON RELATION TO THE NUMBER OF HATCH(ES) AVAILABLE. OWNERS TO PAY IN ADDITION THE COST OF STANDBY LABOUR, BECAUSE OF THE BREAKDOWN. THIS DOES NOT EXEMPT OWNERS FROM LIBILITY FOR THE COST OF HIRING SHORE APPLICANCES, IF REQUIRED BY CHARTERERS, IN ACCORDANCE WITH CLAUSE NO. 23. IF SHORE APPLICANCES ARE HIRED BY OWNERS THE HIRE OF THE VESSEL TO BE PAID IN FULL DEDUCTING ONLY ACTUAL TIME LOST BY BREAKDOWN.

THIS CLAUSE NOT TO APPLY IN THE EVENT ABOVE  BREAKDOWN, DISABLEMENT, INSUFFICIENCY ETC. HAS BEEN CAUSED BY CHARTERERS SERVANTS/STEVEDORES IN WHICH CASE ALL ABOVE COSTS/EXPENSES TO BE FOR CHARTERERS ACCOUNT AND VESSEL TO REMAIN ON FULL HIRE.


## CLAUSE 52.

SHOULD THE VESSEL BE SIZED OR DETAINED OR ARRESTED OR DELAYED AT ANY PORTS OR PLACES BY ANY AUTHORITIES DURING THE CURRENCY OF THIS CHARTER PAHRTY,  ALL TIME ACTUALLY

LOST FOR THIS REASON SHALL BE TREATED AS OFF-HIRE UNTIL THE TIME OF HER RELEASE AND PROVEN EXTRA EXPENSES INCURRED THEREBY TO BE FOR OWNERS 'ACCOUNT UNLESS SUCH SEIZURE OR DETENTION OR ARRESTER OR DELAY IS OCCASIONED BY ANY ACT OR OMISSION OR DEFAULT OF THE CHARTERERS AND/OR SUB-CHARTERERS AND/OR THEIR AGENT. SHOULD THE ARREST BE CAUSED BY THE ACT, OMISSION OR DEFAULT OF THE CHARTERERS AND/OR SUB-CHARTERERS AND/OR THEIR AGENTS, CHARTERERS TO PORT APPROPRIATE SECURITY IMMEDIATELY AND REIMBURSE ALL EXPENSES AND/OR LOSSES INCURRED BY THE OWNERS TO PROVIDE SECURITY TO RELEASE THE VESSEL IMMEDIATELY WHERE THEY ARE AT FAULT.


## CLAUSE 53.

SHOULD THE VESSEL BE REQUISITIONED BY ANY GOVERNMENT  AUTHORITY DURING THE PERIOD OF THIS CHARTER, SHE SHALL BE OFF-HIRED DURING THE PERIOD OF REQUISITION AND ANY HIRE OR

RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO

CHARTER PARTY DATED 11TH MAY, 2007

OTHER COMPENSATION PAID BY GOVERNMENT OR GOVERNMENTAL AUTHORITY IN RESPECT OF SUCH REQUISTION SHALL BE OWNERS' ACCOUNT. HOWEVER, CHARTERERS HAVE THE OPTION OF CANCELING THE BALANCE PERIOD OF THIS CHARTER PROVIDED NO CARGO ON BOARD.


## CLAUSE 54.

IF MAJOR WAS BREAK OUT BETWEEN ANY TWO  OR MORE OF THE FOLLOWING COUNTRIES :

UNITED KINGDOM, U.S.A., C.I.S., PEOPLES OF CHINA, JAPAN, SOUTH KOREA COUNTRY OF VESSEL'S FLAG OR OWNERS DIRECTLY AFFECTING THE PERFORMANCE OF THIS CHARTER, BOTH OWNERS AND CHARTERERS SHALL HAVE THE OPTION OF CANCELING THIS CHARTER WHEREUPON CHARTERERS SHALL REDELIVER THE VESSEL TO OWNERS, IF SHE HAS CARGO ON BOARD AFTER DISCHARGE THEREOF AT DESTINATION, OR IF DEBARRED FROM REACHING OR ENTERING IT, AT A NEAR OPEN AND SAFE PORT AS DIRECTED BY CHARTERER, OR SHE HAS NO CARGO ON BOARD, AT A PORT AT WHICH SHE STAYS OR IF AT SEA AT A NEAR AND SAFE PORT AS DIRECTED BY CHARTERERS. IN ALL CASES HIRE SHALL BE PAID UNTIL VESSEL' S REDELIVERY.


## CLAUSE 55.

ANNUAL WAR RISK INSURANCE PREMIUM FOR WORLDWIDE TRADING TO BE FOR OWNERS' ACCOUNT AND ADDITIONAL PREMIUMS FOR HULL AND MACHINERY AND OFFICERS/CREW FOR  TRADING TO RESTRICTED AREAS, ALSO CREW WAR BONUS, IF ANY,  TO BE FOR CHARTERERS' ACCOUNT . THE ORDER OF OWNERS WAR RISK UNDERWRITERS ALWAYS TO BE FOLLOWED.


## CLAUSE 56.

SHOULD ORIGINAL BILL(S) OF LADING NOT BE AVAILABLE AT DISCHARGE PORT/S UPON VESSEL'S ARRIVAL, OWNERS TO ALLOW CHARTERERS TO DISCHARGE THE CARGO/ES WITHOUT PRESENTATION OF ORIGINAL BILL(S) OF LADING AGAINST  CHARTERERS PROVIDING OWNERS WITH LETTER OF INDEMNITY IN ACCORDANCE  WITH OWNERS' P&I CLUB FORM AND WORDING BEFORE DISCHARGE. THE LETTER  OF INDEMNITY TO BE SIGNED BY CHARTERERS ONLY. THE LETTER OF  INDEMNITY  TO BE ISSUED ON CHARTERERS CORPORATE LETTER HEAD, INK-SIGNED BY  CHARTERERS AUTHORISED SIGNATORY GIVING NAME AND DESIGNATION AND  STAMPED WITH CHARTERERS CORPORATE STAMP. THE LETTER OF INDEMNITY TO BE FAXED TO OWNERS ALONGWITH COPY(IES) OF THE BILL(S) OF LADING  PRIOR  VESSEL'S ARRIVAL AT DISCHARGE PORT/S AND THE ORIGINAL LETTER OF  INDEMNITY TO BE COURIERED TO OWNERS IMMEDIATELY THEREAFTER.


## CLAUSE  57.

THE NEW BOTH-TO-BLAME COLLISION CLAUSE, THE NEW JASON CLAUSE,  GENERAL CLAUSE PARAMOUNT OR U.S.A CLAUSE PARAMOUNT OR  CANADIAN CLAUSE PARAMOUNT AS APPLICABLE AND CONWARTIME 2004 DEEMED  TO BE INCORPORATED IN THIS CHARTER PARTY. ALL BILLS OF LADING ISSUED  PURSUANT TO THIS CHARTER PARTY TO CONTAIN THE ABOVE CLAUSES.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

**CLAUSE 58.**

CARGO CLAIMS AS BETWEEN THE OWNERS AND THE CHARTERERS SHALL BE SETTLED IN ACCORDANCE WITH THE INTER-CLUB NEW YORK PRODUCE EXCHANGE AGREEMENT OF FEBRUARY 1970, AS AMENDED MAY 1984 AND SEPTEMBER 1996, OR ANY SUBSEQUENT MODIFICATION OR REPLENISHMENT THEREOF.

**CLAUSE 59.**

OWNERS GUARANTEE THAT THE VESSEL IS ENTERED, AND SHALL REMAIN ENTERED FOR THE DURATION OF THIS CHARTER PARTY WITH THE SWEDISH CLUB. CHARTERERS WARRANT THAT THEY ARE ENTERED WITH THE BRITANNIA INSURRANCE ASSOCIATION   LTD. FOR TIME CHARTERERS' LIABILITIES TO OWNERS, VESSEL AND CARGO FOR THE DURATION OF THIS CHARTER PARTY.

**CLAUSE 60.**

CHRTRS ARE ENTITLED TO LOAD CARGO ON DECK/HATCH COVER IN  ACCORDANCE WITH NORMAL MARINE PRACTICE AND SAFETY REGULATIONS AND  ALWAYS SUBJECT TO VSL'S SEAWORTHINESS, STRENGTH, STABILITY AND   SAFETY  OF CREW. DECK/HATCH COVER CARGOES TO BE ENTIRELY AT CHARTERERS,  SHIPPERS AND RECEIVERS RISK, TIME AND EXPENSE. DECK/HATCH COVER  CARGOES TO BE LOADED, STOWED, LASHED AND SECURED TO MASTER'S   SATISFACTION. EXTRA EXPENSES AND/OR DETENTION/DEVIATION IF ANY DUE   TO  DECK/HATCH COVER CARGOES TO BE FOR CHARTERERS ACCOUNT. ALL BILLS OF  LADING FOR DECK/HATCH COVER CARGOES TO BE CLAUSED  "SHIPPED ON  DECK/HATCH COVERS AT CHARTERERS, SHIPPERS AND RECEIVERS RISK, EXPENSE AND RESPONSIBILITY WITHOUT ANY LIABILITY AND/OR  RESPONSIBILITY  ON THE PART OF THE VESSEL OR HER OWNERS FOR ANY LOSS, DAMAGE,  EXPENSE AND/OR DELAY HOWSOEVER CAUSED." CHRTRS TO BE RESPONSIBLE FOR DAMAGES TO THE VESSEL BY THE  DECK  CARGO EITHER DUE TO SHIFTING OF THE CARGO AT SEA OR DURING LOADING/  DISCHARGING OPERATIONS AT PORT.

**CLAUSE 61.**

THE FOLLOWING CARGOES ARE EXCLUDED:
LIVESTOCK, RADIO AND RADIOACTIVE GOODS AND ITS WASTES, LOGS,
NUCLEAR PRODUCTS, PETROLEUM AND ITS PRODUCTS, PETCOKE, ASPHALT,
PITCH, AMMONIUM NITRATE, TURNINGS, MOTORBLOCKS, QUEBRACHO, HIDES,
ACIDS, EXPLOSIVES, ARMS, AMMUNITIONS, DIRECT REDUCED IRON ORE
PELLETS,
INFLAMMABLE GOODS, DANGEROUS AND INJURIOUS CARGOES, CREOSOTE AND
CREOSOTED GOODS, SPONGE IRON, BLACK POWDER, BLASTING CAPS, TAR,
SHAVINGS, HBI, SALTPETER, CHILEAN NITRATE OF SODA, QUICK LIME,
NAPTHA,
CEMENT, CALCIUM CARBIDE, BORAX, CHROME ORE, SILICON MAGNESIUM,
TURPENTINE, CARBON BLACK, ASBESTOS, AMMONIUM SULPHATE,
CALCIUM HYPOCHLORIDE, BITUMEN, COALS, CAUSTIC SODA, EXPELLERS,
FISHMEAL, SALT, FERROCHROME, FERROSILICON, SILICON MANGANESE,
COPRA, SCRAP, SULPHUR, SODA ASH, DETONATORS, CEMENT CLINKERS,
BOMBS, DYNAMITE, WAR MATERIALS, IMO/IMDG CARGOES.

**CLAUSE 62. VESSEL' S DESCRIPTION**

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO

## CHARTER PARTY DATED 11TH MAY, 2007

MV. WORADA NAREE
- ALL DTLS ABTS N WOG N GIVEN IN GOOD FAITH
- EX HANDY JADE / OCEANID
- SDBC
- FLAG THAI / POR BANGKOK / OFFICIAL NO.4700-01795  /  IMO NO. 8223335
- BUILT FEB 1983 IMABARI., JAPAN
- CALL SIGN - HSRO  , SATCOM "C" TLX NO : 456750410
- CLASSED NKK / NO. 830543
- DWT/DRAFT:-
   SUMMER:          25424 MT / 10.229M
   WINTER:           24696 MT / 10.016M
   TROPICAL:        26152 MT / 10.442M
- LIGHT SHIP: 6204, VSLS LOADED TPC – 34.2, F.W. A: 231  mm
- LOA-160.8 / LBP – 150.0 / BEAM-25.2 M
- MOULDED DEPTH:14.0 M, AIR DRAFT FM KEEL – 43.6M
- GT/NT - 15269 / 9023
  SUEZ GT/NT – 15661.28 / 13602.67
  (SCNT DURING ONE OF HER TRANSIT WAS 14211.35 SCID NO:27749
  SINCE SCNT DEPENDS ON VARIABLE FACTORS CHARTS TO CONFIRM WITH
  THEIR AGENTS FOR ACTUAL SCNT FOR THE TRANSIT)
- PANAMA GT/NT : 16442 / 12697 (SIN NO:253766)
- 4/4 HO/HA
- 3 X 25 MT CRANES + 1 X 25 MT DERRICK
- HATCH OPENINGS:-
  NO.1 – 18.4 X 12.8 M
  NO. 2, 3,4 – 21.6 X 12.8 M EACH
- HATCHCOVERS – FOLDING TYPE
- HOLD MEASUREMENTS:-
  L X W(FWD N AFT) AT TANK TOP IN METERS ( ALL ABOUT)
  NO.1 – 27.0 M X  5.0  (F) 20.6 (A)
  NO.2 – 27.0 M X 20.6 (F) 20.6 (A)
  NO.3 – 27.3 M X 20.6 (F) 20.6 (A)
  NO.4 – 28.8 M X 20.6 (F) 10.2 (A)
- GRAIN/BALE –  1,155,871.59 / 1,097830.34 CBFT
  CUBIC BREAKDOWN:-
  GRAIN - NO.1 – 250233.61 / 2 – 302501.93 / 3 – 302103.93 / 4 –301032.12
  BALE  -  NO.1 – 236774.01 / 2 – 286102.0 / 3 –286270.1 / 4 –288684.23
- AUSSIE FITTED, GRAIN FITTED
- STRENGTHS - IN MT/M2:-
  MAIN DECK –3.3
  MAIN DECK HATCHES – 2.4
  TANKTOP –  11.48
- SPEED CONSUMPTION:-
  ABT 12.5 KNOTS ON ABT 24.0 MT IFO 180 CST + ABT 2.0 MT MDO
  IN PORT: IDLE ABT 2.0 MT MDO, WORKING ABT 3.5  MT MDO
  ABOVE SPEED WARRANTY FOR GOOD WEATHER UPTO BEAUFORT WIND FORCE 4
  AND DOUGLAS SEA STATE 3.
  VSLS CONSUMES MDO IN MAIN ENGINES WHILE MANOUVERING IN/OUT OF PORTS,
  CANALS, RIVERS, NARROW WATERS, FOGS ETC.
- BUNKER SPECS:-
  FUEL OIL 180 CST SPECS : ISO 8217 : 1996 RME 25
  DIESEL OILS SPECS : ISO-8217 : 1996 DMB

## CLAUSE 63.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

IN THE EVENT THAT THE VESSEL IS DELAYED OR RENDERED INOPERATIVE BY STRIKES LABOUR STOPPAGE OR ANY OTHER DIFFICULTY DUE TO LACK OF HEALTH CERTIFICATES OF OFFICERS/CREW SUCH TIME LOST TO BE CONSIDERED AS OFF-HIRE.

## CLAUSE 64.
TRANSSHIPMENT NOT PERMITTED UNDER THIS CHARTER PARTY. LINER OR THROUGH OR IN –TRANSIT BILLS OF LADING NOT TO BE ISSUED UNDER THIS CHARTER PARTY.

## CLAUSE 65.
CHARTERERS TO HAVE BENEFIT OF ANY RETURN INSURANCE PREMIUM RECEIVABLE BY OWNERS, IF ANY, FROM THEIR UNDERWRITERS, AS AND WHEN RECEIVED FROM THEIR UNDERWRITERS, BY REASON OF VESSEL BEING IN PORT FOR A MINIMUM PERIOD OF 30 CONSECUTIVE DAYS, PROVIDED VESSEL IS ON HIRE DURING THE SAME PERIOD.

## CLAUSE 66.
BIMCO STANDARD LAW & ARBITRATION CLAUSE 1998 - ENGLISH LAW, LONDON  ARBITRATION - WITH SMALL CLAIMS PROCEDURE FOR CLAIMS UP TO USD. 50,000.00

- TO APPLY AND TO BE INCORPORATED IN THE C/P.

### BIMCO STANDARD LAW & ARBITRATION CLAUSE 1998 – ENGLISH LAW LONDON ARBITRATION
THIS CHARTER PARTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW AND ANY DISPUTE ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT SHALL BE REFERRED TO ARBITRATION IN LONDON IN ACCORDANCE WITH THE ARBITRATION ACT 1996 OR ANY STATUTORY MODIFICATION OR RE-ENACTMENT THEREOF SAVE TO THE EXTENT NECESSARY TO GIVE EFFECT TO THE PROVISIONS OF THIS CLAUSE.

THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE LONDON MARITIME ARBITRATION ASSOCIATION ( LMAA ) TERMS CURRENT AT THE TIME WHEN THE ARBITRATION PROCEEDING ARE COMMENCED.

THE REFERENCE SHALL BE TO THREE ARBITRATORS. A PARTY WISHING TO REFER A DISPUTE TO ARBITRATION SHALL APPOINT ITS ARBITRATOR AND SEND NOTICE OF SUCH APPOINTMENT IN WRITING TO THE OTHER PARTY REQUIRING THE OTHER PARTY TO APPOINT ITS OWN ARBITRATOR WITHIN 14 CALENDAR DAYS OF THAT NOTICE AND STATING THAT IT WILL APPOINT ITS ARBITRATOR AS SOLE ARBITRATOR UNLESS THE OTHER PARTY APPOINTS ITS OWN ARBITRATOR AND GIVES NOTICE THAT IT HAS DONE SO WITHIN THE 14 DAYS SPECIFIED. IF THE OTHER PARTY DOES NOT APPOINT ITS OWN ARBITRATOR AND GIVE NOTICE THAT IT HAS DONE SO WITHIN 14 DAYS A SPECIFIED, THE PARTY REFERRING A DISPUTE TO ARBITRATION MAY, WITHOUT THE REQUIREMENT OF ANY FURTHER PRIOR

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

NOTICE TO THE OTHER PARTY, APPOINT ITS ARBITRATOR AS SOLE ARBITRATOR AND SHALL ADVISE THE OTHER PARTY ACCORDINGLY. THE AWARD OF A SOLE ARBITRATOR SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY AGREEMENT.

NOTHING HEREIN SHALL PREVENT THE PARTIES AGREEING IN WRITING TO VARY THESE PROVISIONS TO PROVIDE FOR THE APPOINTMENT OF A SOLE ARBITRATOR.

IN CASES WHERE NEITHER THE CLAIM NOR ANY COUNTER CLAIM EXCEEDS THE SUM OF USD 50,000 THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE LMAA SMALL CLAIMS PROCEDURE CURRENT AT THE TIME WHEN THE ARBITRATION PROCEEDING ARE COMMENCED.

CLAUSE 67.

CHARTERERS TO HAVE THE PRIVILEGE OF FLYING THEIR OWN HOUSE FLAG.

CLAUSE 68.

CHARTERERS OPTION TO WELD PADEYES ON DECK/HOLD ( BUT NOT ON TOP OF FUEL TANKS ) AT CHARTERERS TIME/EXPENSES AND SAME TO BE REMOVED PRIOR TO REDELIVERY BUT CHARTERERS OPTION TO REDELIVERY VESSEL WITHOUT REMOVING PAYING USD 15 PER PADEYE.

CLAUSE 69.

OWNERS GUARANTEE COFR IS FULLY VALID UNDER THIS CHARTER PERIOD.

CLAUSE 70.

IF VESSEL IS PLACED OFF-HIRE MORE THAN 20 CONSECUTIVE DAY EXPECT PERIODICAL DRYDOCK, CHARTERERS HAVE THE RIGHT TO CANCEL THE BALANCE PERIOD OF THIS CHARTER UPON COMPLETION OF THE CONCERNED VOYAGE. ALWAYS PROVIDED NO CARGO REMAINS ON BOARD, BUT SUCH RIGHT TO BE DECLARED LATEST BY THE END OF THE 20 CONSECUTIVE DAYS.

CLAUSE 71.

CARGO CAN BE DISCHARGE WITH BULLDOZERS PROVIDING TOTAL WEIGHT OF RUBBER WHEELED BULLDOZER/CARGO WITHIN VESSEL' S TANKTOP STRENGTH IN ANY CASE ANY BULLDOZER OPERATION TO BE AT MASTER' S DISCRETION WHICH SHALL NOT BE UNREASONABLE WITHHELD.

CLAUSE 72.

OWNERS GUARANTEE THAT VESSEL' S HATCHCOVERS ARE TO BE WATERTIGHT ALL THROUGHOUT THIS CHARTER PERIOD AND IF ANY HATCHCOVER FOUND DETECTIVE, SAME TO BE RECTIFIED AT OWNER' S TIME AND EXPENSES TO INDEPENDENT SURVEYOR SATISFACTION. CHARTERERS ALSO

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO

## CHARTER PARTY DATED 11ᵀᴴ MAY, 2007

HAVE THE RIGHT TO CARRY OUT HOSE TEST ON ALL HATCHES  ON DELIVERY AT CHARTERERS COST AND TIME.

## CLAUSE 73.

ON ARRIVAL AT FIRST LOAD PORT AFTER VESSEL' S DELIVERY ALL CARGO HOLDS TO BE CLEAN SWEPT WASHED DOWN BY FRESH WATER AND DRIED UP AND FREE OF LOOSE

RUST SCALES AND PREVIOUS CARGO RESIDUES  AND  READY TO RECEIVE  CHARTERERS INTENDED CARGO IN ALL RESPECTS  TO THE SATISFACTION   INDEPENDENT SURVEYORS, THEN THE VESSEL TO BE PLACED OFF-HIRE FROM THE TIME SUCH REJECTION UNTIL HE CARGO HOLDS PASS THE SAME INSPECTION AGAIN AND ANY DIRECT RELATED  EXTRA EXPENSES FOR CLEANING HOLDS TO BE FOR OWNERS ACCOUNT.

## CLAUSE 74.

CHRS TO PAY USD 1,200 PER MONTH OR PRORATA FOR COVERING ALL
CABLE,COMMUNICATIONS,VICTUALLING, REPRESENTATION AND ENTERTAINMENT

## CLAUSE 75.

OWNERS TO GIVE CHARTERERS DELIVERY NOTICE ON FIXING.

## CLAUSE 76.

PAYABLE EACH 15 DAYS HIRE IN ADVANCE TO OWNRS' NOMINATED BANK  IN US DOLLARS.
1ST HIRE TB PAID W/I 3 BANKING DAYS  AFTER VSL'S DELY .
THE BALANCE HIRE IF NOT OVER 2 DAY, TO BE SETTLED  TOGETHER WITH ACTUAL BUNKER
CONSUMPUTION  & ILOHC ETC WITHIN 2  BANKING DAYS AFTER VESSEL'S REDELIVERY.

OWNERS/MASTER WILL ARRANGE OWNERS MATTERS DIRECTLY AT EACH PORT AND CHARTERERS NOT
TO DEDUCT ANY AMOUNTS FROM HIRE.

HIRE TO BE PAID TELEGRAPHICALLY TO ;

KOREA EXCHANGE BANK KWANGHWAMUN BRANCH

SEOUL KOREA

A/C NO. : 118-JSD-100498

SWIFT CODE : KOEXKRSE

IN FAVOUR OF SUNWOO MERCHANT MARINE CO.,LTD

## CLAUSE 77.

VESSEL HAS ON BOARD VALID GRAIN LOADING BOOKLET IN ACCORDANCE WITH SOLARS 1974 REGULATIONS AND IMO RESOLUTION A-264 ( VIII ) AS ADAPTED IN 1974. FURTHERMORE, VESSEL TO HAVE ON BOARD APPROVED TABLE  OF HEELING MOMENTS FOR " FILLED HOLDS-UNTRIMMED ENDS" IN ACCORDANCE WITH IMO BE XIX/INF. 4.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

OWNERS WARRANT THAT THE VESSEL IS SUITABLE FOR CARRYING A FULL CARGO OF GRAIN IN ALL HOLDS WITHOUT REQUIRING ANY GRAIN  FITTING AND/OR BAGGING OR SECURING ETC. PROVIDED LOADED IN ACCORDANCE WITH VESSEL' S GRAIN STABILITY BOOKLET.

### CLAUSE 78.

WITH REFERENCE TO LINE 62 IF AFTER THE EXPIRY OF 3 BANKING DAYS, AT ANY TIME THE HIRE IS OUTSTANDING THE OWNERS SHALL, WITHOUT PREJUDICE TO THE LIBERTY TO WITHDRAW, BE ENTITLED WITHHOLD THE PERFORMANCE OF ANY OR ALL OF THEIR OBLIGATIONS HEREUNDER AND SHALL HAVE NO RESPONSIBILITY FOR ANY CONSEQUENCES THEREOF IN RESPECT OF WHICH CHARTERERS HEREBY INDEMNIFY THE OWNERS AND HIRE SHALL CONTINUE TO ACCRUE AND ANY EXTRA EXPENSES RESULTING FROM SUCH WITHHOLDING SHALL BE FOR CHARTERERS' ACCOUNT.

### CLAUSE 79.

U.S. TRADE – UNIQUE BILLS OF LADING IDENTIFIER CLAUSE .

THE CHARTERERS WARRANT THAT EACH TRANSPORT DOCUMENT ACCOMPANYING A SHIPMENT OF CARGO DESTINED TO A PORT OR PLACE IN THE UNITED STATES OF AMERICA SHALL HAVE BEEN ENDORSED WITH A UNIQUE BILL OF LADING IDENTIFIER AS REQUIRED BY THE U.S. CUSTOMS REGULATIONS ( 19 OR 4 SECTION 4.7. A  ) INCLUDING SUBSEQUENT CHANGES, AMENDMENTS OR MODIFICATIONS THERTO, NOT LATER THAN THE FIRST PORT OF CALL. NON – COMPLIANCE WITH THE PROVISIONS OF THIS CLAUSE SHALL AMOUNT TO BREACH OF WARRANTY  FOR THE CONSEQUENCES OF WHICH THE CHARTERERS SHALL BE LIABLE AND SHALL  HOLD THE OWNERS HARMLESS AND SHALL KEEP THEN INDEMNIFIED AGAINST ALL CLAIMS WHATSOEVER WHICH MAY BE ARISE AND BE MADE AGAINST THEM FUTHERMORE, ALL TIME LOST AND ALL EXPENSES INCURRED INCLUDING FINES AS A RESULT OF THE CHARTERERS BREACH OF THE PROVISIONS OF THIS CLAUSE SHALL BE FOR CHARTERERS ACCOUNT.

### CLAUSE 80.

OWNERS GUARANTEE THAT THE VESSEL IS COVERED ON FULL TERMS AND FOR THE FULL VALUE FOR HULL AND MACHINERY  DURING THE WHOLE PERIOD OF THIS MATTER.

### CLAUSE 81.

BASIC WAR RISK INSURANCE TO BE FOR OWNERS ACCOUNT. ANY ADDITIONAL/   EXTRA PREMIUM (WHICH TO BE ARRANGED BY OWNERS) FOR HULL AND  MACHINERY AND OFFICERS/CREW FOR TRADING TO A RESTRICTED AREA, INCLUDING BLOCKING AND TRAPPING INSURANCE AND CREW WAR BONUS TO BE FOR CHARTERERS ACCOUNT AND VESSEL TO REMAIN ON FULL HIRE. CHARTERERS TO PAY THE   ADDITIONAL/EXTRA PREMIUM UPON OWNERS FAXING THEIR  UNDERWRITERS/BROKERS INVOICE AND THE ORIGINAL INVOICE TO FOLLOW  LATER BY MAIL.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

### CLAUSE 82.

DELETED


### CLAUSE 83.

OWNERS ARE NOT RESPONSIBLE FOR ANY CONTAMINATION AND/OR DAMAGE TO CARGO WHICH MAY ALSO DUE TO MIXED CARGO STOWAGE IN THE SAME HOLD LOADED BY CHARTERERS , SUCH SEPARATIONS ARE TO BE CONTRUCTED AND PUT INTO PLACE BY THE CHARTERERS STEVEDORES TO MASTER' S SATISFACTION AND TO THAT OF THE USA INSPECTOR OR SIMILAR AUTHORITY.


### CLAUSE 84.

WHEN CARRYING BAGGED OR PACKAGED CARGO CHARTERERS TO APPOINTED AND PAY QUALIFIED TALLYMEN APPROVED BY THE OWNERS AT BOTH LADING AND DISCHARGING OR BAGS/PIECES LOADED.

ALL PROTECTIVE MATERIALS SUCH AS DUNNAGE, KRAFT PAPER, LASHING, MATS, VENTILATIONS AND THE LIKE, REQUIRED BY THE MASTER FOR THE SAFETY OF THE VESSEL AND SAFE CARRIAGE AND PRESERVATION OF THE CARGO TO BE PROVIDED, FITTED AND PAID FOR BY CHARTERERS AND TO BE REMOVED FROM THE VESSEL BY CHARTERERS STEVEDORES.

WITH THE VIEW TO PROTECT OWNERS AND CHARTERERS AGAINST POSSIBLE CLAIMS FOR CARGO DAMAGES, THE OWNERS HAVE THE OPTION TO APPOINT SURVEYORS NOMINATED BY THEIR P & I CLUB TO PERFORM CARGO CONDITION SURVEYORS CONCURRENTLY WITH LOADING AND DISCHARGING CERTAIN CARGO SUCH AS STEEL, AND OTHER CARGOES WHICH ARE PONTENTIALLY LIABLE TO CARGO CLAIMS. COST FOR SUCH SURVEYS TO BE SHARE EQUALLY BETWEEN OWNERS AND CHARTERERS.


### CLAUSE 85.

IF LOADING CARGO DESTINED FOR THE U.S. OR PASSING THROUGH US PORTS IN TRANSIT THE CHARTERERS SHALL, WHERE APPLICABLE, SUBMIT CARGO DECLARATION DIRECTLY TO THE U.S. CUSTOMS. THE CARGO DECLARATION MUST BE SUBMITTED TO THE U.S. CUSTOMS  LATEST 24 HOURS IN ADVANCE OF LOADING. THE CHARTERERS ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER ( INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE ) AND ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' S FAILURE TO COMPLY WITH THE PROVISIONS OF THIS CLAUSE. IF THE VESSEL IS DETAINED, ATTAHCED, SEIZED OR ARRESTED AS A RESULT OF THE CHARTERERS ' FAILURE TO COMPLY WITH THE PROVISIONS OF THIS CLAUSE, THE CHARTERERS SHALL PROVIDE A BOND OR OTHER SECURITY TO ENSURE THE PROMPT RELEASE OF THE VESSEL .
NOTWITHSTANDING ANY OTHER PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, THE VESSEL SHALL REMAIN ON HIRE AT ALL TIMES.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

### CLAUSE 86.

VESSEL TO HAVE LIBERTY TO USE GAS OIL FOR MANEUVERING IN NARROW WATER, CANALS, RIVER AND ALL ENTERING AND LEAVING PORTS LIMITS VISBILITY IN CONGESTED WATERS.

### CLAUSE 87.

CHARTERERS SHALL HAVE THE OPTION OF ORDERING THE VESSEL TO LIE ALONGSIDE OTHER VESSELS/COASTERS/LIGHTERS AT ANY SAFE ANCHORAGE WITHOUT SWELL AND/OR SAFE BERTH/SAFE DOCK/SAFE WHARF FOR THE PURPOSE OF LOADING/DISCHARGING OF THE CARGO AND/OR FOR BUNKERING, BUT ALWAYS SUBJECT TO MASTER'S ABSOLUTE DISCRETION WHETHER SUCH OPERATIONS ARE SAFE AND FEASIBLE. THE MASTER MAY IF HE CONSIDERS IT AT ANYTIME UNSAFE TO


COMMENCE OR CONTINUE SUCH OPERATIONS ORDER THE OTHER VESSELS/COASTERS/LIGHTERS AWAY FROM HIS VESSEL TO A SAFE DISTANCE AND SUCH VESSELS/COASTERS/LIGHTERS MUST OBEY SUCH ORDERS. MASTER MAY ALSO REMOVE HIS VESSEL TO A SAFE DISTANCE. CHARTERERS SHALL SUPPLY ADEQUATE AND PROPER FENDERS, LINES AND SECURING EQUIPMENT ACCEPTABLE TO THE MASTER AND SHALL ALSO BE LIABLE FOR ANY DAMAGE CAUSED TO THE VESSEL BY THE OTHER VESSELS/COASTERS/LIGHTERS DURING APPROACH, SECURING, LYING ALONGSIDE, UNSECURING AND DEPARTURE OF THE OTHER VESSELS/COASTERS/LIGHTERS. FINAL AND SOLE AUTHORITY FOR PLACING OF FENDERS SHALL ALWAYS REMAIN WITH THE MASTER OF THE VESSEL. THE MASTER SHALL AT ALL TIMES GIVE FULL COOPERATION TO CHARTERERS
AND/OR THEIR AGENTS TO EXPEDITE THE LOADING/DISCHARGING.

ALL ABOVE OPERATIONS TO BE AT CHARTERERS ENTIRE RISK, TIME AND COSTS. EXTRA INSURANCE IF REQUIRED FOR ANY/ALL OF THE ABOVE OPERATIONS TO BE FOR CHARTERERS ACCOUNT AND CHARTERERS TO PAY OWNERS SAME AGAINST OWNERS PROVIDING THEIR UNDERWRITERS/BROKERS INVOICE. DELIVERY OVERSIDE INTO OTHER VESSELS/COASTERS/LIGHTERS IN THE
CASE OF DISCHARGING TO CONSTITUTE RIGHT AND TRUE DELIVERY OF CARGO UNDER THE RELATIVE BILLS OF LADING.

### CLAUSE 88  TRADING EXCLUSIONS
  -----------------------------------------

VESSEL TO BE EMPLOYED IN LAWFUL TRADES FOR THE CARRIAGE OF LAWFUL
AND HARMLESS MERCHANDISE ONLY BETWEEN SAFE PORTS WHERE VESSEL
CAN SAFELY LIE ALWAYS AFLOAT AND TRADING TO BE ALWAYS WITHIN IWL
BUT ALWAYS SPECIFICALLY EXCLUDING FINLAND, SWEDEN, YUGOSLAVIA, BOSNIA,
CROATIA, ALL TERRITORIES OF FORMER YUGOSLAVIA, ALBANIA, ISRAEL,

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO

## CHARTER PARTY DATED 11TH MAY, 2007

LEBANON, SYRIA, TURKISH OCCUPIED CYPRUS, LIBYA, DEMOCRATIC REPUBLIC OF

CONGO, SOMALIA, IRAQ, NORTH KOREA, SRILANKA, CAMPUCHEA, ANGOLA, CABINDA,

CUBA, LIBERIA, SIERRA LEONE, ABKHAZIA, NORTH & SOUTH YEMEN, BANGLADESH,

BELIZE, CIS RUSSIAN FAR EAST, GEORGIA (BLACK SEA), NIGERIA,

CAMEROUN,

ETHIOPIA AND ERITREA, AMAZON RIVER (AMAZON RIVER NOT BEYOND MANAUS

ALLOWED PROVIDED VESSEL ALWAYS AFLOAT), ST. LAWERENCE RIVER

(ST.LAWRENCE RIVER NOT WEST OF MONTREAL, ALWAYS EXCLUDING LAKES,

ALLOWED PROVIDED FREE OF ICE), GREAT LAKES, COUNTRIES/PLACES WHERE

U.N./U.S.A SANCTIONS AND/OR RESTRICTIONS ARE IN FORCE AND ALL WAR

AND/OR WAR LIKE ZONES. ORDERS OF OWNERS WAR RISK UNDERWRITERS ARE ALWAYS

TO BE FOLLOWED.


WHEN TRADING TO WEST AFRICAN PORTS CHARTERERS TO PROVIDE ARMED

GUARDS DURING PORT STAYS IN THESE COUNTRIES TO PROTECT THE VESSEL,

HER CREW AND HER CARGO.


WHEN TRADING TO WEST AFRICAN PORTS CHARTERERS TO ACCEPT FULL

RESPONSIBILITY FOR CARGO CLAIMS FROM THIRD PARTIES IN THESE

COUNTRIES (EXCEPT THOSE ARISING FROM UNSEAWORTHINESS OF VESSEL) INCLUDING

PUTTING UP SECURITY, IF NECESSARY, TO PREVENT ARREST/DETENTION OF

THE VESSEL OR TO RELEASE THE VESSEL FROM ARREST OR DETENTION AND VESSEL

TO REMAIN ON HIRE.


CHARTERERS OPTION TO TRADE VESSEL TO CIS RUSSIAN FAR EAST ON THE
FOLLOWING CONDITIONS:
1). CHARTERERS TO ARRANGE FOR PHYTOSANITARY INSPECTION TO BE
CARRIED OUT AND PHYTOSANITARY CERTIFICATE VALID FOR ALL
COUNTRIES
ISSUED BY OFFICIAL INSPECTORS TO BE PLACED ON BOARD THE
VESSEL AT
CHARTERERS TIME AND EXPENSE PRIOR TO VESSEL'S SAILING FROM
CIS RUSSIAN FAR EAST PORT.
2). BREACH OF IWL TO BE FOR CHARTERERS ACCOUNT AND THE ADDITIONAL
PREMIUM FOR SUCH BREACH TO BE PAID BY CHARTERERS IN ADVANCE
PRIOR TO SUCH BREACH UPON OWNERS FAXING THEIR UNDERWRITERS/
BROKERS INVOICE.
3). VESSEL NOT TO BE ORDERED TO ICE-BOUND PORTS/AREAS. VESSEL NOT
TO FORCE ICE NOR FOLLOW ICE-BREAKERS.


## CLAUSE 89

CHARTERERS TO PAY ALL LOCAL, STATE, NATIONAL TAXES AND/OR DUES ASSESSED ON THE VESSEL

OR THE OWNERS RESULTING FROM THE CHARTERERS' ORDERS HEREIN, WHETHER ASSESSED

DURING OR AFTER THE CURRENCY OF THIS CHARTER PARTY INCLUDING ANY TAXES AND/OR DUES ON

CARGO AND/OR FREIGHTS AND/OR SUB-FREIGHTS AND/OR HIRE ( EXCLUDING TAXES LEVIED BY THE

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

COUNTRY OF THE FLAG OF THE VESSEL OR THE OWNERS ON THE CHARTER. HIRE RECEIVED BY OWNERS UNDER THIS CHARTER PARTY).

## CLAUSE 90

SHOULD THE VESSEL STAY IN A PORT OR TRADE IN TROPICAL WATERS FOR ANY  PERIOD EXCEEDING 30 CONSECUTIVE DAYS OWNERS ARE NOT TO BE HELD   RESPONSIBLE FOR ANY DEFICIENCY IN SPEED/CONSUMPTION DUE TO BOTTOM FOULING BY MARINE GROWTH, BARNACLES ETC. AND CHARTERERS TO ENSURE VESSEL'S BOTTOM IS CLEANED WITH APPROVED EQUIPMENTS AT CHARTERERS TIME AND EXPENSE.

## CLAUSE 91

NEITHER THE CHARTERERS NOR THEIR AGENTS SHALL PERMIT THE ISSUE ANY BILL OF LADING, WAYBILL OR OTHER DOCUMENT EVIDENCE A CONTRACT OF CARRIAGE  ( WHETHER OR NOT SIGNED ON BEHALF OF THE OWNERS OR ON THE CHARTERERS BEHALF OF ANY SUB – CHARTERERS ) INCORPORATING THE HAMBURGE RULES OR ANY OTHER LEGISLATION IMPOSING LIABILITIES IN EXCESS OF HAGUE OR HAGUE/VISBY RULES. THE CHARTERERS SHALL INDEMNIFY THE OWNERS AGAINST ANY LIABILITY, LOSS OR DAMAGE WHICH MAY RESULT FROM ANY BREACH THE FOREGOING PROVISIONS OF THIS CLAUSE.

## CLAUSE  92.

## ICE CLAUSE:-

(A) THE VESSEL SHALL NOT BE OBLIGED TO FORCE ICE NOR FOLLOW  ICE-BREAKERS.

(B) THE VESSEL SHALL NOT BE REQUIRED TO ENTER OR REMAIN IN ANY  ICEBOUND PORT OR AREA, NOR ANY PORT OR AREA WHERE LIGHTS, LIGHTSHIPS,  MARKERS OR BUOYS HAVE BEEN OR ARE ABOUT TO BE WITHDRAWN BY REASON OF ICE, NOR WHERE ON ACCOUNT OF ICE THERE IS, IN THE MASTER'S  SOLE DISCRETION, A RISK THAT, IN THE ORDINARY COURSE OF  EVENTS, THE VESSEL WILL NOT BE ABLE SAFELY TO ENTER AND REMAIN AT THE PORT OR  AREA OR TO DEPART AFTER COMPLETION OF LOADING OR DISCHARGING. IF,  ON ACCOUNT OF ICE, THE MASTER IN HIS SOLE DISCRETION CONSIDERS IT  UNSAFE TO PROCEED TO, ENTER OR REMAIN AT THE PLACE OF LOADING OR DISCHARGING FOR FEAR OF THE VESSEL BEING FROZEN IN AND/OR  DAMAGED,  HE SHALL BE AT LIBERTY TO SAIL TO THE NEAREST ICE-FREE AND SAFE  PLACE AND THERE AWAIT THE CHARTERERS' INSTRUCTIONS.

(C) ANY DELAY OR DEVIATION CAUSED BY OR RESULTING FROM ICE SHALL BE  FOR THE CHARTERERS' ACCOUNT AND THE VESSEL SHALL REMAIN ON-HIRE.

(D) ANY ADDITIONAL PREMIUMS AND/OR CALLS REQUIRED BY THE VESSEL'S  UNDERWRITERS DUE TO THE VESSEL ENTERING OR REMAINING IN ANY   ICEBOUND PORT OR AREA, SHALL BE FOR THE CHARTERERS' ACCOUNT.

## CLAUSE 93.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

VESSEL'S SPEED AND CONSUMPTION WARRANTED UNDER THIS CHARTER PARTY  ARE UNDER GOOD WEATHER CONDITIONS UPTO BEAUFORT WIND FORCE 4 AND  DOUGLAS SEA STATE 3. THE CHARTERERS HAVE THE OPTION TO APPOINT AN  INTERNATIONALLY RECOGNISED INDEPENDENT WEATHER BUREAU AS THE  WEATHER ROUTING COMPANY AT THEIR EXPENSE TO ADVISE THE MASTER. THE   MASTER SHALL COMPLY WITH THE REPORTING PROCEDURE OF THE WEATHER ROUTING COMPANY BUT THE FINAL ROUTING IS ALWAYS AT MASTER'S  DISCRETION  FOR SAFE NAVIGATION. IN THE EVENT OF CONSISTENT DISCREPANCY BETWEEN  VESSEL'S LOGS AND THE INDEPENDENT WEATHER BUREAU THEN THE INDEPENDENT WEATHER BUREAU REPORT TO BE

FINAL AND BINDING. IN THE  EVENT OF ANY SPEED CLAIMS FUEL SAVINGS, IF ANY, DUE TO REDUCED SPEED  IS TO BE CONSIDERED AND SET OFF AS CREDITS AGAINST SUCH CLAIMS.

CHARTERERS TO PROVIDE SUPPORTING DOCUMENTS TO SUBSTANTIATE THEIR  SPEED CLAIMS IF ANY AND SAME TO BE DEALT WITH SEPARATELY AND NOT TO  BE DEDUCTED FROM HIRE UNLESS MUTUALLY AGREED.

## CLAUSE  94.
VESSEL IS FULLY FITTED WITH ITF OR EQUVALENT / WWF / AHL

## CLAUSE  95.
OWNERS WARRANTS TO HAVE SECURED AND CARRY ON BOARD THE NECESSARY CERTIFICATES TO CALL ANY PORT UNDER THIS CHARTER  ALWAYS WITHIN THE TRADING LIMITS OF THIS CHARTER PARTY.

## CLAUSE 96.
OWNERS/MASTER TO GIVE CHARTERERS 25/15/10/7/5 DAYS APPROXIMATE NOTICES AND 3/2/1 DAYS DEFINITE NOTICES OF VESSEL' S DELIVERY. OWNERS WARRANTY THAT THE VESSEL'S HOLDS ARE CLEAR OF ANY FITTINGS/SUPERSTRUCTURES SUCH AS CARDECK, CURTAIN  PLATES.

## CLAUSE 97.
BIMCO STOWAWAY CLAUSE FOR TIME CHARTER TO BE INCORPORATED. BIMCO STOWAWAYS CLAUSE FOR TIME CHARTERS : -

(A)    (I) THE CHARTERERS WARRANT TO EXERCISE DUE CARE AND DILIGENCE IN PREVENTING STOWAWAYS IN GAINING ACCESS TO THE VESSEL BY MEANS OF SECRETING AWAY IN THE GOODS AND/OR CONTAINERS SHIPPED BY THE CHARTERERS.

(II) IF, DESPITE THE EXERCISE OF DUE CARE AND DILIGENCE BY THE CHARTERERS, STOWAWAYS HAVE GAINED  ACCESS  TO  THE  VESSEL  BY  MEANS  OF  SECRETING  AWAY  IN  THE  GOODS

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

AND/OR  CONTAINERS SHIPPED BY THE CHARTERERS, THIS SHALL AMOUNT TO BREACH OF CHARTER FOR THE CONSEQUENCES OF WHICH THE CHARTERERS SHALL BE LIABLE AND SHALL HOLD THE OWNERS  HARMLESS AND SHALL KEEP THEM INDEMNIFIED AGAINST ALL CLAIMS WHATSOEVER WHICH MAY ARISE AND BE MADE AGAINST THEM. FURTHERMORE, ALL TIME LOST AND ALL EXPENSES WHATSOEVER AND HOWSOEVER INCURRED, INCLUDING FINES, SHALL BE FOR THE CHARTERERS' ACCOUNT AND THE VESSEL SHALL REMAIN ON HIRE.

 (III) SHOULD THE VESSEL BE ARRESTED AS A RESULT OF THE CHARTERERS' BREACH OF CHARTER ACCORDING TO SUB-CLAUSE (A)(II) ABOVE, THE CHARTERERS SHALL TAKE ALL REASONABLE STEPS TO  SECURE THAT, WITHIN A REASONABLE TIME, THE VESSEL IS RELEASED AND AT THEIR EXPENSE PUT UP BAIL TO SECURE RELEASE OF THE VESSEL.

(B) (I) IF, DESPITE THE EXERCISE OF DUE CARE AND DILIGENCE BY THE OWNERS, STOWAWAYS HAVE GAINED ACCESS TO THE VESSEL BY MEANS OTHER THAN SECRETING AWAY IN THE GOODS AND/OR CONTAINERS SHIPPED BY THE CHARTERERS, ALL TIME LOST AND ALL EXPENSES WHATSOEVER AND HOWSOEVER INCURRED, INCLUDING FINES, SHALL BE FOR THE OWNERS' ACCOUNT AND THE VESSEL SHALL BE OFF HIRE.

   (II) SHOULD THE VESSEL BE ARRESTED AS A RESULT OF STOWAWAYS HAVING GAINED ACCESS TO THE VESSEL BY MEANS OTHER THAN SECRETING AWAY IN THE GOODS AND/OR CONTAINERS SHIPPED BY THE CHARTERERS, THE OWNERS SHALL TAKE ALL REASONABLE STEPS TO SECURE THAT, WITHIN A REASONABLE TIME, THE VESSEL IS RELEASED AND AT THEIR EXPENSE PUT UP BAIL TO SECURE RELEASE OF THE VESSEL.

## CLAUSE 98.

OWNERS GUARANTEE THAT VESSEL IS NOT BLACK LISTED BY ANY OF VESSELS CALLING PORTS AND COUNTRIES UNDER THIS CHARTER.

## CLAUSE 99.

ALL NEGOTIATION AND EVENTUAL FIXTURE TO BE KEPT PRIVATE AND CONFIDENTIAL.

## CLAUSE 100.

FOR THE PURPOSE OF COMPUTING HIRE PAYMENTS, THE TIME FOR DELIVERY/REDELIVERY SHALL BE ADJUSTED TO G.M.T.

## CLAUSE 101.

CHARTERERS TO COMPLY WITH ANY/ALL UNITED STATES DEPARTMENT OF AGRICULTURE' S ( USDA ) ANIMAL AND PLANT HEALTH ISPECTION SERVICE ( APHIS ) IMPORT REGULATION FOR WOOD PACKAGING MATERIAL ( WPM ). ANY/ALL CONSEQUENCES, LOSS, DAMAGES, EXPENSES OR DELAY CAUSED BY THE FAILURE ON THE PART OF THE CHARTERERS TO COMPLY WITH ABOVE REGULATION AND/OR REQUIREMENTS SHALL BE FOR CHARTERERS ACCOUNT.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

### CLAUSE 102. BIMCO ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005

(A)    (I) THE OWNERS SHALL COMPLY WITH THE REQUIREMENTS OF THE INTERNATIONAL CODE FOR THE SECURIRTY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLARS ( ISPS CODE ) IN RELATION TO THE VESSEL AND

" THE COMPANY " ( AS DEFINED BY THE ISPS CODE.) IF TRADING TO OR FROM THE UNITED STATES OR PASSING THROUGH UNITED STATES WATERS, THE    OWNERS SHALL ALSO COMPLY WITH THE REQUIREMENTS OF THE US MARITME TRANSPORTATION SECURITY ACT 2002 ( MTSA ) RELATING TO THE VESSEL AND THE " OWNERS " ( AS DEFINED BY THE MTSA ).

(II)UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE ( OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE ) AND THE FULL STYLE CONTRACT DETAILS OF THE COMPANY  SECURITY OFFICER ( CSO ).

( III ) LOSS, DAMAGE, EXPENSES OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE OWNERS OR " THE COMPANY " TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE OR THIS CLAUSE SHALL BE FOR THE OWNERS' ACCOUNT, EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY.

(B) (I) THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP SECURITY OFFICER (SSO)/MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND, WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS OF THIS CHARTER PARTY, SHALL ENSURE THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE CSO AND THE SSP/MASTER. FURTHERMORE, THE CHARTERERS SHALL ENSURE THAT ALL SUB-CHARTER PARTIES THEY ENTER INTO DURING THE PERIOD OF THIS CHARTER PARTY CONTAIN THE FOLLOWING PROVISION ;

" THE CHARTERERS SHALL PROVIDE THE OWNERS WITH THEIR FULL STYLE CONTRACT DETAILS AND, WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS OF THE CHARTER PARTY, SHALL ENSURE THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE OWNERS."

( III) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE CHARTERERES TO COMPLY WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS' ACCOUNT.

( C ) NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY ALL DELAY, COSTS OR EXPENSES WHATSOEVER ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO

## CHARTER PARTY DATED 11TH MAY, 2007

WITH THE ISPS CODE INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LANUCH SERVICE, TUG ESCORTS, PORT SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR THE CHARTERERS' ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE OWNERS' NEGLIGENCE. ALL MEASURES REQUIRED BY THE OWNERS TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR THE OWNERS' ACCOUNT.

(D) IF NEITHER PARTY MAKES ANY PAYMENTS WHICH IS FOR THE OTHER PARTY'S ACCOUNT ACCORDING TO THIS CLAUSE, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

## CLAUSE 103.

## BIMCO STANDARD ISM CLAUSE. FOR VOYAGE AND TIME CHARTER PARTIES TO APPLY  AND TO BE INCORPORATED IN THE C/P.

FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT ( ISM ) CODE IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE OWNERS SHALL PROCURE THAT THE VESSEL AND "THE COMPANY " ( AS DEFINED BY THE ISM CODE ) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE. UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF RELEVANT DOCUMENT OF COMPLIANCE ( DOC ) AND SAFETY MANAGEMENT CERTIFICATES ( SMC ) TO THE CHARTERERS.

EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY. LOSS, DAMAGE, EXPENSE, OR DELAY CAUSED BY FAILURE ON THE PART OF "THE COMPANY" TO COMPLY WITH THE ISM CODE SHALL BE FOR THE OWNERS' ACCOUNT.

## CLAUSE 104.

ON DLOSP OR PASSING 1SP IN CHOPT ATDNSHINC WITHIN THE   FOLLOWING RANGES BUT ALWAYS WITHIN THE TRADING LIMITS OF THIS   CHARTER PARTY: ON DROPPING LAST OUTWARD SEA PILOT STATION  ONE SAFE PORT   EC INDIA/JAPAN RGE  PORT IN CHARTERERS' OPTION ANYTIME DAY AND NIGHT SUNDAY HOLIDAY INCLUDED.

### TRADES  WHERE HAGUE VISBY RULES APPLY

IN TRADES WHERE THE INTERNATIONAL BRUSSELS CONVENTION 1924 AS AMENDED BY THE PROTOCOL SIGNED AT BRUSSELS ON FEBRUARY 23rd , 1968-THE HAGUE – VISBY RULES – APPLY COMPULSORILY, THE PROVISIONS OF THE RESPECTIVE LEGISLATIION SHALL BE CONSIDERED INCORPORATED IN THE BILLS OF LADING. THE CARRIER TAKES ALL RESERVATIONS POSSIBLE UNDER SUCH APPLICABLE LEGISLATION, RELATING TO THE PERIOD BEFORE LOADING AND AFTER DISCHARGING AND WHILE THE GOODS ARE IN THE CHARGE OF ANOTHER CARRIER, AND TO DECK CARGO AND LIVE ANIMALS.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007
### NEW BOTH – TO – BLAME COLLISSION CLAUSE.

IF THE LIABILITY FOR ANY COLLISION IN WHICH THE VESSEL IS INVOLVED WHILE PERFORMING THIS CHARTER PARTY FALLS TO BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE UNITED STATES OF AMERICA, THE FOLLOWING CLAUSE SHALL APPLY ;

" IF THE SHIP COMES INTO COLLISION WITH ANOTHER SHIP AS A RESULT OF THE NEGLIGENCE OF THE OTHER SHIP AND ANY ACT, NEGLECT OR DEFAULT OF THE MASTER, MARINER, PILOT OR THE SERVANTS OF THE CARRIER IN THE NAVIGATION OR IN THE MANAGEMENT OF THIS SHIP, THE OWNERS OF THE GOODS CARRIED HEREUNDER WILL INDEMNIFY THE CARRIER AGIANST ALL LOSS OR LIABILITY TO THE OTHER OR NON-CARRYING SHIP OR HER OWNERS IN SO FAR AS SUCH LOSS OR LIABILITY REPRESENTS LOSS OF, OR DAMAGE TO, OR ANY CLAIM WHATSOEVER OF THE OWNERS OF SAID GOODS, PAID OR PAYABLE BY THE OTHER OR NON-CARRYING SHIP OR HER OWNERS TO THE OWNERS OF SAID GOODS AND SET OFF, RECOUPED OR RECOVERED BY THE OTHER OR NON-CARRYING SHIP OR HER OWNERS AS PART OF THEIR CLAIM AGAINST THE CARRYING SHIP OR CARRIER. "

THE FOREGOING PROVISIONS SHALL ALSO APPLY WHERE THE OWNERS, OPERATORS OR THOSE IN CHARGE OF ANY SHIP OR SHIPS OR OBJECTS OTHER THAN, OR IN ADDITIONAL TO , THE COLLIDING SHIPS OR OBJECTS ARE AT FAULT IN RESPECT TO A COLLISION OR CONTACT.

### GENERAL AVERAGE AND THE NEW JASON CLAUSE

GENERAL AVERAGE SHALL BE ADJUSTED STATED AND SETTLED ACCORDING TO THE YORK/ANTWERP RULES, 1994 IN LONDON, BUT WHERE THE ADJUSTMENT IS MADE IN ACCORDANCE WITH THE LAW AND PRACTICE OF THE UNITED STATES OF AMERICAN, THE FOLLOWING CLAUSE SHALL APPLY :-

### NEW JASON CLAUSE

IN THE EVENT OF ACCIDENT, DANGER DAMAGE OR DIASTER BEFORE OR AFTER COMMENCEMENT OF THE VOYAGE RESULTING FROM ANY CAUSE WHATSOEVER, WHETHER DUE TO NEGLIGENCE OR NOT, FOR WHICH, OR FOR THE CONSEQUENCES OF WHICH, THE CARRIER IS NOT REASONSIBLE BY STATUTE, CONTRACT, OR OTHERWISE, THE GOODS, SHIPPERS, CONSIGNEES OR OWNERS OF THE GOODS SHALL CONTRIBUTE WITH THE CARRIER IN GENERAL AVERAGE TO THE PAYMENT OF ANY SACRIFICES, LOSSES OR EXPENSES OF A GENERAL AVERAGE NATURE THAT MAY BE MADE ON INCURRED, AND SHALL PAY SALVAGE AND SPECIAL CHARGES INCURRED IN RESPECT OF THE GOODS.

IF A SALVING SHIPS IS OWNED OR OPERATED BY THE CARRIER, SALVAGE SHALL BE PAID FOR AS FULLY AS IF SUCH SALVING SHIP OR SHIPS BELONGED TO STRANGER. SUCH DEPOSIT AS THE CARRIERS OR HIS AGENTS MAY DEEM SUFFICIENT TO COVER THE ESTIMATES CONTRIBUTION OF THE GOODS AND ANY SALVAGE AND SPECIAL CHARGES THEREON SHALL, IF REQUIRED, BE MADE BY THE GOODS, SHIPPERS, CONSIGNEES OR OWNERS OF THE GOODS TO THE CARRIER BEFORE DELIVERY.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

### BIMCO BUNKER FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES .

(A) WITHOUT PREJUDICE TO ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY, THE CHARTERERS SHALL SUPPLY FUELS OF SUCH SPECIFICATIONS AND GRADES TO PERMIT THE VESSEL,

AT ALL TIMES, TO COMPLY WITH THE MAXIMUM SULPHUR CONTENT REQUIREMENTS OF ANY EMISSION CONTROL ZONE WHEN THE VESSEL IS ORDERED TO TRADE WITHIN THAT ZONE.

THE CHARTERERS ALSO WARRANT THAT ANY BUNKER SUPPLIERS, BUNKER CRAFT OPERATORS AND BUNKER SURVEYORS USED BY THE CHARTERERS TO SUPPLY SUCH FUELS SHALL COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI, INCLUDING THE GUIDELINES IN RESPECT OF SAMPLING AND THE PROVISION OF BUNKER DELIVERY NOTES.

THE CHARTERERS SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS IN RESPECT OF ANY LOSS, LIABILITY, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE CHARTERERS' FAILURE TO COMPLY WITH THIS SUB-CLAUSE (A).

(B) PROVIDED ALWAYS THAT THE CHARTERERS HAVE FULFILLED THEIR OBLIGATIONS IN RESPECT OF THE SUPPLY OF FUELS IN ACCORDANCE WITH SUB-CLAUSE (A), THE OWNERS WARRANT THAT:

(I) THE VESSEL SHALL COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI AND WITH THE REQUIREMENTS OF ANY EMISSION CONTROL ZONE; AND

(II) THE VESSEL SHALL BE ABLE TO CONSUME FUELS OF THE REQUIRED SULPHUR CONTENT WHEN ORDERED BY THE CHARTERERS TO TRADE WITHIN ANY SUCH ZONE.

SUBJECT TO HAVING SUPPLIED THE VESSEL WITH FUELS IN ACCORDANCE WITH SUB-CLAUSE (A), THE CHARTERERS SHALL NOT OTHERWISE BE LIABLE FOR ANY LOSS, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE VESSEL'S FAILURE TO COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI.

(C) FOR THE PURPOSE OF THIS CLAUSE, "EMISSION CONTROL ZONE" SHALL MEAN ZONES AS STIPULATED IN MARPOL ANNEX VI AND/OR ZONES REGULATED BY REGIONAL AND/OR NATIONAL AUTHORITIES SUCH AS, BUT NOT LIMITED TO, THE EU AND THE US ENVIRONMENTAL PROTECTION AGENCY.

### BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERS 2004 ( CODE NAME "CONWARTIME 2004" )

(A) FOR THE PURPOSE OF THIS CLAUSE, THE WORDS:

(I) "OWNERS" SHALL INCLUDE THE SHIPOWNERS, BAREBOAT CHARTERERS, DISPONENT OWNERS, MANAGERS OR OTHER OPERATORS WHO ARE CHARGED WITH THE MANAGEMENT OF THE VESSEL, AND THE MASTER; AND

(II)    "WAR RISKS" SHALL INCLUDE ANY ACTUAL, THREATENED OR REPORTED :

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

III)   WAR; ACT OF WAR; CIVIL WAR; HOSTILITIES; REVOLUTION; REBELLION; CIVIL COMMOTION; WARLIKE OPERATIONS; LAYING OF MINES; ACTS OF PIRACY; ACTS OF TERRORISTS; ACTS OF HOSTILITY OR MALICIOUS DAMAGE; BLOCKADES (WHETHER IMPOSED AGAINST ALL VESSELS OR IMPOSED SELECTIVELY AGAINST VESSELS OF CERTAIN FLAGS OR OWNERSHIP, OR AGAINST CERTAIN CARGOES OR CREWS OR OTHERWISE HOWSOEVER); BY ANY PERSON, BODY, TERRORIST OR POLITICAL GROUP, OR THE GOVERNMENT OF ANY STATE WHATSOEVER, WHICH, IN THE REASONABLE JUDGEMENT OF THE MASTER AND/OR THE OWNERS, MAY BE DANGEROUS OR ARE LIKELY TO BE OR TO BECOME DANGEROUS TO THE VESSEL, HER CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL.

(B) THE VESSEL, UNLESS THE WRITTEN CONSENT OF THE OWNERS BE FIRST OBTAINED, SHALL NOT BE ORDERED TO OR REQUIRED TO CONTINUE TO OR THROUGH, ANY PORT, PLACE, AREA OR ZONE (WHETHER OF LAND OR SEA), OR ANY WATERWAY OR CANAL, WHERE IT APPEARS THAT THE VESSEL, HER CARGO, CREW OR OTHER PERSONS ON BOARD THE VESSEL, IN THE REASONABLE JUDGMENT OF THE MASTER AND/OR THE OWNERS, MAY BE, OR ARE LIKELY TO BE, EXPOSED TO WAR RISKS. SHOULD THE VESSEL BE WITHIN ANY SUCH PLACE AS AFORESAID, WHICH ONLY BECOMES DANGEROUS, OR IS LIKELY TO BE OR TO BECOME DANGEROUS, AFTER HER ENTRY INTO IT, SHE SHALL BE AT LIBERTY TO LEAVE IT.

(C ) THE VESSEL SHALL NOT BE REQUIRED TO LOAD CONTRABAND CARGO, OR TO PASS THROUGH ANY BLOCKADE, WHETHER SUCH BLOCKADE BE IMPOSED ON ALL VESSELS, OR IS IMPOSED SELECTIVELY IN ANY WAY WHATSOEVER AGAINST VESSELS OF CERTAIN FLAGS OR OWNERSHIP, OR AGAINST CERTAIN CARGOES OR CREWS OR OTHERWISE HOWSOEVER, OR TO PROCEED TO AN AREA WHERE SHE SHALL BE SUBJECT, OR IS LIKELY TO BE SUBJECT TO A BELLIGERENTS' RIGHT OF SEARCH AND/OR CONFISCATION.

(D) (I)  THE OWNERS MAY EFFECT WAR RISKS INSURANCE IN RESPECT OF THE HULL AND  MACHINERY OF THE VESSEL AND THEIR OTHER INTERESTS (INCLUDING, BUT NOT  LIMITED TO,

LOSS OF EARNINGS AND DETENTION, THE CREW AND THEIR PROTECTION AND INDEMNITY RISKS), AND THE PREMIUMS AND/OR CALLS THEREFOR SHALL BE FOR THEIR ACCOUNT.

      (II)  IF THE UNDERWRITERS OF SUCH INSURANCE SHOULD REQUIRE PAYMENT OF PREMIUMS AND/OR CALLS BECAUSE, PURSUANT TO THE CHARTERERS' ORDERS, THE VESSEL IS WITHIN, OR IS DUE TO ENTER AND REMAIN WITHIN, OR PASS THROUGH ANY AREA OR AREAS WHICH ARE SPECIFIED BY SUCH UNDERWRITERS AS BEING SUBJECT TO ADDITIONAL PREMIUMS BECAUSE OF WAR RISKS, THEN THE ACTUAL PREMIUMS AND/OR CALLS PAID SHALL BE REIMBURSED BY THE CHARTERERS TO THE OWNERS AT THE SAME TIME AS THE NEXT PAYMENT OF HIRE IS DUE, OR UPON REDELIVERY, WHICHEVER OCCURS FIRST.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

(E)  IF THE OWNERS BECOME LIABLE UNDER THE TERMS OF EMPLOYMENT TO PAY TO THE CREW ANY BONUS FOR ADDITIONAL WAGES IN RESPECT OF SAILING INTO AN AREA WHICH IS DANGEROUS IN THE MANNER DEFINED BY THE SAID TERMS, THEN THE  ACTUAL BONUS OR ADDITIONAL WAGES PAID SHALL BE REIMBURSED TO THE OWNERS  BY THE CHARTERERS AT THE SAME TIME AS THE NEXT PAYMENT OF HIRE IS DUE, OR  UPON REDELIVERY, WHICHEVER OCCURS FIRST.

(F)  THE VESSEL SHALL HAVE LIBERTY:-

(I)   TO COMPLY WITH ALL ORDERS, DIRECTIONS, RECOMMENDATIONS OR ADVICE AS TO DEPARTURE, ARRIVAL, ROUTES, SAILING IN CONVOY, PORTS OF CALL, STOPPAGES, DESTINATIONS, DISCHARGE OF CARGO, DELIVERY, OR IN ANY OTHER WAY WHATSOEVER, WHICH ARE GIVEN BY THE GOVERNMENT OF THE NATION UNDER WHOSE FLAG THE VESSEL SAILS, OR OTHER GOVERNMENT TO WHOSE LAWS THE OWNERS ARE SUBJECT, OR ANY OTHER GOVERNMENT, BODY OR GROUP WHATSOEVER ACTING WITH THE POWER TO COMPEL COMPLIANCE WITH THEIR ORDERS OR DIRECTIONS;

(II)  TO COMPLY WITH THE ORDER, DIRECTIONS OR RECOMMENDATIONS OF ANY WAR RISKS UNDERWRITERS WHO HAVE THE AUTHORITY TO GIVE THE SAME UNDER THE TERMS OF THE WAR RISKS INSURANCE;

(III) TO COMPLY WITH THE TERMS OF ANY RESOLUTION OF THE SECURITY COUNCIL OF THE UNITED NATIONS, THE EFFECTIVE ORDERS OF ANY OTHER SUPRANATIONAL BODY WHICH HAS THE RIGHT TO ISSUE AND GIVE THE SAME, AND WITH NATIONAL LAWS AIMED AT ENFORCING THE SAME TO WHICH THE OWNERS ARE SUBJECT, AND TO OBEY THE ORDERS AND DIRECTIONS OF THOSE WHO ARE CHARGED WITH THEIR ENFORCEMENT;

   (IV) TO DISCHARGE AT ANY OTHER PORT ANY CARGO OR PART THEREOF WHICH MAY  RENDER THE VESSEL LIABLE TO CONFISCATION AS A CONTRABAND CARRIER;

   (V) TO CALL AT ANY OTHER PORT TO CHANGE THE CREW OR ANY PART THEREOF OR  OTHER PERSONS ON BOARD THE VESSEL WHEN THERE IS REASON TO BELIEVE  THAT THEY MAY BE SUBJECT TO INTERNMENT, IMPRISONMENT OR OTHER  SANCTIONS.

(G)  IF IN ACCORDANCE WITH THEIR RIGHTS UNDER THE FOREGOING PROVISIONS OF THIS  CLAUSE, THE OWNERS SHALL REFUSE TO PROCEED TO THE LOADING OR DISCHARGING  PORTS, OR ANY ONE OR MORE OF THEM, THEY SHALL IMMEDIATELY INFORM THE  CHARTERERS. NO CARGO SHALL BE

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

DISCHARGED AT ANY ALTERNATIVE PORT WITHOUT FIRST GIVING THE CHARTERERS NOTICE OF THE OWNERS' INTENTION TO DO SO AND REQUESTING THEM TO NOMINATE A SAFE PORT FOR SUCH DISCHARGE. FAILING SUCH NOMINATION BY THE CHARTERERS WITHIN 48 HOURS OF THE RECEIPT OF SUCH NOTICE AND REQUEST, THE OWNERS MAY DISCHARGE THE CARGO AT ANY SAFE PORT OF THEIR OWN CHOICE.

(H) IF IN COMPLIANCE WITH ANY OF THE PROVISIONS OF SUB-CLAUSES (B) TO (G) OF THIS CLAUSE ANYTHING IS DONE OR NOT DONE, SUCH SHALL NOT BE DEEMED A DEVIATION, BUT SHALL BE CONSIDERED AS DUE FULFILLMENT OF THIS CHARTER PARTY.

### U.S. CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE FOR TIME CHARTER PARTIES

(A) IF THE VESSEL TO LOADS OR CARRIES CARGO DESTINES FOR THE US OR PASSING THROUGH US PORTS IN TRANSIT, THE CHARTERERS SHALL COMPLY WITH THE CURRENT US CUSTOMS REGULATIONS ( 19 CFR 4.7 ) OR ANY SUBSEQUENT AMENDMENTS THERETO AND SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS AND SHALL, IN THEIR OWN NAME, TIME AND EXPENSE :

I) HAVE IN PLACE A SCAC (STANDARD CARRIER ALPHA CODE);

II ) HAVE IN PLACE AN ICB (INTERNATIONAL CARRIER BOND );

III) PROVIDE THE OWNERS WITH A TIMELY CONFIRMATION OF I) AND II) ABOVE; AND

IV) SUBMIT A CARGO DECLARATION BY AMS (AUTOMATED MANIFEST SYSTEM) TO THE US CUSTOMS AND PROVIDE THE OWNERS AT THE SAME TIME WITH A COPY THEREOF.

( B ) THE CHARTERERS ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMELSS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE ) AND/OR ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE ( A ).

SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, THE VESSEL SHALL REMAIN ON HIRE.

( C ) IF THE CHARTERERS' ICB IS USED TO MEET ANY PENALTIES, DUTIES, TAXES OR OTHER CHARGES WHICH ARE SOLELY THE RESPONSIBILITY OF THE OWNERS, THE OWNERS SHALL PROMPLY REIMBURSE THE CHARTERERS FOR THOSE AMOUNTS.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

( D ) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE CHARTRERERS PURSUANT TO THIS CLAUSE AND FOR THE PURPOSE OF THE US CUSTOMS REGULATIONS ( 19 CFR 4.7 )SHALL BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF LADING, OTHER CONTRACT, LAW OR REGULATION.

### GENERAL CLAUSE PARAMOUNT

THE INTERNATIONAL CONVENTION FOR THE UNIFICATION OF CERTAIN RULES OF LAW RELATING TO BILLS OF LADING SIGNED AT BRUSSELS ON 25 AUGUST 1924 ( " THE HAGUE RULE " ) AS AMENDED BY THE PROTOCOL SIGNED AT BRUSSELS ON 23 FEBRUARY 1968 ( " THE HAGUE – VISBY RULES " ) AND AS ANACTED IN THE COUNTRY OF SHIPMENT SHALL APPLY TO THIS CONTRACT. WHEN THE HAGUE-VISBY RULES ARE NOT ENACTED IN THE COUNTRY OF SHIPMENT, THE CORRESPONDING LEGISLATIONOF THE COUNTRY OF DESTINATION SHALL APPLY, IRRESPECTIVE OF WHETHER SUCH LEGISLATION MAY ONLY REGULATE OUTBOUND SHIPMENTS.

WHEN THERE IS NO ENACTMENT OF THE HAGUE-VISBY RULES IN EITHER THE COUNTRY OF SHIPMENT OR IN THE COUNTRY OF DESTINATION, THE HAGUE-VISBY RULES SHALL APPLY TO THIS CONTRACT SAVE WHERE THE HAGUE RULES AS ENACTED IN THE COUNTRY OF SHIPMENT OF IF NO SUCH ENACTMENT IS IN PLACE, THE HAGUE RULES AS ENACTED IN THE COUNTRY OF DESTINATION APPLY COMPULSORILY TO THIS CONTRACT.

T

HE PROTOCAL SIGNED AT BRUSSELS ON 21 DECEMBER 1979 (" THE SDR PROTOCOL 1979 ") SHALL APPLY WHERE THE HAGUE –VISBY RULES APPLY, WHETHER MANDATORILY OR BY THIS CONTRACT.

THE CARRIER SHALL IN NO CASE BE RESPONSIBLE FOR LOSS OF OR DAMAGE TO CARGO ARISING PRIOR TO LOADING, AFTER DISCHARGING, OR WHILE THE CARGO IS IN CHARGE OF ANOTHER CARRIER, OR WITH RESPECT TO DECK CARGO AND LIVE ANIMALS.

### U.S.A CLAUSE PARAMOUNT

THIS BILLS OF LADING SHALL HAVE EFFECT SUBJECT TO THE PROVISIONS OF THE CARRIAGE OF GOODS BY SEA ACT OF THE UNITED STATES, APPROVED 16 APRIL, 1936, WHICH SHALL BE DEEMED TO BE INCORPORATED HEREIN, AND NOTHING HEREIN CONTAINED SHALL BE DEEMED A SURRENDER BY THE CARRIER OF ANY OF ITS RIGHTS OR IMMUNITIES OR AN INCREASE OF ANY OF ITS RESPONSIBILITIES OR LIABILITIES UNDER SAID ACT. THE PROVISIONS STATED IN SAID ACT SHALL ( EXCEPT AS MAY BE OTHERWISE SPECIFICALLY HEREIN ) GOVERN BEFORE THE GOODS ARE LOADED ON AND AFTER THEY ARE DISCHARGED FROM THE SHIP AND THROUGHOUT THE ENTIRE TIME THE GOODS ARE IN CUSTODY OF THE CARRIER.

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

THE CARRIER SHALL NOT BE LIABLE IN ANY CAPACITY WHATSOEVER FOR ANY DELAY, NON-DELIVERY OR MISS-DELIVERY, OR LOSS OF OR DAMAGE TO THE GOODS OCCURING WHILE THE GOODS ARE NOT IN THE ACTUAL CUSTODY OF THE CARRIER.

### CANADIAN CLAUSE PARAMOUNT

THIS BILL OF LADING, SO FAR AS IT RELATED TO THE CARRIAGE OF GOODS BY WATER, SHALL HAVE EFFECT, SUBJECT TO THE PROVISIONS OF THE WATER CARRIAGE OF GOODS ACT, 1936, ENACTED BY THE PARLIAMENT OF THE DOMINION OF CANADA, WHICH SHALL BE DEEMED TO BE INCORPORATED HEREIN, AND NOTHING HEREIN CONTAINED SHALL BE DEEMED A SURRENDER BY THE CARRIER OF ANY OF ITS RIGHTS OR IMMUNITIES OR AN INCREASE OF ANY OF ITS RESPONSIBILITIES OR LIABILITIES UNDER THE SAID ACT.

IF ANY TERMS OF THIS BILL OF LADING BE REPUGNANT TO SAID ACT TO ANY EXTENT, SUCH TERM SHALL BE VOID TO THAT EXTENT, BUT NO FURTHER.

### BIMCO U.S. CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE FOR TIME CHARTER PARTIES

( A ) IF THE VESSEL TO LOADS OR CARRIES CARGO DESTINES FOR THE US OR PASSING THROUGH US PORTS IN TRANSIT, THE CHARTERERS SHALL COMPLY WITH THE CURRENT US CUSTOMS REGULATIONS ( 19 CFR 4.7 ) OR ANY SUBSEQUENT AMENDMENTS THERETO AND SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS AND SHALL, IN THEIR OWN NAME, TIME AND EXPENSE :

I) HAVE IN PLACE A SCAC (STANDARD CARRIER ALPHA CODE);

II ) HAVE IN PLACE AN ICB (INTERNATIONAL CARRIER BOND );

III) SUBMIT A CARGO DECLARATION BY AMS (AUTOMATED MANIFEST SYSTEM) TO THE US CUSTOMS AND PROVIDE THE OWNERS AT THE SAME TIME WITH A COPY THEREOF.

( B ) THE CHARTERERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMELSS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE ) AND/OR ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS' FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE ( A ). SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY,  ALL TIME USED OR LOST SHALL COUNT AS LAYTIME OR, IF THE VESSEL IS ALREADY OR DEMURRAGE, TIME ON DEMURRAGE.

( C ) THE OWNERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY,  DEFEND AND HOLD HARMLESS THE CHARTERERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER ( INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE ) AND ANY EXPENSES, FINES, PENALTIES AND ALL OTHER

## RIDER CLAUSE TO M.V. " WORADA NAREE" /NASCO
## CHARTER PARTY DATED 11TH MAY, 2007

CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE OWNERS' FAILURE  TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, ALL TIME USED OR LOST SHALL NOT COUNT AS LAYTIME OR, IF THE VESSEL IS ALREADY ON DEMURRAGE, TIME ON DEMURRAGE.

( **D** ) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE OWNERS PURSUANT TO THIS CLAUSE AND FOR THE PURPOSE OF THE US CUSTOMS REGULATIONS ( 19 CFR 4.7 ) SHALL BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF LADING, OTHER CONTRACT, LAW OR REGULATION.

*-THE END-*

# Exhibit 3
## (Ahn Sun Ju Declaration)

*Exhibit 3*
*Ahn Sun Ju Declaration*

/******************* INMARSAT-C Received message *****************/

Beijing LES 123456789 12-MAY-2007 03:20:15 359268

TO:MASTER OF MV WORANA NAREE
FM:NASCO/ZOE

Pls find attached as chtrs sailing instruction as below(1)

DEAR CAPT

Pls find site. on as latok .
WE ARE PLEASED TO INFORM YOU THAT NASCO IS YOUR NEXT TIME CHARTERER,
OUR CONTACT DETAILS:
TEL: 86 25 58593290(DIR)
FAX: 86 25 58820876
EMAIL: OPERATION@NASCO.COM.CN , NASCOCOM@JSMAIL.COM.CN
OP:PIC: ZOE (MOB: 86-13515119870)
OP:MANAGER: CAPT DING (MOB: 86-13515119880)
YR VSL HAS BEEN FIXED TO LOAD GENERAL CGO FM THE PORTS INDICATED BELOW.
WE EXPECT YR VSL TO MAINTAIN FOLL TENTATIVE PORT ROTATION AND
SCHEDULE:
CHANGSHU(L)/ SHANGHAI(L)/ SPORE(B)/ JEDDAH(D)
IF ANY CHANGE IN PORT ROTATION, WE'LL INFO U IN DUE COURSE. THE
PRESENT CGO TO BE LOADED ON YR GD VSL ARE ABT 23000MTS STL PRODUCTS AND
PARTS EQUIPMENT. CGO DETAILS ARE ABT ONLY. IF ANY CHANGE, WILL KEEP YOU
POSTED.
PLS ENSURE HOLDS ARE SUITABLY CLEANED SO AS TO ACCOMMODATE ABOVE CGO.
VSL MUST BE READY TO RECEIVE THE INTENTED CGO PRIOR ARRIVING AT LP.
HOLDS CONDITION IS TO BE ASCERTAINED BY INDEPENDENT SURVEYOR AT LP OR
ANCH. PLS ENSURE GEAR IN GOOD ORDER FOR CGO.
PLS KINDLY COOPERATE WZ OUR PORT CAPTAIN/AGENT/STEVEDORE TO LOAD FULL
CGO IN HOLD AND ON DECK SMOOTHLY AND ENSURE TT A SAFE STOWAGE IS GIVEN
TO ALL CGO BOOKED FOR YR VSL. IF ANY DOUBT/UNQUIRY REGARDING S/P, PLS
DISCUSS SAME WZ OUR OP MANAGER CAPT DING VIA 13515119880. DURING LDG/
DISCHG, PLS ALL CREW MEMBER KEEP CLOSE WATCH ON CGO OPERATION IN ORDER
TO PREVENT ANY POSSIBLE CGO SHORTAGE/DAMAGE ETC.
AFT COMPLETE LOADING, PLS AUTHORIZE L/P AGENT TO SIGN/RELEASE ORIGINAL
BS/L ON YR HEHALF, WHEN SIGN SOF KINDLY TAKE NOTE OF ALL STOPPAGES ETC
AND AMENDED AS AND WHERE NECESSARY. PLS ALSO CONCLUDE A FULL FINAL S/P
IN DETAILS ON COPY TO THIS OFFICE FOR DP USE.
BUNKER ROB TO BE REPORTED DAILY WHETHER VSL IS IDLE/LODG/DISCHG IN PORT
OR WAITING AT ANCH. PLS ALSO REPORT BUNKER ROB UPON ARRIVAL/ DEPARTURE
EVERY PORT AS PER ACTUAL SOUNDING. ONCE SAILED FM SHANGHAI, PLS
IMMEDIATELY CALCULATE THE BUNKER CONSUMPTION FOR THE WHOLE VOY SO TT WE
CAN STEM BUNKER FR YR GD VSL.

(to be continua)
NNNN. 5 .

07-05-12 03:23

```
/********************** Received message **********************/

Beijing LES 123456789 12-MAY-2007 03:21:44 358273

TO:MASTER OF MV WISDOM NAREE
FM:NASCO/ZCE

Pls find attached as chtrs sailing instruction as below(2)

AGENT:
CHANGSHU:
CHANGSHU HOTHEAR INTERNATIONAL SHIPPING AGENCY CO., LTD
TEL: 86-512-52297660
FAX: 86-512-52297662/52297658
PIC: ALEX
MOB: 86-13862305970
E/M: honghaics@hotheart-agency.com
SHANGHAI
SHANGHAI FENGLIAN SHIPPING AGENCY CO.,LTD.
TEL: 86-21-65452138
FAX: 86-21-65452174
PIC: HUANG QINGFENG
MOB: 86-13311670160
E-MAIL: FL_SHP@VIP.163.COM
SINGAPORE
DASIN AGENCY PTE LTD
TEL: 65-62219168
FAX: 65-63830266
PIC: MR.ZHAO
EMAIL: dasin@singnet.com.sg
HP: 65-96246838
JEDDAH
KANOO SHIPPING AGENCIES
TEL: 966 2 263 2954 EXT 201,206,215,216,216,223,224,231
TLX: 601039 VROM SJ/ 601057 KANSHP SJ
FAX: 966 2 263 3049/ 263 2910
PIC: I. MAHIR
E/M: ibrahimmahir@jed.kanoosa.com

(to be continue)
NNNNN


07-05-12 03:25
```

```
/****************** INMARSAT-C Received message ******************/
   ****,,

Beijing LES 123456789 12-MAY-2007 03:23:04 358278

TO:MASTER OF MV WORANA NAREE
FM:NASCO/ZOE

Pls find attached as chtrs sailing instruction as below(3)


WE INVITED AW1 TO CARRY OUT THE ROUTE TRACE AND THEY WILL CONTACT WZ
YOU DIRECTLY. PLS KEEP IN CLOSE TOUCH WZ THEM.
COMMUNICATION
WE'D LIKE TO HIGHLIGHT FOLL IMPORTANT POINTS FR YR INFO AND COMPLIANCE.
  MASTER TO EMAIL/TLX NEXT PORT AGENT ON SAILING FM EACH PORT, GIVING
SAILING DATE AND TIME, QTTY LOADED ACCORDING TO DRAFT OF THE VSL AS
WELL AS MANIFTED WITHS AND CUBIC METERS ALSO ETA & ARRIVAL DRAFT NEXT
PORT AND ANY AMENDMENTS DURING THE VOY, IF NECESSARY.
MUSTER MUST REPORT TO US W/O FAIL AS PER THE PRESCRIBED FORMATS. IN
ADDITION, PLS SEND EMAIL WHEN VSL SHIFT FM BERTH/ANCO TO ANOTHER
BERTH/ANCH OR ANYTHING CONCERNING CGO A/O VSL OPERATIONAL STATUS. IN
SHORT, WE MUST BE KEPT INFORMED AT ALL TIMES. ALL MSGS TO AGENTS AND
OTHER PRATIES MUST BE COPIED TO US FOR TRACING.
STANDARD FORMATS FOR REPORTS
A.DEPARTURE REPORT
S08A DEPARTURE PORT/NEXT PORT, DEPARTURE TIME, DAY, MONTH, ADDED BUNK-
ER/FW QTY, REMAINED BUNKER/FW ON BOARD, DEPARTURE DRAFT, ESTIMATE TIME,
  DAY, MONTH OF ARRIVING NEXT PORT
HOLD NO. LOADPORT/DISCHPORT, CGO CATEGORY/QTYTLL QTY
EXAMPLE:S08A SHANGHAI/SINGAPORE,04051200L,AF200 AD50 AW 300,F 320 D 100
  2 450,0740/0720 ETA 04080900L HK
H1# SHAI/S'PORE,STEEL/5134PCS/2560MT,
H2#/SHAI/PASIR GUDANG,STEEL/5600PCS/2795MT
TTL 10734PCS/5355MT
B.NOON REPORT
S12A TIME,LAT/LONG/COURSE/SPEED,DAILY IFG CONS/DAILY MDO CONS/MAIN
ENGINE ROTATE SPEED,AIR PRESSURE/TEMPERATURE,WEATHER CONDITION/WIND
DIRECTION,WIND_GRADE/SEA SWELL,DISTANCE TO NEXT PORT,THE LAT/LONG AF:
24HR LATER.
EXAMPLE:S12A 031200L,1028N/11255E/210/11 9.0/0.9/184 1080/26 E/NE/4/3
TOGO 1000 E24/1408N/11380E

(to be continue)
NNNNN



07-05-12 03:28
```

```
****************** INMARSAT-C Received message ******************/

Beijing LES 123456789 12-MAY-2007 03:24:04 358281

TO:MASTER OF MV WORANA NAREE
FM:NABCO/ZOE

pls find attached as chtrs sailing instruction as below(4)

C: BERTH REPORT
S10C PORT, ACTUAL BERTH TIME, DRAFT, BUNKER/FW ON BOARD, POB TIME,
ESTIMATE TIME FR LOAD/DISCH OPERAITON, EST TIME OF COMPLETING THE
LOAD/DISCH OPERATION
EXAMPLE: S10C SS'PORE 04051700L 0670/0710 F200 D100 W250 POB 04051600L
ETC 04051900L ETF 04080900L
D: WAITG BERTH REPORT
S10D, PORT,ACTUAL TIME OF ARRIVING ANCHORAGE,DRAFT,BUNKER/FW ON
BOARD,ANCHORAGE POSITION,EST BERTH TIME
EXAMPLE: S10D, S'PORE, 05220800L.0690.0720,F240 D37 W210 0119N/10408E
ETB 05231000L
E: CONTINUE TO WAIT BERTH REPORT
S10E,TIME ANCHORAGE POSITION
EXAMPLE: S10E 03170800L 4539N/01315E WAITG BERTH
F: LOAD/DISCH CARGO REPORT AT 0800L
S11A, PORT, TIME,L/D QTY,GANGS,WEATHER CONDITION,EST TIME OF COMP L/D
EXAMPLE: S11A BANKOK 01120800L L/3455.00MT 3GANGS CLOUDY ETC 01141200L
PLS CFM SARE RECIPT BY RETURN AND WISH ALL YR CREW MEMBER GOOD HEALTH.
MEANTIMES, PLS ADV YR CONTACT DETAILS INCL: TEL./FAX/E-MAIL
BON VOYAGE!
NABCO

(ALL COMPLETE)
NNNN

07-05-12 03:31
```

# Exhibit 4
# (Ahn Sun Ju Declaration)

*Exhibit 4*
*Ahn Sun Ju Declaration*

# TradeWinds.no | weekly

quicksearch  

Home
Catch up
Web TV
Weekly

LNG Unlimited
Jobs
Markets
Classified
Archive
S&P data
中文文摘
Conferences
Subscription
Advertising
Contact us
Help
Log out

## Precious sues Sunwoo over bill of lading

A cargo of rusty steel bars has led Thai bulker owner Precious Shipping to sue Sunwoo Merchant Marine for $8.5m over an allegedly fraudulently issued bill of lading.

Precious Shipping, through one-ship company Precious Pearls, brought the suit in a US federal court over a charter of its 25,400-dwt bulker *Worada Naree* (built 1983) to Singapore-registered Tiger International Line.

The lawsuit brings in Sunwoo, the South Korean bulker owner and charterer, because the company guaranteed Tiger International performance under the April charter and indemnified Bangkok-based Precious.

The civil complaint recently filed in the federal court for New York's southern district claims that Tiger International, also named as a defendant, issued one bill of lading to Precious that showed pre-shipping rust and damage to the cargo. Then, it issued a second, "clean" bill of lading to cargo owners that had no mention of the rust.

Precious's attorney, New York's Thomas Belknap, argues that this was fraud or at least a breach of the charter.

Under the charter, the *Worada Naree* was to carry a cargo of hot-rolled reinforcing steel bars from Changshu, China, to Jeddah, Saudi Arabia.

But at Jeddah, Tiger International asked Precious to release the cargo, although the original bill of lading was not yet available. Sunwoo issued an indemnification letter to Precious to allow the offloading to move forward.

But the unnamed cargo owners, who claim to have received the clean bill, are demanding damages of $6.5m from Precious over the rust.

Precious also wants the federal court to use maritime attachment to award legal costs and interest, estimated at $2.1m.

Sunwoo could not be reached for comment.

*By Eric Martin, Stamford*

published: 05 October 2007

Latest a
McAspha
05.10.200
Aboitiz b
05.10.200
Asbestos
05.10.200
EU agree
05.10.200
Aker por
GOL bon
05.10.200
Yard wo
Cruisesh
models
US Shipp
05.10.200
DryShips
04.10.200
Bottle sa
04.10.200
Tidewate
04.10.200
Paragua
04.10.200
Mail deli
in the UI
a postal
....But yo
paper in
site. 04.
Eurosea:
04.10.200
Kaspar s
04.10.200
Off the b
Arctic Pr
waiting
U-Ming t

Excel hi
04.10.200
Wilson b
04.10.200
Stolt is s
Norden i
04.10.200
Torm ink
04.10.200