UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                     :

PRECIOUS PEARLS, LTD.,              :

                                     :

                Plaintiff,        :           07 Civ. 8325 (JGK)

                                     :

            - against -       :    MEMORANDUM OF LAW IN
                                   :    SUPPORT OF MOTION TO

TIGER INTERNATIONAL LINE PTE LTD. and :    VACATE ATTACHMENT
SUNWOO MERCHANT MARINE CO., LTD.,  :

                                   :           (ECF)

            Defendants.      :

                                   :

                                   :

                                   :

--------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE ATTACHMENT

NOURSE & BOWLES LLP
One Exchange Plaza
@55 Broadway
New York, New York 10006
(212) 952-6200

Shaun F. Carroll (SC 9898)
Nourse & Bowles, LLP
One Exchange Plaza
New York, New York 10006
Telephone:    (212) 952-6200
Facsimile:    (212) 952-0345
E-mail:    scarroll@nb-ny.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                 :

PRECIOUS PEARLS, LTD.,                 :
                                 :
          Plaintiff,         :         07 Civ. 8325 (JGK)
                                 :
      - against -        :    MEMORANDUM OF LAW IN
                                 :    SUPPORT OF MOTION TO
TIGER INTERNATIONAL LINE PTE LTD. and :    VACATE ATTACHMENT
SUNWOO MERCHANT MARINE CO., LTD.,    :
                                 :           (ECF)
         Defendants.       :
                                 :
                                 :
                                 :
--------------------------------------------------------X

### Statement

    Defendants, Tiger International Line Pte Ltd. ("Tiger") and Sunwoo Merchant Marine Co., Ltd. ("Sunwoo"),  by their attorneys, Nourse & Bowles, LLP, submit this memorandum in support of their motion pursuant to Rule B and E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure to vacate this Court's Ex Parte Order of Process of Maritime Attachment and Garnishment dated September 24, 2007, dismiss the Verified Complaint herein and

grant Defendants leave to seek damages, attorneys' fees and costs incurred in connection with this motion, and for such other and further relief as this Court deems proper.

Defendants move to vacate this highly burdensome and improper $8.5 million Ex Parte attachment because it is predicated upon an entirely premature, contingent and substantively speculative indemnity claim for alleged cargo damage, and as such fails to state a "valid maritime claim" within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime claims, and on the further ground that the allegations of fraud contained in the Verified Complaint are wholly unsupported, unsupportable and improper.

It is manifestly unjust for Plaintiff Precious to tie up $8.5 million in Sunwoo's assets, imposing a significant financial burden on Sunwoo, disrupting Sunwoo and Tiger's business transactions, and damaging Defendants business reputations with unfounded allegations of fraud, all before Precious has incurred any actual loss or expense.

### Facts

The facts of this matter are set forth in the Declaration of Ahn Sun Ju dated October 16, 2007 ("Ahn Declaration") submitted herewith as Exhibit "C" to the Affidavit of Shaun F. Carroll dated October 17, 2007 ("Carroll Affidavit").

Plaintiff, Precious Pearls Ltd. ("Precious" or "Plaintiff") commenced this action by filing its Verified Complaint herein on September 24, 2007, alleging an indemnity

claim in the amount of $8.5 million and demanding issuance of an Ex Parte Order of Maritime Attachment and Garnishment in like amount against the assets of Tiger and Sunwoo. Carroll Affidavit ¶1.

On September 24, 2007 this Court issued its Ex Parte Process of Maritime Attachment and Garnishment dated September 24, 2007 (the "Attachment Order") against the assets of Defendants Tiger and Sunwoo. Carroll Affidavit ¶2.

Pursuant to the Attachment Order, Plaintiff attached numerous electronic fund transfers to or from Tiger and/or Sunwoo, including on October 5, 2007 an electronic funds transfer originated by Sunwoo in the amount of $8.5 million in the hands of J.P. Morgan Chase (the "Sunwoo Funds"). Carroll Affidavit ¶3.

Plaintiffs indemnity claim against Tiger and Sunwoo arises out of the carriage of a cargo of hot rolled steel products (the "Cargo") between Changshu Port, China to Port Jeddah, Saudi Arabia in May and June 2007, pursuant to a series of charter parties between Precious, Tiger and Sunwoo, and ultimately to other third party charterers who are not parties to this lawsuit, and certain bills of lading issued at the behest of one or more of those third parties. Carroll Affidavit ¶4.

Plaintiff's Verified Complaint styles its claim as one for "fraudulent conduct and/or breach of the charter [party]", and demands indemnity in the amount of $8.5 million, in respect of a cargo damage claim put forward by the receivers of the subject cargo of hot rolled steel products, alleging unspecified damage to the cargo.

Plaintiff's allegations of "fraudulent conduct" arise out of the alleged issuance of a second set of allegedly non-conforming bills of lading, which allegedly failed to reflect the true pre-shipment condition of the cargo.

As set forth in the Ahn Declaration (¶12), Tiger and Sunwoo categorically deny that they had any involvement in the loading or discharging of the cargo, or the booking of the cargo, or the issuance of any of the bills of lading. Defendants specifically deny that they had any involvement in the alleged issuance of the second set of clean bills.

As also set forth in the Ahn Declaration, Plaintiff's unsupported and baseless fraud allegations in the Verified Complaint have already been the subject of one article in the widely read shipping magazine "Tradewinds", and are highly damaging to Tiger and Sunwoo's reputations. Ahn Declaration ¶15.

There is no allegation in the Verified Complaint that Plaintiff has paid or otherwise settled the cargo damage claim, and Defendants allege they have not. Ahn Declaration ¶14.

There is no allegation in the complaint that the Receivers have initiated any legal proceedings against Precious, and Defendants allege there are no such proceedings. Ahn Declaration ¶14.

There is no allegation in the Complaint that Precious has posted security in any form in favor of the receivers or that such has been demanded, and Defendants allege there is no such security or demand. Ahn Declaration ¶14.

4

Defendants move to vacate this burdensome $8.5 million attachment on the grounds that it is based on a wholly premature, contingent indemnity claim, and as such fails to state a proper maritime claim as required by Rule B of the Supplemental Rules, Fed. R. Civ. P., and on the further ground that the fraud allegations in the original Verified Complaint are wholly unsupported, unsupportable and improper.

Defendants move by Order to Show Cause because they are entitled to a "prompt hearing" pursuant to Supplemental Admiralty Rule E(4)(f), "at which the plaintiff shall be required to show why the ... attachment should not be vacated ..."

I

### THE ATTACHMENT SHOULD BE VACATED BECAUSE PLAINTIFF'S CONTINGENT INDEMNITY CLAIM FOR BREACH OF CHARTER PARTY DOES NOT GIVE RISE TO A VALID MARITIME CLAIM

Precious' claim against Sunwoo is a contingent indemnity claim based on alleged "fraudulent conduct and/or breach of the charter", predicated on a potential cargo damage claim threatened by the Saudi Arabian receivers of the subject cargo of hot rolled steel products, where the claim has not been paid or settled, suit has not been commenced, and security has not been posted or even demanded.

Rule B sets forth the procedure to be followed in obtaining a maritime attachment or garnishment in aid of an *in personam* maritime claim. Rule B(1) provides in part:

(a) If a defendant is not found within the district when a
verified complaint praying for attachment and the affidavit
required by Rule B(1)(b) are filed, a verified complaint may
contain a prayer for process to attach the defendant's tangible
or intangible personal property— up to the amount sued for—
in the hands of garnishees named in the process.

(b) The plaintiff or the plaintiff's attorney must sign and file
with the complaint an affidavit stating that, to the affiant's
knowledge, or on information and belief, the defendant
cannot be found within the district. The court must review the
complaint and affidavit and, if the conditions of this Rule B
appear to exist, enter an order so stating and authorizing
process of attachment and garnishment. The clerk may issue
supplemental process enforcing the court's order upon
application without further court order.

Upon the issuance of an ex parte Order of Attachment pursuant to Rule B, a

Defendant is entitled to a prompt hearing at which the burden is on the plaintiff to prove

compliance with the requirements of Rule B, or suffer vacation of the attachment.

Supplemental Admiralty Rule E(4)(f) provides in pertinent part:

Whenever property is arrested or attached, any person claiming an interest
in it shall be entitled to a prompt hearing at which the plaintiff shall be
required to show why the arrest or attachment should not be vacated or
other relief granted consistent with these rules.

Rule E(4)(f) "is designed to satisfy the constitutional requirement of due process

by guaranteeing to the [defendant] a prompt post-seizure hearing at which he can attack

the complaint, the arrest, the security demanded, or any other alleged deficiency in the

proceedings." Winter Storm Shipping, Ltd. v. TPI, 2002 AMC 2705, 2716, 310 F.3d

263, 272 (2 Cir. 2002) (quotation omitted). "Rule E(4)(f) clearly places the burden on the

plaintiff to show that an attachment was properly ordered and complied with the

6

requirements of Rules B and E.'' Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,

2006 AMC 1872, 1885, 460 F.3d 434, 445 n.5 (2 Cir. 2006).

In Aqua Stoli Shipping ltd. v. Garden Smith Pty Ltd., the Second Circuit

summarized the practice of maritime attachment under the Supplemental Rules:

> [I]n addition to having to meet the filing and service
> requirements of Rules B and E, an attachment should issue if
> the plaintiff shows that (1) it has a valid prima facie admiralty
> claim against the defendant; (2) the defendant cannot be
> found within the district; (3) the defendant's property may be
> found within the district; and (4) there is no statutory or
> maritime law bar to the attachment. Conversely, a district
> court must vacate an attachment if the plaintiff fails to sustain
> his burden of showing that he has satisfied the requirements
> of Rules B and E. (emphasis added)

2006 AMC at 1884-85, 460 F.3d at 445 (footnote omitted).

One of the requirements of Rule B is that a plaintiff must be possessed of a "valid

maritime claim", and this court has held that a contingent indemnity claim for cargo

damage arising out of an alleged breach of a contract of charter party is not sufficiently

"ripe" or "mature" enough to give rise to a valid maritime claim for purposes of

Supplemental Rule B. Sonito Shipping Company Ltd. v. Sun United Maritime Ltd., 2007

A.M.C. 1018 (S.D.N.Y. 2007) (Haight) (vacating Rule B attachment because contingent

indemnity claim for cargo damage under charter is premature where owner has not settled

and paid the underlying claim), [citing] Greenwich Marine Inc. v. S.S. Alexandra, 1965

A.M.C. 76, 339 F.2d 901 (2d Cir. 1965); J.K. Int'l. Pty. Ltd. v. Agrikos S.A.S., 2007

A.M.C. 783, 2007 WL 485435 (S.D.N.Y. 2007) (Karas, D.J.), at *4, *5 (''Plaintiff 's

claims against defendant are therefore for indemnity only, and Plaintiff must show that its indemnity claim is ripe''; in absence of evidence that shipowner intended to press a demurrage claim against charterer, charterer's claim for contingent indemnity against cargo receivers ''is simply too thin a reed to rest on when Plaintiff carries the burden of defending the Attachment''); Bottiglieri di Navigazione SPA v. Tradeline LLC, 2007 AMC 1013, 2007 WL 404657 (S.D.N.Y. 2007) (Kaplan, D.J.), at *2 (where back-to-back charter parties required that contract disputes be arbitrated in London under English law, shipowner had settled cargo receivers' claim for damages, and shipowner had announced its intention to seek to recover that payment from the head charterer in arbitration, head charterer's claim for contingent indemnity against sub-charterer could not sustain a maritime attachment of the sub-charterer's property; "[t]his claim for indemnity is not ripe under English law. Plaintiff thus has not established the 'valid prima facie admiralty claim' required under Aqua Stoli. "); T&O Shipping, Ltd. v. Lydia Mar Shipping Co., 2006 AMC 361, 415 F. Supp.2d 310 (S.D.N.Y. 2006) (vacating Rule B attachment for contingent cargo indemnity claim until accrual issue clarified in London arbitration.)

In this case, as in Sonito, Plaintiff's claim is at bottom a contingent claim for indemnity for cargo damage predicated upon an alleged breach of charter. The alleged $6.2 million claim itself is suspect. The cargo was carried under bills of lading which were claused for pre-shipment risk, which is generally indicative of fresh water rust which is not injurious to hot rolled steel products. See, Thyssen v. S. S. Eurounity, 21 F.2d 533 (2d Cir. 1994). Thus, it is unclear how much merit there is to the damage claim,

8

if any.  Suit has not been filed.  The claim has not been settled or paid, and it is unclear if it ever will be.  Precious has not been sued, suit is not imminent, its ship(s) have not been arrested, it has not posted cash security, nor has such security even been demanded.  As in Sonito, the charter between Precious and Tiger, as guaranteed by Sunwoo, is subject to English law and contains the so-called Inter-Club Agreement to govern allocation of loss for cargo damage claims.  (See Carroll Affidavit, Ex. D, Clause 58, Clause 66.)  On similar facts, Judge Haight ruled in Sonito that an unpaid, contingent indemnity claim for cargo damage does not qualify as "a valid maritime claim" for purposes of Rule B.  As the facts in this case are essentially the same, the same result should follow.  The Court should vacate Precious' ex parte attachment because Precious has failed to state a valid maritime claim.

While some courts have allowed attachments for technically premature claims, they have done so "only in isolated situations with peculiar factual circumstances", Greenwich Marine Inc., 1965 A.M.C. 82, where there is evidence that a liquidated claim is imminent, or where some actual out of pocket loss has been incurred.  See, Navalmar v. Welspun, 2007 A.M.C. 1033 (S.D.N.Y. 2007) (allowing attachment for indemnity claim for cargo damage where vessel owner had posted a $1 million Bank Guaranty in court to secure claim.)  In this case, again, Precious has not paid or settled the claim, suit has not been filed, and no security has been posted or demanded.  In these circumstances, there is no "compelling reason" to allow Precious $8.5 million in security in respect of an indemnity claim which it has not paid and may never pay.

## Conclusion

The Court should grant Defendants' Motion to Vacate the Ex Parte Attachment Order dated September 24, 2007, dismiss the complaint herein and allow Defendants to seek costs and attorneys' fees incurred in connection with this motion.

Dated: New York, New York
       October 17, 2007

                                    NOURSE & BOWLES, LLP
                                    Attorneys for Defendants


                                    By: _____
                                        Shaun F. Carroll (SC-9898)
                                        One Exchange Plaza
                                        At 55 Broadway
                                        New York, New York 10006
                                        (212) 952-6200