BLANK ROME, LLP
Attorneys for Plaintiff
PRECIOUS PEARLS LTD.
Thomas H. Belknap, Jr. (TB-3188)
The Chrysler Building
405 Lexington Ave.
New York, NY  10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECIOUS PEARLS LTD., <br><br> Plaintiff, <br><br> -against- <br><br> TIGER INTERNATIONAL LINE PTE LTD. and SUNWOO MERCHANT MARINE CO., LTD., <br><br> Defendants. | 07 Civ. 8325 (JGK) <br><br> (ECF) |

**MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO VACATE ATTACHMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTS ......................................................................................................................................... 3

    A.    The Charter And Sunwoo's Guaranty .................................................................. 3

    B.    The Cargo .............................................................................................................. 4

    C.    Tiger's Letter Of Indemnity ................................................................................. 6

    D.    The Cargo Damage Claim .................................................................................... 7

    E.    The Rule B Action In New York .......................................................................... 9

ARGUMENT .............................................................................................................................. 11

    A.    Background .......................................................................................................... 11

    B.    The Basic Rule .................................................................................................... 12

POINT I ...................................................................................................................................... 13

    PLAINTIFF HAS STATED A PRIMA FACIE MARITIME CLAIM ............................. 13

POINT II ..................................................................................................................................... 16

    DEFENDANTS' OBJECTIONS TO THE RIPENESS OF THE CLAIM UNDER
    ENGLISH LAW ARE BEYOND THE SCOPE OF THIS COURT'S INQUIRY .......... 16

POINT III .................................................................................................................................... 18

    IN ANY EVENT, PLAINTIFF'S CLAIMS ARE RIPE BREACH OF
    CONTRACT CLAIMS AND NOT MERELY INDEMNITY CLAIMS ......................... 18

POINT IV .................................................................................................................................... 19

    ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION
    TO ALLOW AN ATTACHMENT IN RESPECT OF A CLAIM SEEKING
    INDEMNITY UNDER A MARITIME CONTRACT ...................................................... 19

CONCLUSION ........................................................................................................................... 22

128312.00601/6584308v.1

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006)..11, 12, 13, 14, 15, 17, 19

Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996) ................................................................................................11

Dolco Investments, Ltd. v. Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ................................................................................15, 16

Filia Cia. Naviera S.A. v. Petroship S.A., 1982 A.M.C. 1217 (S.D.N.Y. 1982) ...............17

Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901 (2d Cir. 1965) ..........19, 20, 21

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 2007 U.S. Dist. LEXIS 29789 (S.D.N.Y. 2007) ..............................................................11, 17, 20

OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007) ..............................................................15

Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee, 2007 U.S. Dist. LEXIS 72694 (S.D.N.Y. 2007) .....................................................15, 18

Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y. 1994) ................................................................................13

SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. 2007) ................................................................................14, 16

T.J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 338 (5th Cir. 1980) ...................8

Thyssen v. S.S. Eurounity, 21 F.2d 533 (2d Cir. 1994) .....................................................17

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2006) ................................................................................14, 16

Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007) .................................................15

## TABLE OF AUTHORITIES
(continued)

Page

Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y. 2006) ...................................................................................................................14

Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd., 2007 U.S. Dist. LEXIS 74477 (S.D.N.Y. 2007) .........................................................................15

## FEDERAL STATUTES

Federal Arbitration Act, 9 U.S.C. § 8 .......................................................................10, 17, 19

## PRELIMINARY STATEMENT

Plaintiff Precious Pearls Ltd. ("Plaintiff") submits this Memorandum of Law, the accompanying Declaration of Kavi Srinivas dated October 23, 2007, and the Affidavit of Thomas H. Belknap, Jr. sworn to on October 23, 2007, in opposition to the motion by Defendants Tiger International Line Pte Ltd. ("Tiger") and Sunwoo Merchant Marine Co., Ltd. ("Sunwoo") (collectively "Defendants") to vacate Plaintiff's attachment of Defendants' property obtained pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims.

This case arises out of Defendants' undertaking to ensure that cargo discharged from the ocean cargo vessel WORADA NAREE into Defendants' agent's custody was only released to cargo receivers upon presentation of the original bill of lading issued for the cargo, and out of Defendants' fundamental failure to make good on this commitment. Instead, the cargo was released against a fraudulent bill of lading that falsely listed Plaintiff as a "carrier" and falsely indicated that the cargo had been loaded aboard the Vessel in good order and condition when in fact that cargo had been delivered to the Vessel with substantial pre-existing damage. The consequence of Defendants' breach of this obligation has been to expose Plaintiff to a multi-million dollar cargo claim and simultaneously to substantially deprive Plaintiff of two primary defenses, *i.e.*, that it was not the carrier and that the claimed damage was existing at the time the cargo was delivered to the Vessel. Defendants' protestations that other parties were the ones actually responsible for issuance and acceptance of the fraudulent bill are legally immaterial, for it was Defendants who contractually undertook vis-à-vis Plaintiff to assume the risk of such occurrence in consideration for Plaintiff's agreement to discharge the cargo from the Vessel into the custody of Defendants' agents without presentation of original bills of lading. Defendants also undertook to indemnify Plaintiff and to put Plaintiff in sufficient funds to defend such

claims.  To date, Defendants have refused to honor any of their obligations in this respect, although duly demanded.

Defendants object to Plaintiff's attachment in the present case contending that Plaintiff's claim is merely an unripe indemnity claim.  But Defendants' objections in this regard go well beyond the permissible scope of inquiry of this Court in a Rule E(4)(f) hearing concerning the validity of an attachment.  Numerous recent decisions have made clear that the Court's inquiry must be limited to analyzing the allegations made in the complaint.  In the present case, it is undisputable that the complaint states a valid *prima facie* maritime breach of contract claim.  The merits of the claims are subject to English law and arbitration/jurisdiction clauses, and this Court may not undertake an analysis of the merits of the claims in considering whether the attachment is valid.  In an event, Plaintiff's claim, which states a cause of action for breaches of the charter, the letter of indemnity given by Tiger, and the guaranty given by Sunwoo, clearly are presently ripe breach of maritime contract claims.  This is true notwithstanding that arbitration/litigation has not yet been commenced against Defendants in London on the merits and that Plaintiff's ultimate liability to the cargo interests as a result of Defendants' breaches is presently unquantified.

Even if Plaintiff's claim is an unripe indemnity claim, which is denied, the equities in this case weigh heavily in favor of this Court's exercising its discretion to allow the attachment to stand.  Defendant undertook to assume the risk of release of cargo against other than the authentic, original bill of lading and to indemnify and hold Plaintiff harmless from the consequences of a failure in this regard.  This included undertaking to make funds available to respond to such claims as costs are accrued, and not merely at the conclusion of such dispute. Defendants have already breached their obligations under these undertakings, and Plaintiff

-2-

should not be required to wait until it is required to pay a judgment to the cargo interests before it is permitted to ensure that the undertakings given by Defendants are backed by good and sufficient funds. Maritime attachments are, by design, intended to secure maritime claims before they are adjudicated, and Defendants should not be permitted to avoid giving security to back their contractual undertakings to Plaintiff. Accordingly, Defendants' motion to vacate the attachment should be denied.

## FACTS

### A.    The Charter And Sunwoo's Guaranty

The facts are detailed in the accompanying Declaration of Kavi Srinivas, Senior Manager with Precious Shipping Public Company Limited, the operators of the M/V WORADA NAREE (the "Vessel"). Pursuant to e-mail fixture on April 11, 2007, Plaintiff chartered the Vessel to Sunwoo or its guaranteed nominee. (Srinivas Dec. Ex. 1). By message received on April 12, 2007, Sunwoo designated Defendant Tiger as its nominee under the Charter. (Srinivas Dec. Ex. 2).

Ultimately, a charter party contract dated April 11, 2007 (the "Charter") was issued listing defendant Tiger as Charterer. (Srinivas Dec. Ex. 3). Defendant Sunwoo issued its letter of guaranty dated April 16, 2007 (the "Guaranty") by which it undertook to guaranty the performance of Defendant Tiger under the Charter. (Srinivas Dec. Ex. 4). Defendant Sunwoo further undertook "to indemnify [plaintiff] and to hold [it] harmless in respect of any liability, loss, damage or expense of whatsoever nature which [it] may sustain by reason of non-performance and/or breach of the captioned charterparty." Defendant Sunwoo's guaranty further provided as follows:

> In the event of any proceedings being commenced against you or
> any of your servants or agents in connection with non-performance

> and/or any breach of the captioned charterparty, to provide you or
> them on demand with sufficient funds to defend the same.

According to Defendants, Tiger sub-chartered the Vessel to Sunwoo and Sunwoo then sub-chartered the Vessel to Nanjing Ocean Shipping Co. Ltd. ("NASCO"). Apparently there is a dispute about whether NASCO properly nominated Nanyuan Shipping Co. Ltd as a substitute charterer. (See Ahn Sun Ju Dec. at ¶ 8).

## B.    The Cargo

Pursuant to the Charter, Defendants directed the Vessel to proceed to Changshu, China to load a cargo of hot-rolled reinforcing steel bars and/or other steel cargo for carriage to Jeddah Port, Saudi Arabia (the "Cargo"). By letter dated May 15, 2007, Owner authorized NASCO to sign bills of lading on behalf of the Master for the Cargo, but only in strict conformity with the Mate's Receipts and subject to various other terms and conditions, including the restriction in paragraph "h" that no "liner" bills of lading be issued. (Srinivas Dec. Ex. 5).

In accordance with Clause 84 of the Charter, Owners had the option of appointing a pre-shipment surveyor when loading steel cargo. Precious appointed SJ Marine Surveyors & Loss Adjusters Ltd to carry out a pre-shipment survey of the steel cargo at Changshu and advise the Master in clausing the Mate's receipts to accurately reflect the condition of the cargo at the time of loading. Charterers were informed by Owners about SJ Marine's appointment and they agreed to share the costs of the pre-shipment survey. (Srinivas Dec. Ex. 6). The Mate's receipts were claused in accordance with the remarks suggested by the attending SJ Marine surveyor.

Clause 8 of the Charter required that bills of lading for cargo must be issued "in conformity with Mate's and Tally Clerk's receipts." (See Srinivas Dec. Ex. 3). As noted above, this was also a requirement of the letter of authorization. (See Srinivas Dec. Ex. 5). Following joint pre-load survey of the cargo, Mate's Receipts were issued containing various remarks

-4-

reflecting pre-load damage to the cargo. (Srinivas Dec. ¶ 8). In accordance with the Charter, bill of lading no. CSH0043-JDH01 dated May 21, 2007 was subsequently issued in respect of the Cargo. (Srinivas Dec. Ex. 7).

This bill of lading issued for the Cargo reflected the "carrier" as Nanyuan Shipping Co., Limited and was "claused" to reflect substantial pre-existing rust and damage and other conditions of the Cargo prior to loading aboard the Vessel, all of which remarks were in conformity with the Mate's receipts issued in respect of the cargo. Specifically, the remarks were as follows:

Remarks For Lot 1:

1.     All cargoes were stored at open yard with tarpaulin.

2.     All cargoes with rust stained partly and slightly

3.     1-3 strapping bands broken/missing/loose affected 562 bundles

4.     52% of all bundles with oily spots on the surface

5.     945 bundles with 4-6 pieces bent near the end

6.     64 bundles were wet and stayed on the truck along shipside because of the loading operation was stopped during raining

7.     quantity as per China Ocean Shipping tally, quality and weight as per shipper.

Remark for Lot 2:

1.     All cargoes were stored in the warehouse without any covering

2.     All coils with rust partly and slightly

3.     46 coils with rust stained zone as a band on the surface of coils

4.     1-2 strapping bands broken, missing affected 19 coils

     5.     The wire rods near both ends partly and slightly bent affected 23 coils

     6.     Quantity as per China ocean Shipping tally, quality and weight as per shipper.

## C.  <u>Tiger's Letter Of Indemnity</u>

Ordinarily, cargo may not be discharged to cargo receivers at the discharge port except upon presentation by the consignee or receiver of the original bill of lading. The Charter provided at Clause 56, however, that Plaintiff would "allow charterers to discharge the cargo/es without presentation of original bill(s) of lading against charterers providing owners with letter of indemnity with owners' P&I club form and wording before discharge." (<u>See</u> Srinivas Dec. Ex. 3).

Defendant issued to Plaintiff a letter of indemnity dated June 8, 2007 in this respect (the "LOI") in consideration of Plaintiff's agreeing to discharge the Cargo (as well as cargo shipped under numerous other bills of lading not at issue here) without presentation of the original bill of lading to the custody of the local agents in Jeddah, Messrs Kanoo Shipping Agencies. (Srinivas Dec. Ex. 8 and 9). Pursuant to the terms of the LOI, the agents were to deliver the Cargo only upon receipt of a duly endorsed original bill of lading and were to send the originals to Owners. Specifically, the LOI provided in relevant part as follows:

> We hereby request you to deliver such goods into Port/Customs/Agents Messrs Kanoo Shipping Agencies custory at discharge port Jeddah without production of the Bills of Lading.
>
> In consideration of your complying with our above request we hereby agree as follows: -
>
> 1.    <u>To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability loss or damage of whatever nature which you may sustain by reason of delivering the goods into Port/Customs/Agents custody in accordance with our request</u>.

2.    To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage and/or shortage to cargo howsoever caused once the cargo leaves vessel's tackles and <u>the cargo will be kept under Port/Customs/Agents custody entirely at our risk and expense and will be released to the consignees/receivers only on surrender of duly accomplished Original Bills of Lading</u>.

3.    <u>In the event of any proceeding being commenced against you or any of your servants or agents in connection with the delivery of the goods as aforesaid to provide you or them from time to time with sufficient funds to defend the same</u>.

4.    If the vessel or any other vessel or property belonging to you should be arrested or detained of it the arrest or detention thereof should be threatened, to provide such bail or other security as may be required to prevent such arrest or detention or to assure the release of such vessel or property and to indemnify you in respect of any loss, damage or expenses caused by such arrest or detention whether or not the same may be justified.

5.    <u>As soon as all original bills of lading for the above goods shall have arrived and/or come into our possession, to produce and deliver the same to you</u>.

6.    * * *

7.    This indemnity shall be construed in accordance with English Law and each and every person liable under this indemnity shall at your request submit to the Jurisdiction of the High Court of Justice of England.

(Srinivas Dec. Ex. 8)(Emphasis added).

## D.    The Cargo Damage Claim

The cargo consignee notified Kanoo Shipping Agencies on or about June 20, 2007 that the Cargo had been received with substantial damage.  On or about September 12, 2007, representatives of the cargo receivers asserted a written claim for substantial damage to the Cargo.  (Srinivas Dec. Ex. 10).  They further alleged damages in the amount of $6,457,758.

Investigation revealed that the bill of lading presented by the cargo interests and against which the cargo was released was not the authentic bill of lading discussed above, (Srinivas Dec.

-7-

Ex. 7), which reflected NASCO's designee "Nanyuan Shipping Co., Ltd." as the "carrier" and contained the numerous remarks reflecting the pre-load condition of the cargo. Instead, it was a fraudulent bill which had been issued "clean on board"—*i.e.*, reflecting that the cargo was in all respects in good order and condition at the time of loading.[1] (See Srinivas Dec. Ex. 11). Moreover, this fraudulent "clean" bill indicates (in the upper right corner of the face of the document) that "Precious Pearls Ltd." is the "carrier" whereas the authentic bill reflects that the "carrier" is "Nanyuan Shipping Co., Ltd."

These modifications to the provisions of the bill of lading are extremely serious because cargo is now looking to Precious rather than Nanyuan as being liable under the bill of lading as "carrier", which has obviously exposed Owners to substantial liability under this unauthorized bill of lading. Moreover, because the fraudulent bill was issued "clean on board," Precious' ability to defend the allegations on the basis that the alleged damage was pre-existing at the time it was loaded aboard the Vessel is substantially compromised.

As is detailed in the Srinivas Declaration at paragraphs 18-19, substantial correspondence was exchanged between Plaintiff and Defendants and their respective representatives following receipt of the cargo interests' letter of claim dated September 12, with the upshot being that Defendants refused to take over the defense of the claim or fund Plaintiff's defense. Plaintiff has

---

[1]    Typically, a shipper can only get paid under a letter of credit opened by the buyer of cargo shipped aboard a vessel upon tender of a "clean on board" bill of lading, among other documents, to the bank. Thus, the shipper often has a strong incentive to obtain clean bills of lading even where preexisting damage exists. It sometimes happens that the bill of lading issuer will agree to issue a "clean" bill against a letter or indemnity given to it by the shipper. Such letters of indemnity—quite different for the LOI given by Charterer to Plaintiff in the present case, which relates only to the release of cargo without presentation of the original bill—are generally considered unenforceable in the United States because it involves participating in the issuance of a fraudulent negotiable instrument, namely a bill of lading. See e.g. T.J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 338, 373 (5th Cir. 1980). It is unknown whether such a LOI was given in this case, but we would note that the fraudulent bill does contain reference to a letter of credit. (See Srinivas Dec. Ex. 11).

continued to correspond with the cargo interests and is presently taking the necessary steps to defend these allegations against it.

**E.    The Rule B Action In New York**

In the face of charterer's refusal to take up the defense of this claim directly with the cargo interests, Plaintiff commenced this action on September 24, 2007 seeking security in respect of the cargo claims and also for its anticipated fees and costs to defend this claim and to pursue its claim against Defendants in London arbitration/court proceedings.  In its Verified Complaint, Plaintiff alleges that although plaintiff issued a bill of lading for the cargo which was claused to reflect its substantial pre-shipment rust and damaged condition, defendant Tiger, without notice to or knowledge of plaintiff, fraudulently and/or in breach of the Charter, obtained or procured the issuance of a second, clean bill of lading in respect of the Cargo which it ultimately provided to the cargo interests.  (Complaint, ¶ 12-13).[2]  Plaintiff further alleges that Defendant Tiger has breached its obligations under the LOI.  (Complaint ¶¶ 14-16).  Specifically, as is further detailed at ¶ 18 of the Srinivas Declaration, it is Plaintiff's contention that although the original bill of lading issued for the Cargo was properly claused to reflect its substantial pre-shipment rust and damaged condition, Tiger breached its obligations under the LOI by permitting the release of the Cargo against a bill of lading which was fraudulent and which was not in conformity with the Mate's receipts.  Finally, Tiger allowed the issuance of a bill of lading on a liner form, contrary to the provisions of clauses 8 and 64 of the Charter and the letter of authorization to issue bills of lading, and thus is in breach in this respect as well.  Sunwoo is liable as guarantor of Tiger's obligations under the Charter and the LOI.

---

[2]        A copy of the  Verified Complaint can be found at Exhibit A to the Carroll Affidavit.

The Charter provides for arbitration of disputes thereunder in London, and the LOI and the Guaranty each provide that all disputes thereunder shall be submitted to the jurisdiction of the High Court of Justice in England.[3]  In its complaint, Plaintiff has reserved its right to arbitrate the disputes under the Charter with Defendant Tiger pursuant to 9 U.S.C. § 8.  (Complaint ¶ 18). Plaintiff has reserved its rights to pursue its claim under the guaranty and LOI in the appropriate English court.  (Complaint ¶ 19).

In its Verified Complaint filed in this action, Plaintiff sought security pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims in the principal amount of $6,457,785.  In addition, Plaintiff sought security for its anticipated attorneys' fees and costs incurred in defending the cargo damage claim and also for interest, legal fees and arbitral costs vis-à-vis Tiger and Sunwoo, all of which are routinely awarded to a successful party under English law in such proceedings.  Plaintiff has conservatively estimated that these items, taken together, will exceed US$2.1 million.  Accordingly, the total amount of Plaintiff's claims for which Plaintiff sought and obtained issuance of Process of Maritime Attachment and Garnishment is US$8,500,000.  (Complaint ¶ 20).

Pursuant to the Process of Maritime Attachment, Plaintiff attached several EFT transfers of each defendant, including a transfer of $8.5 million originated by Sunwoo on or about October 5, 2007.  In consideration for Plaintiff's agreement to release all funds of Tiger and to refrain from attempting to attach any further funds of Tiger or Sunwoo in this action, Sunwoo agreed that the $8.5 million attached at J.P. Morgan would stand as security for Plaintiff's claims against

---

[3]     Clause 66 of the Charter expressly incorporates and recites the "BIMCO Standard Law and Arbitration Clause 1998 – English law, London Arbitration …."  (Srinivas Dec. Ex. 3).  The Guaranty provides that "[t]his guarantee shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice in England." (Srinivas Dec. Ex. 4).

both Tiger and Sunwoo, but subject to the parties' right to seek to vacate the attachment, such that if the attachment were maintained as to either party, these funds would remain under attachment as security in respect of Plaintiff's claims against that party. (Belknap Aff. Ex. 1).

## ARGUMENT

### A.    Background

The provisional remedy of maritime attachment is "a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437 (2d Cir. 2006). Maritime attachments have found favor in the courts because of the widely recognized fact that it is frequently more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. "Maritime parties are peripatetic, and their assets are often transitory." Aqua Stoli at 443. Indeed, "[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance." Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 2007 U.S. Dist. LEXIS 29789 (S.D.N.Y. 2007)(citing Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996)). Thus, the policy underlying maritime attachment "has been to permit the attachment of assets wherever they can be found …." Aqua Stoli at 443. "This policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained." Id.

Rule B of the Supplemental Rules for Admiralty and Maritime Claims, Fed. R. Civ. P. Supp. R. B, governs the procedure by which a party may attach another party's assets. Rule B provides in relevant part:

> If a defendant is not found within the district, … a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.… The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

"The order of attachment may be requested and granted *ex parte*, though notice of the attachment to the defendant via appropriate service is required." Aqua Stoli, 460 F.3d at 438.

Supplemental Rule E(4)(f) provides for a prompt hearing as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules ….

## B.    The Basic Rule

In Aqua Stoli, the Second Circuit Court of Appeals clarified the circumstances under which a Rule B attachment should be vacated. As that Court explained:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe *vacatur* is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's *vacatur* power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

Id. at 445 (footnotes omitted).

Aqua Stoli, made clear that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." Aqua Stoli, 460 F.3d at 447.  As the Aqua Stoli Court explained, so long as the technical requirements of Rules B and E are met, "an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli, 460 F.3d at 445.

In so holding, the Second Circuit expressly rejected the reasoning of numerous district court decisions that had engaged in a broader inquiry under Rule E(4)(f), including those that adopted "a needs test, requiring the plaintiff to show that, even if the defendant cannot be found within the district, the attachment is necessary to obtain jurisdiction over a defendant or to secure a potential judgment." Aqua Stoli at 446.  The Court also rejected the approach taken by the district court in Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y. 1994), which "would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated." Aqua Stoli at 446-47.

### POINT I

### PLAINTIFF HAS STATED A *PRIMA FACIE* MARITIME CLAIM

Of the above-stated requirements for a maritime attachment, Defendants have made only one attack on Plaintiff's attachment in this case.  Namely, they assert that Plaintiff has failed to state a *prima facie* maritime claim.  Defendants' position is without merit.

While the Second Circuit has not addressed the specific question of what a plaintiff must show to make out a "*prima facie*" admiralty claim, some district courts have held that a plaintiff must make an affirmative showing in the Rule E(4)(f) hearing that there exist "reasonable grounds" or "probable cause" for the attachment.   See e.g., Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y. 2006).   Under this standard, "although a minimal *prima facie* showing is sufficient to justify an attachment under Rule B, under Rule E(4)(f), [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment."   Id. at 325.

Numerous recent decisions have concluded, however, that this "reasonable grounds" inquiry is wholly inconsistent with this Court's holding in Aqua Stoli that a plaintiff need only make a *prima facie* showing to sustain an attachment under Rule B.   In Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *15 (S.D.N.Y. 2006), the court observed as follows:

> Although Aqua Stoli does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "Rule B specifies the sum total of what must be shown for a valid maritime attachment," – including a "valid *prima facie* admiralty claim against the defendant" – implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry.
>
> For a plaintiff to show that "it has a valid *prima facie* admiralty claim against the defendant, in the context of maritime attachment, it appears that a plaintiff need not prove anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E. [Citations omitted.]

See also SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562, * 10 (S.D.N.Y. 2007)(Noting that the analysis in Tide Line "is consistent with the limited inquiry contemplated by Aqua Stoli and comports with a basic definition of the term "*prima facie*" and holding that the court "will look only to Plaintiff's pleadings, and not to any evidence submitted

-14-

by the parties, to determine whether Plaintiff has made a legally sufficient claim for piercing the corporate veil."); Dolco Investments, Ltd. v. Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007)("The Court agrees with the weight of authority in this district, and will apply the *prima facie* standard, as it more closely comports with the Second Circuit's rejection of the 'broader Rule E(4)(f) inquiry' that the reasonable grounds test would necessarily include."). See also Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007)(same); OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007)(same).

As the court explained in Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee, 2007 U.S. Dist. LEXIS 72694, * 7-8 (S.D.N.Y. 2007):

> The majority of courts in this district have understood Aqua Stoli to require the application of the *prima facie* standard when considering the adequacy of a claim in a maritime vacatur motion. …
>
> Under this standard, the Court looks only to the Complaint to determine whether the plaintiff has alleged a valid admiralty claim against the defendant. Maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing. Moreover, Aqua Stoli implies that a plaintiff need not provide evidence to satisfy its burden under Rule E(4)(f). [Citations omitted.]

See also Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd., 2007 U.S. Dist. LEXIS 74477, * 22-23 (S.D.N.Y. 2007)(same).

In the present case, an analysis of the Verified Complaint filed in this matter makes readily apparent that Plaintiff has stated a *prima facie* maritime claim. Paragraphs 5-10 allege the basic operative facts, outlined in additional detail above and in the accompanying declaration of Kavi Srinivas, which give rise to the claims. Materially for present purposes, they allege the existence of a maritime contract between Plaintiff and Defendants and the existence of guarantees and undertakings issued by the defendants in connection with that contract.

-15-

Paragraphs 11-16 allege Defendants' material breaches of the contract and undertakings. As is more fully detailed above, these breaches include procuring or allowing the issuance of fraudulent bill of lading, releasing or allowing the release of the cargo against a fraudulent bill of lading, issuing or allowing the issuance of liner bill of lading, and failing or refusing to honor their indemnity and defense obligations under the LOI and the Guaranty. Paragraph 17 alleges that Plaintiff was materially damaged as a result of Defendants' breaches.

Defendants contend at pages 8-9 of their brief that the "merits" of the claim are suspect. This contention is vehemently contested, but more to the point for present purposes it is totally irrelevant. The Court is not permitted to "weigh" the evidence on the merits. Rather, as detailed above, it may look no further than the complaint. On that analysis, Plaintiff unquestionably states a *prima facie* maritime claim and as such its attachment should be upheld.

## POINT II

### DEFENDANTS' OBJECTIONS TO THE RIPENESS OF THE CLAIM UNDER ENGLISH LAW ARE BEYOND THE SCOPE OF THIS COURT'S INQUIRY

Defendants' contention that Plaintiff's claims are "unripe" claims and thus are not "maritime claims" within the meaning of Rule B seek improperly to expand the scope of the Court's inquiry under Rule B beyond that allowed by this Court in Aqua Stoli. See Dolco Investments, 2007 U.S. Dist. LEXIS 31101 at *11; SPL Shipping Ltd., 2007 U.S. Dist. LEXIS 18562 at * 10; Tide Line, 2006 U.S. Dist. LEXIS 95870 at * 14-15. The merits of Plaintiff's claim are governed by English law and are subject to arbitration in London pursuant to the express terms of the charterparty and jurisdiction in the High Court of Justice pursuant to the terms of the LOI and the Guaranty. The question of whether Plaintiff's claim are ripe is a question of substantive law, and not merely procedure. Accordingly, by even considering the question of whether Plaintiff's claim is "ripe" as a matter of English law, the Court necessarily

-16-

would be forced to encroach upon the exclusive domain of the arbitrators and the English court to whom the parties have specifically delegated the responsibility of adjudicating the merits of this dispute. There is no question that a party may commence an action in a federal district court seeking provisional security in support of a foreign arbitration or litigation, and by doing so the plaintiff clearly does not waive his right to have the merits of the dispute arbitrated in accordance with the agreement. Indeed, the Federal Arbitration Act explicitly so provides. See Federal Arbitration Act, 9 U.S.C. § 8. See also Filia Cia. Naviera S.A. v. Petroship S.A., 1982 A.M.C. 1217, 1220 (S.D.N.Y. 1982).

In any event, it is clear that the analysis proposed by Defendants—which ultimately would require a decision on issues of English law going to the merits of the claim—is precisely the kind of analysis which the Aqua Stoli Court aimed to eliminate.[4] The very function of Rule B is to provide provisional security in respect of a claim *in advance* of a decision on the merits, and Rule B and this Court's ruling in Aqua Stoli make clear that the Rule E(4)(f) inquiry is intended to be strictly limited in scope. Indeed, the entire purpose of requiring only a minimal showing to support a Rule B attachment is to avoid a "mini-trial" on what is ultimately a collateral issue. See Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, 2007 U.S. Dist. LEXIS 29789, *15 (S.D.N.Y. 2007)("The entire point of an attachment, as a provisional remedy before trial, is to secure a plaintiff's claim before it can be adjudicated."). This is why this Court in Aqua Stoli expressly endorsed the "*prima facie*" standard and struck down the complicated "needs" analysis which had been adopted by some district courts.

---

[4]    At p. 8 of its Brief, for instance, Defendants cite Thyssen v. S.S. Eurounity, 21 F.2d 533 (2d Cir. 1994), for the proposition that pre-load rust notations on a bill of lading are not indicative of damage to hot-rolled steel products. But whether the remarks on the bill of lading in this case relate to the damage observed at discharge is way beyond the scope of this Court's analysis for present purposes and, in any event, would have to be considered under English—and not U.S.—law.

**POINT III**

**IN ANY EVENT, PLAINTIFF'S CLAIMS ARE RIPE BREACH OF CONTRACT CLAIMS AND NOT MERELY INDEMNITY CLAIMS**

Defendants contend that Plaintiff's claim herein is merely an "unripe indemnity claim" and as such cannot support a Rule B attachment. Defendants fundamentally misconstrue Plaintiff's claim. Put most simply, Defendants made affirmative undertakings in the Charter and the LOI to accept responsibility to ensure that the Cargo was only released against the authentic, original bill of lading issued in strict conformity with the Mate's Receipts and reflecting all pre-load damage, and its failure to perform this critical obligation has resulted in substantial exposure to Plaintiff. Defendants do not deny that a fraudulent bill was issued, nor that the cargo was released to the cargo interests upon its presentation. They contend, however, that it was their sub-charterers or some other party who was directly responsible for the issuance of the fraudulent bill. (See Ahn Sun Ju Dec. ¶¶ 11-12). This is legally immaterial insofar as Plaintiff is concerned. Defendant Tiger specifically undertook to bear this risk vis-à-vis Plaintiff, and it specifically undertook to indemnify Plaintiff from all consequences thereof <u>and</u> to put Plaintiff in sufficient funds to defend claims arising out of any failure in this regard. Sunwoo explicitly undertook to guaranty Tiger's commitments in this regard. As such, Plaintiff clearly has a presently cognizable claim and is entitled to be secured by Defendants.

Defendants point to the fact that Plaintiff has not yet commenced proceedings against them in London in respect of Plaintiff's claim, but this assertion is irrelevant. There is no requirement that the arbitration or foreign litigation in respect of which security is being sought be commenced before a Rule B action is permitted. An attachment in contemplation of arbitration or litigation is fully proper. <u>See</u> <u>Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee</u>, 2007 U.S. Dist. LEXIS 72694, * 7 (S.D.N.Y. 2007). Indeed, it is

-18-

common practice for a party to commence arbitration or suit in respect of a claim only after security has been obtained.

Equally, the fact that Plaintiff has not yet incurred liability to the cargo interests is no basis to vacate the attachment in this case. The fact that Plaintiff's damages are prospective does not change the fact that Defendants have <u>already</u> materially breached the contracts at issue and that those breaches have already caused Plaintiff damages and have exposed Plaintiff to substantial liability to the cargo interests. Plaintiff should not be required to gamble that Defendants will still have assets at the time that the full consequences of their breaches of the contract come to bear against Plaintiff. Indeed, the LOI and the Guaranty specifically contemplate that Defendants will assume responsibility for the consequences of a breach of this nature right away, and not merely after the cargo interests manage to obtain a judgment against Plaintiff. Those undertakings should be acknowledged and enforced by this Court.

## POINT IV

### ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW AN ATTACHMENT IN RESPECT OF A CLAIM SEEKING INDEMNITY UNDER A MARITIME CONTRACT

Even if this Court concludes that Plaintiff's claim is merely an unripe indemnity claim, which is denied, the Court should nevertheless exercise its discretion to uphold the attachment given the overwhelming balance of equities in Plaintiff's favor. <u>Aqua Stoli</u> did not address the question of whether a district court has discretion to allow a Rule B attachment in support of an "unripe" indemnity claim. In <u>Greenwich Marine, Inc. v. S.S. ALEXANDRA</u>, 339 F.2d 901 (2d Cir. 1965), however, the Second Circuit did consider a similar question in the context of a ship arrest taken under the authority of the Federal Arbitration Act, 9 U.S.C. § 8. There, the plaintiff was an intermediate charterer of the vessel and asserted, *inter alia*, claims against the owner and

-19-

the vessel *in rem* for indemnification from any liability that it might be found to have to its sub-charterer for cargo damage.  Plaintiff also asserted a claim against its sub-charterer under the Federal Arbitration Act, alleging that it had failed to appoint an arbitrator and seeking to compel arbitration.  The sub-charterer did not assert a counter-claim against the plaintiff but instead directly sued the owner and the vessel in a separate action, claiming direct recovery for the cargo damage.

The Second Circuit affirmed the lower court's *vacatur* of the arrest of the owner's vessel on the ground that the claim was unripe, noting that "[a]t the time [owner] moved to dismiss the libel, it was possible, and exceedingly probable that [plaintiff] would never need to sue [owner] for indemnification, since [the sub-charterer] decided to sue [owner] directly."  The Greenwich Marine court acknowledged the "inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge …." Id. at 905.

The district courts have been inconsistent, under the guidance of Greenwich Marine, in deciding when they may allow an attachment in respect of a claim for indemnity.  As one recent district court decision aptly summarized:

> Several district judges, using the label "unaccrued," "premature," or "unripe," have ruled that a claim for indemnity by the vessel owner, that is, one brought before the consignee's claim against the owner is judicially determined or otherwise resolved, may not be basis of a maritime attachment.  Other judges have ruled to the contrary, that a claim for indemnity is a lawful admiralty claim, and one that qualifies under Admiralty Rule B as entitling the plaintiff to an arrest of ship or attachment or garnishment of money or property found in the district.

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 2007 U.S. Dist. LEXIS 29789, * 13 (S.D.N.Y. 2007)(comparing cases).

In the present case, even if this Court concludes that Plaintiff's claim is not ripe because Plaintiff has not yet suffered any substantial injury as a consequence of Defendants' breaches, Plaintiff respectfully submits that this Court should nevertheless exercise its discretion to allow the attachment to stand. This is not the case, as it was in <u>Greenwich</u>, where it is "possible, and exceedingly probable" that Plaintiff would never need to sue Defendants for indemnification. Unlike in <u>Greenwich</u>, the party ultimately seeking recovery—*i.e.*, the cargo interests—have already put Plaintiff on notice of their claim. The claim derives directly out of responsibilities assumed by and/or actions taken by Defendants and their agents in permitting the Cargo to be released against a fraudulent bill of lading, against which risk Defendants expressly undertook to indemnify Plaintiff and to fund its defense. Plaintiff is at substantial risk now in respect of this claim, and its defenses to the claim have been materially impaired as a consequence of Defendants' conduct. Plaintiff should not be required to wait until it has suffered substantial liability to the cargo interests to find out whether Defendants' undertakings and guarantees are good and valid. In the circumstances, the relative equities weigh heavily in favor of sustaining the attachment.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that Defendants' motion should be denied, the attachment in this matter should be sustained, and Plaintiff should be granted such other and further relief as the Court may consider just and appropriate.

Dated: New York, New York
October 23, 2007

Respectfully submitted,
BLANK ROME, LLP
Attorneys for Plaintiff
PRECIOUS PEARLS LTD.


By _____/S/_____
Thomas H. Belknap, Jr. (TB-3188)
405 Lexington Ave.
New York, NY  10174-0208
(212) 885-5000

-22-