BLANK ROME, LLP
Attorneys for Plaintiff
PRECIOUS PEARLS LTD.
Thomas H. Belknap, Jr. (TB-3188)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRECIOUS PEARLS LTD., <br><br> Plaintiff, <br><br> -against- <br><br> TIGER INTERNATIONAL LINE PTE LTD. and SUNWOO MERCHANT MARINE CO., LTD., <br><br> Defendants. | 07 Civ. 8325 (JGK) <br><br> (ECF) |

I, KAVI SRINIVAS, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.   I am employed as Senior Manager with Precious Shipping Public Company Limited, a corporation organised under the laws of the Kingdom of Thailand ("PSL"). PSL are the operators of WORADA NAREE. I am familiar with the facts recited herein relating to the disputes which have arisen in this matter concerning a cargo of steel products carried aboard the ocean-going cargo vessel M/V WORADA NAREE from Changsu, China to Jeddah, Saudi Arabia pursuant to bill of lading issued on or about May 21, 2007.

2.  Pursuant to e-mail fixture on April 11, 2007, Plaintiff chartered the ocean-going cargo vessel M/V WORADA NAREE ("the Vessel") to Defendant Sunwoo Merchant Marine Co., Ltd. or its guaranteed nominee. A true and accurate copy of the fixture is attached hereto as Exhibit 1.

3.  By message received on April 12, 2007, Sunwoo designated Defendant Tiger as its nominee under the Charter. A true and accurate copy of Sunwoo's e-mail request is attached hereto as Exhibit 2. In its message, Sunwoo wrote as follows:

    PLS DO NOT PUT FLWG WORDING AFTER THE NAME OF THE CHRTRS,

    "THE PERFORMANCE OF THIS CHARTER PARTY IS FULLY GUARANTEED BY SUNWOO MERCHANT MARINE CO. LTD, SEOUL, KOREA."

    HOWEVER, IF OWNS NEED TO HAVE A SEPARATE LETTER OF GUARANTEE, WE ARE READY TO GIVE IT FOR CHTRS NOMINEE AS PER OWNERS FORMAT/WORDING SAME AS M/V SUTHATHIP NAREE

4.  Ultimately, a charter party contract dated April 11, 2007 (the "Charter") was issued listing Defendant Tiger as Charterer and omitting the guarantee wording as requested by Sunwoo. A working copy of the Charter is attached hereto as Exhibit 3.

5.  Defendant Sunwoo issued its separate letter of guarantee dated April 16, 2007 (the "Guarantee") by which it undertook to guarantee the performance of Defendant Tiger under the Charter. A true and accurate copy of the Guarantee is attached hereto as Exhibit 4.

6.  In his Declaration submitted in support of Defendants' motion to vacate, Mr. Ahn Sun Ju states that Tiger sub-chartered the Vessel to Sunwoo and Sunwoo then sub-chartered the Vessel to Nanjing Ocean Shipping Co. Ltd. ("NASCO").

Apparently there is a dispute about whether NASCO properly nominated Nanyuan Shipping Co. Ltd as a substitute charterer. Although Owners were informed by SUNWOO that a further charter had been entered into with NASCO, and voyage instructions sent by Sunwoo to the Master on May 12, 2007 referred to NASCO, no charters were ever disclosed to Precious during the relevant events discussed herein and Owners still have not been provided with a copy of the alleged sub charter between Tiger and Sunwoo referred to at paragraph 6 of Ahn Sun Ju's Declaration.

7.  Pursuant to the Charter, Defendants directed the Vessel to proceed to Changshu Port, China to load a cargo of hot-rolled reinforcing steel bars and/or other steel cargo for carriage to Jeddah Port, Saudi Arabia (the "Cargo"). By letter dated May 15, 2007, Owner authorized NASCO to sign bills of lading on behalf of the Master for the Cargo, but only in strict conformity with the Mate's Receipts and subject to various other terms and conditions, including the restriction in paragraph "h"—in keeping with clauses 8 and 64 of the Charter—that no "liner" bills of lading may be issued. A true and accurate copy of this letter of authorization is attached as Exhibit 5.

8.  In accordance with Clause 84 of the Charter, Owners had the option of appointing a pre-shipment surveyor when loading steel cargo. Precious appointed SJ Marine Surveyors & Loss Adjusters Ltd to carry out a pre-shipment survey of the steel cargo at Changshu and advise the Master in clausing the Mate's receipts to accurately reflect the condition of the cargo at the time of loading. Charterers were informed by Owners about SJ Marine's appointment and they agreed to share the costs of the pre-shipment survey. True and accurate copies of the relevant documents in this respect are attached as Exhibit 6.

9. The Mate's receipts were claused in accordance with the remarks suggested by the attending SJ Marine surveyor. A copy of the pre-shipment survey report was sent to the Charterers via the brokers on 14th June 2007.

10. Clause 8 of the Charter required that bills of lading for cargo must be issued "in conformity with Mate's and Tally Clerk's receipts." (See Ex. 3). As noted above, this was also a requirement of the letter of authorization. (See Ex. 5). In accordance with this clause and the Charter, bill of lading no. CSH0043-JDH01 dated May 21, 2007 was issued in respect of the Cargo. A true and accurate copy of this bill of lading is attached hereto as Exhibit 7.

11. This bill of lading issued for the Cargo reflected the "carrier" as Nanyuan Shipping Co., Limited and was "claused" to reflect substantial pre-existing rust and damage and other conditions of the Cargo prior to loading aboard the Vessel, all of which remarks were in conformity with the Mate's receipts issued in respect of the cargo. Specifically, the remarks were as follows:

    Remarks For Lot 1:

    1. All cargoes were stored at open yard with tarpaulin.
    2. All cargoes with rust stained partly and slightly
    3. 1-3 strapping bands broken/missing/loose affected 562 bundles
    4. 52% of all bundles with oily spots on the surface
    5. 945 bundles with 4-6 pieces bent near the end
    6. 64 bundles were wet and stayed on the truck along shipside because of the loading operation was stopped during raining
    7. quantity as per China Ocean Shipping tally, quality and weight as per shipper.

    Remark for Lot 2:

    1. All cargoes were stored in the warehouse without any covering
    2. All coils with rust partly and slightly
    3. 46 coils with rust stained zone as a band on the surface of coils
    4. 1-2 strapping bands broken, missing affected 19 coils
    5. The wire rods near both ends partly and slightly bent affected 23 coils
    6. Quantity as per China ocean Shipping tally, quality and weight as per shipper.

12. Ordinarily, cargo may not be discharged to cargo receivers at the discharge port except upon presentation by the consignee or receiver of the original bill of lading. The Charter provided at Clause 56, however, that Plaintiff would "allow charterers to discharge the cargo/es without presentation of original bill(s) of lading against charterers providing owners with letter of indemnity with owners' P&I club form and wording before discharge." (See Ex. 3).

13. Defendant issued to Plaintiff a letter of indemnity dated June 8, 2007 in this respect (the "LOI") in consideration of Plaintiff's agreeing to discharge the Cargo (as well as cargo shipped under numerous other bills of lading not at issue here) without presentation of the original bill of lading to the custody of the local agents in Jeddah, Messrs Kanoo Shipping Agencies. A true and accurate copy of the LOI is attached hereto as Exhibit 8. A true and accurate copy of the Master's message dated 16th June to Messrs Kanoo Shipping Agencies regarding discharge of the Cargo under the Charterers' LOI is attached hereto as Exhibit 9. Pursuant to the terms of the LOI, the agents were to deliver the Cargo only upon receipt of a duly endorsed original bill of lading and were to send the originals to Owners. Although the Cargo was delivered to the consignees, Owners have never received the original bills of lading from the agents.

14. Although Charterers furnished a LOI for non-presentation of bills of lading, Owners understand that the consignees presented a duly endorsed "clean" bill of lading to the agents on the first day of discharge itself for taking delivery of the Cargo. This was the bill of lading against which the suppliers of the Cargo obtained payment under the letter of credit.

15. The cargo receivers, Saudi Group for Construction Materials Co, notified Kanoo Shipping Agencies on or about June 20, 2007 that the Cargo had been received with substantial damage. Kanoo, in turn, notified the Owners' P&I Club ("Thomas Miller") of the same. A P&I surveyor was immediately appointed on behalf of Owners to investigate the nature, cause and extent of the alleged damage to the Cargo. According to Owners' P&I surveyor, the damage complained of subsequent to discharge in Jeddah was sustained prior to shipment on board the vessel. In the circumstances, Owners' local correspondent in Jeddah (Mutual Marine Services Al Mushtaraka Ltd) wrote to Kanoo Shipping Agencies on July 16, and suggested that cargo interests should look to the shippers of the cargo in respect of any claims. The Owners also advised Charterers, via the brokers on about July 20, that in circumstances where the damage complained of was all pre-shipment, they did not accept any liability in respect of the same and suggested that Charterers' put shippers on notice of the claim and ask them to deal with it in the first instance.

16. On or about September 12, 2007, representatives of the cargo receivers asserted a written claim for substantial damage to the Cargo. A true and accurate copy of their initial claim letter is attached hereto as Exhibit 10.

17. A true and accurate copy of the "clean" bill of lading which the cargo interests presented to obtain delivery of the Cargo from Tiger's agents or representatives, and upon which they rely in respect of their claim, is attached hereto as Exhibit 11. As can be seen, in the upper right corner of the document it indicates "Precious

Pearls Ltd." as "carrier" whereas the authentic bill reflects that the "carrier" is "Nanyuan Shipping Co., Ltd." Because of this unauthorised alteration, Saudi Group for Construction Materials Co is looking to Precious rather than Nanyuan, which has obviously exposed Owners to substantial liability under this unauthorised bill of lading. Critically, the unauthorized bill presented by the cargo interests omits all remarks concerning any pre-load damage to the Cargo, including all remarks reflecting pre-shipment rust damage.

18. It is Precious' position that although the original bill of lading issued for the Cargo was properly claused to reflect its substantial pre-shipment rust and damaged condition, the Defendant Tiger, without notice to or knowledge of Plaintiff, in breach of the Charter, obtained or allowed the issuance of a second, clean bill of lading in respect of the Cargo which ultimately was provided to Saudi Group for Construction Materials Co. It is further Precious' position that Tiger breached its obligations under the LOI by permitting the release of the Cargo against a bill of lading which was not issued in conformity with the Mate's receipts. Finally, it is Precious' position that Tiger allowed the issuance of a bill of lading on a liner form, contrary to the provisions of clauses 8 and 64 of the Charter, and thus are in breach in this respect as well. Sunwoo is liable as guarantor of Tiger's obligations under the Charter and the LOI.

19. Following receipt of Saudi Group for Construction Materials Co's letter of claim dated September 12, urgent messages were sent by Thomas Miller to Charterers/Sunwoo between September 18-20, notifying them about the substantial claim and holding them fully responsible for the same pursuant to the terms of the Charter. In order to avoid unecessary costs being incurred Thomas Miller invited Charterers/Sunwoo to confirm their agreement to take over the handling of the claim in the first instance or provide security in the amount of USD8.5 million in respect of the same. Owners were also corresponding with Charterers, via broking channels, between

      September 20-29 reiterating the points made by Thomas Miller in their correspondence with Charterers/Sunwoo.

20. Following receipt of a chaser from Saudi Group for Construction Materials Co on October 2, for a response to their claim a further message was sent by Thomas Miller to the Charterers/Sunwoo on October 3, notifying them accordingly and of the Owners' response to the same. A further chaser was received from Saudi Group for Construction Materials Co on October 11. Thomas Miller wrote to Hill Dickinson LLP in London (having been instructed by Charterers and Sunwoo in the interim) on October 12, and requested once again, that Charterers/Sunwoo agree to take over the handling of the claim and/or to agree on a proposed response to Saudi Group for Construction Materials Co by close of business London time on October 17. Hill Dickinson confirmed on October 17, that Charterers/Sunwoo were not prepared to take over the defence of the claim. Thomas Miller have continued to correspond with Saudi Group for Construction Materials Co denying any liability for the claim. True and accurate copies of the relevant exchanges are set out in Exhibit 12.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2007.

_____
Kavi Srinivas