# SRINIVAS DECLARATION

# EXHIBIT 11

| Shipper | | BILL OF LADING | B/L NO. CSH0043-JDH01 |
|---|---|---|---|
| PINGXIANG IRON AND STEEL CO., LTD | | | Nationality of Ocean Vessel |
| XIASHANKOU, PINGXIANG, JIANGXI PROVINCE, CHINA | | | |

CARRIER: PRECIOUS PEARLS LTD., BANGKOK

| Consignee |
|---|
| TO ORDER OF THE SABB |

Shipped on board the vessel named herein in apparent good order and condition (unless otherwise indicated) the goods or packages specified herein and to be discharged at the above mentioned port of discharge or as near thereto as the vessel may safely get and be always afloat.

The weight, measure, marks, numbers, quality, conditions and value, being particulars furnished by the Shipper, are not checked by the Carrier on loading. The shipper, Consignee and the Holder of this Bill of Lading hereby expressly accept and agree to all printed, written or stamped provisions, exceptions and conditions of this Bill of Lading, including those on the back hereof. One of the Bills of Lading duly endorsed must be surrendered in exchange for the goods or delivery order.

| Notify Address |
|---|
| SAUDI GROUP FOR CONSTRUCTION MATERIALS |
| CO., P.O.BOX 58290, RIYADH: 11594, KINGDOM OF |
| SAUDI ARABIA, FAX: 4651643 |

In witness whereof, the Carrier of his Agents has signed Bills of Lading all of this tenor and date, one of which being accomplished, the others to stand void.

Shippers are requested to note particularly the exceptions and conditions of this Bill of Lading with reference to the validity of the insurance upon their goods.

| Pre-carriage by | Place of Receipt by Pre-carrier |
|---|---|
| | |

| Ocean Vessel | Port Of Loading |
|---|---|
| WORADA NAREE V.0701 | CHANGSHU PORT, CHINA |

ORIGINAL

| Port of Discharge | Final destination (if goods to be transhipped at port of discharge) | Freight payable at | Number of original B(s)/L |
|---|---|---|---|
| JEDDAH PORT, SAUDI ARABIA | | | THREE |

| Marks & Nos/ Container Nos. | Number and kind of packages; description of goods | Gross weight kgs | Measurement m³ |
|---|---|---|---|
| N/M | DESCRIPTION OF GOODS | | |

Particulars Furnished by Merchants

LOT 1)
HOT ROLLED DEFORMED REINFORCING STEEL BARS ACCORDING TO
ASTM A615M:1996 GRADE 60, AIRCOOLED, WITH VANADIUM ADDED

| SIZE | WEIGHT | NUMBER OF BUNDLES |
|---|---|---|
| 10MM | 3832.013 MTS | 1920 BUNDLES |
| 12MM | 5030.357 MTS | 2511 BUNDLES |
| 14MM | 4961.111 MTS | 2480 BUNDLES |
| 16MM | 4890.289 MTS | 2458 BUNDLES |
| 18MM | 499.468 MTS | 248 BUNDLES |
| 25MM | 512.798 MTS | 252 BUNDLES |

NUMBER OF BUNDLES: 9869 BUNDLES     WEIGHT: 19726.036 MTS
LOT 2)
HOT ROLLED DEFORMED REINFORCING STEEL BARS ACCORDING TO
ASTM A615M:1996 GRADE 40, AIRCOOLED, WITH VANADIUM ADDED

| SIZE | WEIGHT | NUMBER OF COILS |
|---|---|---|
| 8.0MM | 2318.253 MTS | 1185 COILS |

NUMBER OF COILS: 1185 COILS     WEIGHT: 2318.253 MTS
TOTAL WEIGHT: 22044.289 MTS
TOTAL NUMBER OF COILS AND BUNDLES: 1185 COILS AND 9869 BUNDLES
PACKING: IN BARE COILS OF ABOUT 2MT
ORIGIN OF GOODS: CHINA
MANUFACTURER: PINGXIANG IRON AND STEEL CO., LTD
FREIGHT PREPAID
CLEAN ON BOARD    ON BOARD DATE: 2007-05-21
SHIPPING MARKS: SAUDIGRP70, AND MANUFACTURER NAME: PINGXIANG IRON AND STEEL CO., LTD., CHINA.
THE NAME OF THE SHIPPING AGENT IN THE PORT OF DISCHARGE: KANOO SHIPPING AGENCIES
ADDRESS: P.O.BOX 290, DUBAI, U.A.E.    TELEPHONE: 966 2 263 2959 EXT 201,206,215,216,218,223,224,231
TELEX NUMBER: 601039 YBAK SJ/ 602057 KANSHP SJ
L/C No. DIBWPM700809

ON BOARD 21 MAY 2007

| TOTAL PACKAGES (IN WORDS) | SAY TOTAL ONE THOUSAND ONE HUNDRED AND EIGHTY FIVE COILS AND NINE THOUSAND EIGHT HUNDRED AND SIXTY NINE BUNDLES ONLY |
|---|---|

| Freight and charges | Place of B(s)/L issue |
|---|---|
| | CHANGSHU PORT, CHINA |
| SABB 740534 WPM-TDS IMP-SEC | 2007-05-21 |
| | CHANGSHU HOTHEART INTERNATIONAL SHIPPING AGENCY CO.,LTD. |
| | Signed for the Carrier |
| | AS AGENT FOR AND ON BEHALF OF THE MASTER: |
| | KLANGPRAPAN ATICHAT OF WORADA NAREE V.0701 |
| | GENERAL MANAGER |
| | AS AGENT |

*)Applicable only when document used as a Through Bill of Lading        (PGC FORM 02) Printed in 1-1998

The following are the conditions and exceptions hereinbefore referred to:

1. **DEFINITION.** "Merchant" includes the Shipper, the Receiver, the Consignee, the Consignor, the Holder of the Bill of Lading and the Owner of the Goods.
2. **JURISDICTION.** All disputes arising under and in connection with this Bill of Lading shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the Carrier and the Merchant.
3. **PARAMOUNT CLAUSE.** This Bill of Lading shall be Subject to the Hague Rules contained in the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, dated at Brussels the 25th August 1924, or the corresponding legislation of the flag state of the ship. If the stipulations of this Bill of Lading are wholly or partly contrary thereto, this Bill of Lading shall be read as if such stipulation or part thereof, as the case may be, were deleted.
4. **PERIOD OF RESPONSIBILITY.** The responsibility of the Carrier shall commence from the time when the goods are loaded on board the vessel and shall cease when they are discharged from the vessel.
   The Carrier shall not be liable for loss of or damage to the goods before loading and after discharging from the vessel, howsoever such loss or damage arises.
5. **PACKING AND MARKS.** The Merchant shall have the goods properly packed and accurately and clearly marked before shipment. The port of destination of the goods should be marked in letters not less than 5 cm high. In such a way as will remain legible until their delivery. All fines and expenses arising from insufficiency or inadequacy of packing or marks shall be borne by the Merchant.
6. **FREIGHT AND OTHER CHARGES.** (1) Advance freight together with other charges is due on shipment. If not prepaid, though stipulated, the freight and other charges shall be paid by the Merchant plus 5% interest per annum running from the date of notification for their payment.
   If the cargo shipped are perishables, low cost goods, live animals, dock cargo or goods for which there is no Carrier's agent at the port of destination, the freight for such cargo and all related charges shall be paid at the time of shipment.
   Freight payable at destination together with other charges is due on vessel's arrival.
   Advance freight and/or freight payable at destination shall be paid to the Carrier in full, and non-returnable and non-deductable irrespective of whatever loss or damage may happen to vessel and cargo or either of them.
   (2) All dues, taxes and charges or any other expenses in connection with the goods shall be paid by the Merchant.
7. **INCORRECT STATEMENTS.** The Carrier is entitled, at port of shipment and/or port of destination, to verify the quantity, weight, measurement and contents of the goods as declared by the Merchant. If the weight, measurement and/or contents of such goods as stated in the Bill of Lading turned out to be inconsistent with that of the goods actually loaded, and the freight paid falls short of the amount which would have been due if such declaration had been correctly given, the Carrier is entitled to collect from the Merchant as liquidated damages to the Carrier double the amount of difference between the freight for the goods actually shipped and that mis-stated.
   The Merchant shall be liable for loss of and damage to the vessel and/or goods arising or resulting from inaccuracies in stating the description, quantity, weight, measurement or contents of the goods and shall indemnify the Carrier for the costs and expenses in connection with weighing, measuring and checking such goods.
8. **LOADING, DISCHARGING AND DELIVERY.** The goods shall be supplied and taken delivery of by the Owner of the goods as fast as the vessel can take and discharge them. Without interruption, by day and if required by Carrier also by night, sundays and holidays included, notwithstanding any custom of the port to the contrary and the Owner of the goods shall be liable for all losses or damages including demurrage incurred in default thereof.
   Discharge may commence without previous notice. If the goods are not taken delivery of by the Receiver from alongside the vessel without delay, or if the Receiver refuses to take delivery of the goods, or in case there are neclaimed goods, the Carrier shall be at liberty to land such goods on shore or any other proper places at the sole risk and expense of the Merchant, and the Carrier's responsibility of delivery of cargo shall be deemed to have been fulfilled.
   Weighing on board is only allowed by special permission of the Carrier, including detention and extra costs of discharging, shall be for account of the Receivers or Consignees, notwithstanding any custom of the port to the contrary.
   If the goods are unclaimed during a reasonable time or the goods will become deteriorated decayed or worthless, the Carrier may at his discretion and subject to his lien, and without any responsibility attaching to him, still, abandon or otherwise dispose of such goods solely at the risk and expense of the Merchant.
9. **LIGHTERAGE.** Any lighterage in or off ports of loading or ports of discharge shall be for the account of the Merchant.
10. **LIEN.** The Carrier shall have a lien on the goods and any document relating thereto for freight, dead freight, demurrage and any other amount payable by the Merchant, and for General Average contributions for which and for any purpose shall have the right, to sell by otherwise dispose of the goods. If on sale of the goods, the proceeds fall to cover the amount due and the cost and expenses incurred, the Carrier shall be entitled to recover the difference from the Merchant.
11. **NOTICE OF LOSS OR DAMAGE.** Unless notice of loss of damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the Contract of Carriage, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in the Bill of Lading.
   If the loss or damage is not apparent, the notice must be given within three days of the delivery.
   The notice in writing need not be given if the state of the goods has at the time of their receipt been the subject of joint survey or inspection.
   In any event the Carrier and the vessel shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.
   In the case of any actual or apprehended loss or damage the Carrier and the Receiver shall give all reasonable facilities to each other for inspecting and tallying the goods.
12. **LIMITATION OF LIABILITY.** All claims for which the Carrier may be liable shall be calculated on the basis of the Merchant's net invoice cost, plus freight and insurance premium, if paid. In no event shall the Carrier be liable for any loss of possible profit or any consequential loss.
    The Carrier for any loss of or damage to the goods shall be limited to an amount not exceeding £ 100 per package or freight unit unless the value of the goods higher than the amount is declared in writing by the Shipper before receipt of the goods by the Carrier and inserted in this Bill of Lading and extra freight paid as required. If the actual value of the goods per package or per freight unit exceeds such value, the declared value shall nevertheless be deemed to be the declared value and the Carrier's liability. If any, shall not be the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.
13. **FORWARDING, SUBSTITUTE OF VESSEL, THROUGH CARGO AND TRANSHIPMENT.** If necessary, the Carrier shall be at liberty to carry the goods to their port of destination by other vessel or vessels either belonging to the Carrier or other persons or by rail or other means of transport proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, lighter, land and store the goods on shore or afloat and reship and forward some at the Carrier's expenses but at Merchant's risk. The responsibility of the Carrier shall be limited to the port of the transport performed by him on the vessel under his management.
14. **DANGEROUS GOODS, CONTRABAND.** (1) The Merchant undertakes not to tender for transportation any goods which are of a dangerous, inflammable, radio-active, and/or any harmful nature without previously giving written notice of their nature to the Carrier any marking the goods and the container or other covering on the outside as required by any laws or regulations which may be applicable during the carriage.
    (2) Whenever the goods are discovered to have been shipped without complying with the subclause (1) above or the goods are found to be contraband or prohibited by any laws or regulations of the port of loading, discharge or call or any place of way, its during the carriage, the Carrier shall be entitled to have such goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation and the Merchant shall be liable for and indemnify the Carrier against any kind of loss, damages or liability including loss of freight, and any expenses directly or indirectly arising out of or resulting from such shipment.
    (3) If any goods shipped complying with the sub-clause(1) above become a danger to the ship or cargo, they may in like manner be rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation except to General Average, if any.
15. **DECK CARGO, LIVE ANIMALS AND PLANTS.** Cargo on deck, plants and live animals are received, handled, carried, kept and discharged at Merchant's risk and the Carrier shall not be liable for loss thereof or damage thereto.
16. **CARGO IN CONTAINERS.** (1) Goods may be stowed by the Carrier or his agents or servants in containers and containers whether stowed as aforesaid or received fully stowed may be carried on or under deck without notice. The Carrier's liability for such carriage shall likewise be governed by the terms and conditions of this Bill of Lading irrespective of Clause 15 hereof, notwithstanding the fact that the goods are being carried on deck and the goods shall contribute to General Average and shall receive compensation in General Average. (2) If a container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense incurred by the Carrier if such injury, loss, damage, liability or expense has been caused by
    1) the manner in which the container has been filled, packed, stuffed or loaded; or
    2) the unsuitability of the contents for carriage in containers; or
    3) the unsuitability or defective condition of the container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time the container was filled, packed, stuffed or loaded.
    If a container which has not been filled, packed, stuffed or loaded by the Carrier is delivered by the Carrier with the seal intact, such delivery shall be deemed as full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the container. The Shipper shall inspect containers before stuffing them and the use of the containers shall be prima facie evidence of their being sound and suitable for use.
17. **REFRIGERATED GOODS.** Before loading goods in any insulated space, the carrier shall in addition to the Class Certificate, obtain the certificate of the Classification Society's Surveyor or other competent person, stating that such insulated space and refrigerating machinery are in the opinion of the surveyor other competent person fit and safe for the carriage and preservation of refrigerated goods. The aforesaid certificate shall conclusive evidence against the Merchant.
    Receivers have to take delivery of refrigerated cargo as soon as the vessel is ready, to deliver otherwise the Carrier shall land the goods at the wharf at the Merchant's risk and expense.
18. **TIMBER.** Any statement in this Bill of Lading to the effect that timber has been shipped "in apparent good order and condition" does not involve any admission by the Carrier as to the absence of stains, shakes, split holes or broken pieces, for which the Carrier accepts no responsibility.
19. **IRON AND STEEL.** Every piece of Iron and Steel is to be distinctly and permanently marked with oil paint and every bundle securely fastened, distinctly and permanently marked with oil paint and metal tagged, by the Merchant, so that each piece or bundle can be distinguished at port of discharge. If the Merchant fails to meet the aforesaid requirements, the Carrier shall neither be responsible for correct delivery nor liable for expenses arising therefrom.
20. **BULK CARGO, GOODS TO MORE THAN ONE CONSIGNEE.** (1) As the Carrier has no reasonable means of checking the weight of bulk cargo, any reference to such weight in this Bill of Lading shall be deemed to be for reference only. But shall constitute in no way evidence against the Carrier.
    (2) When bulk cargo or goods without marks or cargo with the same marks are shipped to more than one Consignee. The Consignees or Owners of the goods shall jointly and severally bear any expenses for or by dividing the goods or parcels into prorata quantities and any deficiency shall fall upon them in such proportion as the Carriers, his servants or agents shall decide.
21. **HEAVY LIFTS AND AWKWARD CARGO.** Any one piece or package of cargo weighs 2000 kilos or upwards and any awkward cargo with a length of 9 meters or upwards must be clearly and boldly marked with the weight and/or dimensions and/or length by the Shipper and shall be loaded and discharged by shore crane or otherwise at the ship's option and at the risk and expense of the Merchant. If any damage, loss or liability to the ship, lighter, wharf, quay, cranes, travelling tackle or whatsoever or to whomsoever occurs owing to the lack of statement or mis-statement of weight, measurement or length, the Merchant shall be responsible for such damage, loss or liability.
22. **FUMIGATION.** In the event of fumigation of goods on board for whatever reason, the Carrier shall not be liable for damage to goods without actual proof of the Carrier's negligence which shall not be presumed against him. And all expenses incurred are Merchant's account.
23. **OPTION.** The port of discharge for optional goods must be declared on the vessel's agents at the first of the optional ports named in the option not later than 48 hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first of any optional port and the contract of carriage shall then be considered as having been fulfilled. Any option must be for the total quantity of goods under this Bill of Lading.
24. **GENERAL AVERAGE AND NEW JASON CALUSE.** (1) General average shall be adjusted, stated and settled according to the York-Antwerp Rules, 1974, at any port or place at the carrier's option.
    (2) In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which, or for the consequence of which the Consignees or Owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, Be made by the goods, Shippers, Consignees or Owners of the goods to the Carrier before delivery.
25. **BOTH TO BLAME COLLISION CLAUSE.** If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and act, neglect or default of the master, manner, pilot or other servants of the Carrier in the navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of said goods paid or payable by the other or non-carrying vessel or her Owners to the Owners of said goods and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying ship or Carrier. The foregoing provision shall also apply where the Owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects and are at fault in respect of a collision, contact stranding or other accident.
26. **WAR, QUARANTINE, STRIKES, CONGESTION ETC.** Should it appear that war, Blockade, pirate, epidemics, quarantine, ice, strikes, congestion and other causes beyond the Carrier's control would prevent the vessel from safely reaching the port of destination and/or discharging the goods thereat, the Carrier is entitled to discharge the goods at the port of loading or any other safe and convenient port and the contract of carriage shall be deemed to have been fulfilled. Any extra expenses incurred under the aforesaid circumstances shall be borne by the Merchant.