UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PRECIOUS PEARLS, LTD.,

                Plaintiff,

     - against -

TIGER INTERNATIONAL LINE PTE LTD.
and SUNWOO MERCHANT MARINE CO.,
LTD.,

                Defendants.

------------------------------------------------------------X

07 CV 8325 (JGK)

(ECF)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ATTACHMENT (CORRECTED)

NOURSE & BOWLES, LLP
Attorneys for Defendants
One Exchange Plaza
At 55 Broadway
New York, NY  10006-3030
(212) 952-6200

Shaun F. Carroll (SC 9898)
Nourse & Bowles, LLP
One Exchange Plaza
New York, New York 10006
Telephone:  (212) 952-6200
Facsimile:   (212) 952-0345
E-mail:      scarroll@nb-ny.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| PRECIOUS PEARLS, LTD., | |
| Plaintiff, | 07 Civ. 8325 (JGK) |
| - against - | REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ATTACHMENT |
| TIGER INTERNATIONAL LINE PTE LTD. and SUNWOO MERCHANT MARINE CO., LTD., | (ECF) |
| Defendants. | |

------------------------------------------------------------X

## Statement

Defendants, Tiger International Line Pte Ltd. ("Tiger") and Sunwoo Merchant Marine Co., Ltd. ("Sunwoo"), by their attorneys, Nourse & Bowles, LLP, submit this reply memorandum in support of their motion pursuant to Rule B and E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure to vacate this Court's Ex Parte Order of Process of Maritime Attachment and Garnishment dated September 24, 2007, dismiss the Verified Complaint herein and

grant Defendants leave to seek damages, attorneys' fees and costs incurred in connection with this motion, and for such other and further relief as this Court deems proper.

## I

### THE ATTACHMENT SHOULD BE VACATED BECAUSE THE VERIFIED COMPLAINT HEREIN IS DEFICIENT ON ITS FACE

Plaintiff contends that post Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006), the court's inquiry into the adequacy of plaintiff's claim is limited to a *prima facie* review of the adequacy of the pleadings. There is no uniformity on this issue because some courts have held that the plaintiff should be held to a "reasonable basis" or "probable cause" standard to avoid vacation. See, Wajiliam Exports v. ATL Shipping Ltd., 475 F. Supp. 2d 275 (S.D.N.Y. 2006); Ullisis Shipping Corp. v. FAC Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y. 2006). However, assuming without conceding that *prima facie* standard applies, the attachment herein should be vacated because the Verified Complaint is deficient on the standards applied to pleadings alone.

    1.    Plaintiff's Contingent Indemnity Claim is Premature

Howsoever styled, Plaintiff's claim is at bottom a contingent claim for indemnity and, as such, fails to state a proper maritime claim for purposes of Rule B. Bottiglieri Di Navigazione SpA, 2007 AMC 1013 (S.D.N.Y. 2007).

In Bottliglieri, English law governed that charter, as it does the Charter between Precious and Tiger, and the Court held that a claim by a disponent owner of a vessel again the charterer for indemnity in respect of the head owner's claim for indemnity for cargo damage, was premature where the disponent owner had not yet paid the claim.

Judge Kaplan's analysis in Bottlieri is instructive because he distinguished between true claims for breach of contract as opposed to indemnity claims under English law, and found that where the disponent owners claim was based entirely on the head owner's claim, as is Precious' claim in this case, it was in substance an indemnity claim and, therefore, not "ripe" for purposes of Rule B. Thus, Precious' wholly contingent indemnity claim is premature.

Unaddressed anywhere is plaintiff's opposition brief is Judge Haight's decision in Sonito Shipping v. Sun United Maritime Ltd., 478 F. Supp. 532 (S.D.N.Y. 2007). In that case, Judge Haight clearly found as part of his analysis as to whether plaintiff had made out a *prima facie* case, that the court could and should conduct an analysis of the "ripeness" of plaintiff's claim under English law. Judge Haight properly concluded that because the vessel owner had not yet settled and paid the underlying cargo claims, its claim for indemnity was contingent and, therefore, not a basis for a valid admiralty claim under Rule B. Again, Precious' wholly contingent claim is similarly premature.

2. <u>The fact that plaintiff has chosen to confuse the issue with unfounded allegations of fraud does not change the result.</u>

Plaintiff's complaint seeks relief in part on the basis that Tiger "fraudulently and/or in breach of the Charter, obtained the issuance of a second, clean bill of lading in respect of the cargo which it ultimately provided to the cargo interests." Verified complaint ¶12. That is the sum and total of the operative allegations.

Rule 9(B) Fed. R. Civ. P. states the pleading standard applicable to fraud claims as follows:

> (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity …

As a minimum, the "circumstances constituting fraud" usually requires the claimant to allege the identity of the person who made the fraudulent statement, the time, place and content of the statement, the resulting inquiry and the method by which the misrepresentation was communicated. 2 Moores Federal Practice §9.03 [1][b] p. 9 – 18 (2007 Ed.). More importantly, allegations of fraud cannot usually be made on information and belief. National Council of Young Israel v. Wolf, 963 F. Supp. 276, 281 (S.D.N.Y. 1997). Moreover, the fact is that the complaint herein is a Verified Complaint, meaning that the party who presents the pleading certifies:

(1)   that it is not being presented for an improper purpose; and

(2)   that its factual contentions have, or if so specifically identified, likely will have evidentiary support.

2 Moores, §11.11 [1] p. 11 – 19 (2007 Ed.)

4

Where, as here, plaintiff contends that it has conducted an "investigation" (Verified Complaint ¶12), there must be (1) some specific factual allegation as to how, when or why Tiger allegedly procured the issuance of the fraudulent bill, and (2) at least some showing of evidentiary support for counsel's belief as to the truth of the matters alleged. And yet, there is none.

The Verified Complaint does not alleged how or when Tiger procured the issuance of the bill, or how it could be contractually responsible for the actions of a third party who did. In fact, the allegedly fraudulent bills are irrelevant. Precious contends that the issuance of Fraudulent Bills has exposed it to "liability" it would not have had but for the fact it is named a "carrier" on the false bills, and its ability to defend on the basis of "pre-shipment damage" is "compromised". Opposition Memorandum p. 8. The pre-shipment condition of the cargo is irrelevant because the cargo interests have conceded the pre-shipment damage and alleged that their claim is for damage incurred during the voyage. See, Srinivas Declaration, Ex. 12e-mail message dated 11 October from Saudigroup to U.K. Club. Thus, the pre-shipment condition of the cargo is irrelevant.

A Rule E hearing is not a nullity. Where the Rules of Procedure demand specificity and evidentiary support, the burden is on an attaching party to make the necessary showing. It is fair to require the plaintiff to adduce at least some evidence of its fraud allegations, or suffer the dismissal of its fraud claim as a consequence. See, Brave Bulk Transport v. Spot On Shipping, 207 U.S. Dist. LEXIS 69751 (S.D.N.Y. 2007) (Rule B Attachment vacated in face of defendants denial of alter ego allegations,

5

without plaintiff's showing of "some specific facts" sufficient to justify piercing the corporate veil.)

The Attachment Should Be Vacated because Plaintiff's Claim is Insufficient on its Face.

## II

## PLAINTIFF'S AUTHORITIES ARE DISTINGUISHABLE

At page 20 of its memorandum of law in opposition to defendants' motion to vacate, plaintiff relies on Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 2007 U.S. Dist. LEXIS 29789, 13 (SDNY 2007) (Hellerstein) to support its contention that district courts have been "inconsistent" in deciding whether conditional indemnity claims may form the basis for a Rule B attachment. However, the Navalmar decision, and the cases cited therein (which are not discussed by plaintiff), do not help plaintiff's argument.

In Navalmar, a vessel owner commenced a Rule B action against the vessel's charterer for various breach of charter party claims arising out of alleged damage to cargo discovered at the discharge port. In deciding whether the plaintiff's complaint for an attachment stated a "valid prima facie admiralty claim", Judge Hellerstein cited three cases supporting the general rule that an unaccrued claim for indemnity by a vessel owner with respect to potential cargo damage liability is not sufficient to form the basis for a maritime attachment. Sonito Shipping Co. Ltd., supra, (vacating attachment); J.K. Int'l

Pty. Ltd. v. Agriko S.A.S., No. 06 Civ. 13529, 2007 U.S. Dist. LEXIS 10074 (SDNY Feb. 13, 2007) (vacating attachment); and Bottiglieri Di Na Vigazione Spa v. Tradeline LLC, No. 06 Civ. 3705, 472 F. Supp. 2d 588, 2007 U.S. Dist. LEXIS 8279 (SDNY Feb. 6, 2007) (vacating attachment).

Judge Hellerstein also cited three cases to support the proposition that a claim for indemnity may form the basis for a maritime attachment. Daeshin Shipping Co. v. Meridan Bulk Carriers, Ltd., No. 05 7173, 2005 U.S. Dist. LEXIS 22409 (SDNY Oct. 3, 2005) (upholding attachment); Eitzen Sealift A/S v. Cementos Andinos Dominicanos, S.A., 2005 U.S. Dist. LEXIS 19876 (SDNY 2005) (upholding attachment); and Starsonet Shipping Ltd. v. North Star Navigation Inc., 659 F. Supp. 189 (SNDY 1987 (upholding attachment). These cases, however, can easily be distinguished from the facts of the present case. For instance, in Daeshin Shipping Co., the plaintiff (head charterer) commenced a Rule B attachment action against the vessel's charterer for various claims, including indemnity for claims for vessel damage asserted against the plaintiff by the vessel's head owners. Defendant contended that the indemnity claim was speculative and premature. Significantly, in permitting the attachment, the court noted that arbitration proceedings had already been commenced involving all of the parties, specific damage claims had been asserted, and the head owner had already initiated a lawsuit against plaintiff in Korea and attached plaintiff's property there.

In Eitzen Sealift, the plaintiff (vessel's time-chartered owner) commenced a Rule B attachment action against the charterer seeking security for various charter party claims

arising out of the vessel's grounding, including a claim for indemnity for claims brought by a third party (the charterer of an unrelated vessel) after cargo was arrested on that vessel. The court held that the indemnity claim constituted a valid maritime claim in support of the Rule B attachment, noting that the third party had already commenced suit against the plaintiff and sought security from plaintiff for the full amount of the claim.

Finally, in <u>Staronset Shipping</u>, a plaintiff vessel owner brought a Rule B attachment action against the vessel's charterer in support of its indemnity claim with respect to a stevedore's action against the vessel for services provided in removing cargo from the vessel. The court permitted the attachment to stand. In that case, however, the stevedore had already commenced an action against the vessel owner, the vessel was arrested, and the vessel owner was required to post security to have the vessel released.

In each of these cases, unlike the present action, proceedings had already been commenced against the party seeking attachment, and actual damages had been sustained. In fact, in <u>Navalmar</u>, Judge Hellerstein upheld the Rule B attachment with respect to the vessel owner's indemnity claim for the specific reason that the vessel owner had already posted substantial security in an action commenced by cargo interests. Judge Hellerstein noted:

> I find in the case before me that plaintiff Navalmar's claim in the London arbitration for indemnity against WGSR, the charterer, states a prima facie admiralty claim. Navalmar, having been required to file a million dollar bank guarantee in the Aden Commercial Court to secure the consignee of the goods for damaged cargo during an ocean voyage aboard the

8

> M/V Patara while it was chartered to WGSR, has a direct
> interest in securing its claim of indemnity against WGSR. In
> effect, Navalmar has had to prepay a debt owed by it or
> WGSR, as may be determined, and should have the right by
> attachment to secure its claim against WGSR for indemnity,
> just as the consignee of the goods gained security against
> Navalmar by arresting the vessel owned by Navalmar.

Navalmar, at 14.

In upholding the attachment, Judge Hellerstein was careful to distinguish Sonito and other cases in which the courts have properly held that a charter party indemnity claim is too speculative to warrant a Rule B attachment:

> In Sonito and Bottiglieri, however, there had been no ship
> arrests or equivalent provisional remedy to secure payment by
> a vessel owner of a claim of damaged cargo. Nor had the
> plaintiff in those cases secured an interim award in an arbitral
> hearing making findings of facts favorable to the plaintiff's
> case. Navalmar's case is different. Navalmar, in effect, has
> prepaid the full claim of the consignee by order of the Arden
> Commercial Court, for the credit of WGSR as well as of
> itself, and seeks to secure its claim for indemnity against
> WGSR. The conditions of this case, flowing from litigation
> and a ship arrest in the Aden Commercial Court and a
> consequent arbitration in London, are significantly different
> from the conditions of the Sonito, Bottiglieri, and like cases.
> The parties have cited no precedent to suggest that Clause 4
> of the ICA should apply where a vessel owner has had to
> prepay an obligation potentially owed by the charterer for
> goods damaged in an ocean voyage arranged by the charterer.

Navalmar, at 17, 18. (footnote omitted)

The present case falls squarely within the vast majority of decisions in this District, such as Sonito, that have held that an unaccrued charter party indemnity claim cannot form the basis of a Rule B attachment. In this case, no suit or proceeding has been commenced against the vessel owner by cargo interests, the vessel has not been arrested,

9

plaintiff's property has not been attached, and plaintiff has not been required to post security. In essence, there has been no payment by plaintiff with respect to the alleged cargo claim, and plaintiff has suffered no loss whatsoever. In fact, under the facts of the present case, it may well be that in London arbitration subject to English law, the plaintiff may be fully liable for the cargo claims pursuant to the terms of the charter party and the incorporated NYPE Inter Club Agreement in the event the evidence establishes that damage to cargo resulted from salt water rust and/or plaintiff's breach of its obligations to provide a seaworthy vessel, or if liability arose from plaintiff authorizing the vessel's sub-charterer to sign bills of lading on behalf of the vessel's master without giving prior notice to defendant.

At pages 19 – 21 of its memorandum of law, plaintiff also argues, in the alternative, that the court should exercise its equitable discretion to allow the attachment. This argument should be rejected. As Judge Haight pointed out in Sonito, it is not certain after Aqua Stoli whether the district court may exercise this discretion:

> But it is unclear whether this discretion survived the Second Circuit's decision in Aqua Stoli, which directed that a 'district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule B and E.' 460 F.3d at 445 (emphasis added). In any event, such discretion – if it still exists at all – should only be exercised under compelling circumstances, which are not present in this case.

Sonito at 543 – 544.

There are no compelling circumstances in this case to uphold the attachment of defendants' substantial assets.

10

```
```


Dated: New York, New York  
      October 24, 2007

            NOURSE & BOWLES, LLP  
            Attorneys for Defendants

By: *[signature]*  
      Shaun F. Carroll (SC-9898)  
      One Exchange Plaza  
      At 55 Broadway  
      New York, New York 10006  
      (212) 952-6200