**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**PRECIOUS PEARLS, LTD.,**

        **Plaintiff,**

    - against -

**TIGER INTERNATIONAL LINE PTE LTD.; and**
**SUNWOO MERCHANT MARINE CO., LTD.,**

        **Defendants.**
------------------------------------

07 Civ. 8325 (JGK)

MEMORANDUM OPINION
AND ORDER

**JOHN G. KOELTL, District Judge:**

    The defendants, Tiger International Line Pte Ltd. ("Tiger") and Sunwoo Merchant Marine Co., Ltd. ("Sunwoo"), move pursuant to Rule E(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims to vacate an order of maritime attachment issued by this Court on September 24, 2007. On that day, the plaintiff, Precious Pearls, Ltd. ("Precious"), filed a verified complaint against the defendants, alleging an indemnity claim in the amount of $8.5 million, and seeking an ex parte order of attachment in aid of a London arbitration (the "Verified Complaint"). The Court reviewed the Verified Complaint and attorney affidavit and, after determining that the conditions of Supplemental Rule B appeared to exist, entered an order authorizing process of maritime attachment and garnishment against the assets of Tiger and Sunwoo (the "Attachment Order"). Pursuant to the Attachment Order, Precious attached several electronic funds transfers to or from the defendants, including

1

on October 5, 2007, an electronic funds transfer originated by Sunwoo in the amount of $8.5 million in the hands of J.P. Morgan Chase (the "Sunwoo Funds"). Sunwoo agreed that this $8.5 million would stand as security for the plaintiff's claims against both defendants, subject to the defendants' right to make a motion to vacate the attachment.

The defendant moved to vacate the order of attachment on October 17, 2007. For the reasons discussed below, the defendant's motion to vacate the order of attachment is **granted**.

I.

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." In order to obtain an attachment, apart from satisfying the filing and service requirements of Rules B and E, the plaintiff bears the burden of showing that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006);

<u>Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.</u>, 475 F. Supp. 2d 275, 278 (S.D.N.Y. Oct. 23, 2006). The Court must vacate an attachment if the plaintiff fails to sustain its burden of demonstrating that the requirements of Rules B and E are satisfied. <u>Aqua Stoli</u>, 460 F.3d at 445.

II.

In the Verified Complaint, Precious asserts the following facts. Precious chartered the M/V Worada Naree (the "Vessel") to Tiger by a charter party dated on or about April 11, 2007 (the "Charter"). (Verified Complaint ¶ 5.) Sunwoo guaranteed the performance of Tiger under the Charter by letter of guaranty dated April 16, 2007 (the "Guaranty"). (Verified Complaint ¶ 6.) A bill of lading was subsequently issued with respect to a cargo of hot-rolled reinforcing steel bars and/or other steel cargo for carriage from Changshu Port, China to Jeddah Port, Saudi Arabia. (Verified Complaint ¶ 8.) The bill of lading reflected substantial pre-existing rust and damage and other conditions. (Verified Complaint ¶ 8.)

After the cargo had arrived at Jeddah, Tiger requested that the plaintiff agree to release the cargo without presentation of the original bill of lading. In consideration of the plaintiff's agreement, and consistent with Clause 56 of the Charter, Tiger issued a letter of indemnity to the plaintiff

dated June 8, 2007 (the "Letter of Indemnity"). (Verified Complaint ¶¶ 9-10.) The owners of the cargo subsequently presented a claim to the plaintiff for damage to the discharged cargo, based on a clean bill of lading the owners alleged they had been issued reflecting that the cargo was not damaged pre-shipment and had been received in good order and condition (the "Cargo Claim"). (Verified Complaint ¶ 11.) The plaintiff alleges that Tiger fraudulently obtained the issuance of this clean bill of lading in breach of the Charter, and as a result the plaintiff faces substantial financial exposure on the Cargo Claim. (Verified Complaint ¶¶ 12-13.) The plaintiff asserts that Tiger is obligated to indemnify the plaintiff for any damages it is required to pay in connection with the Cargo Claim based on the Charter and the Letter of Indemnity. (Verified Complaint ¶¶ 14, 16.) The plaintiff further asserts that Sunwoo is obligated to indemnify the plaintiff based on the Guaranty. (Verified Complaint ¶¶ 15-16.)

The Charter between Precious and Tiger is governed by English law. (Carroll Aff., Ex. D at Clause 66.) The Charter also states that "[c]argo claims as between the owners and the charterers shall be settled in accordance with the Inter-Club New York Produce Exchange Agreement" as amended in September 1996." (Carroll Aff., Ex. D at Clause 58.) The Guaranty and the Letter of Indemnity both state that they are to be construed

4

in accordance with English Law.  (Srinivas Aff. Ex. 4. at ¶ 7; Ex. 8 at ¶ 7.)

### III.

The parties agree that the only issue presented by the defendants' motion to vacate is whether the plaintiff has asserted a valid prima facie admiralty claim.  The defendants' argue that the attachment should be vacated as premature because it is based on a contingent indemnity claim for breach of a charter party, and is therefore unripe under English law and fails to state a proper maritime claim as required by Rule B of the Supplemental Rules.

As an initial matter, contingent indemnity claims for breach of a charter party fail to state a valid prima facie maritime claim under English Law.  See, e.g., Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532, 543 (S.D.N.Y. 2007); see also Bottiglieri Di Na Vigazione SPA v. Tradeline LLC, 472 F. Supp. 2d 588, 590-91 (S.D.N.Y. 2007); T & O Shipping Ltd. v. Lydia Mar Shipping Co., 415 F. Supp. 2d 310 (S.D.N.Y. 2006).  In this case, the plaintiff has not alleged that it has paid or settled the cargo damage claim or that the cargo receivers have demanded security from the plaintiff or initiated any legal proceedings against the plaintiff.  Therefore, to the extent the plaintiff argues that its claim for

5

indemnity is based on a breach of the Charter, the plaintiff's claim is unripe under English law and therefore the plaintiff has failed to state a valid prima facie maritime claim.

To the extent that the plaintiff argues that its claim is for express indemnity based on the Guaranty or the Letter of Indemnity, this claim is also premature.  The Letter of Indemnity states:

> To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability loss or damages of whatsover [sic] nature which you may sustain by reason of delivering the goods into Port/Customs/Agents custody in accordance with our request.

(Srinivas Aff. Ex. 8 at ¶ 3.)  The Guaranty states:

> To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature whch [sic] you may sustain by reason of non-performance and/or any breach of the captioned charterparty.

(Id. Ex. 4 at ¶ 2.)

To date, no lawsuit or arbitration has been commenced against the plaintiff, and there has been no determination of liability against the plaintiff.  Therefore, the plaintiff has not "sustain[ed]" any liability under the terms of the Letter of Indemnity or the Guaranty, and therefore there is no valid prima facie admiralty claim for indemnity under the express provisions of the Letter of Indemnity or the Guaranty.  See County and Dist. Props. Ltd. v. Jenner & Sons and Others, [1976] 2 Lloyd's Rep. 728, 735-36 ("[A]n indemnity against a breach, or an act,

6

or an omission, can only be an indemnity against the harmful consequences that may flow from it, and I take the law to be that the indemnity does not give rise to a cause of action until those consequences are ascertained.").[1]

The Court notes that the Letter of Indemnity contains a provision which states: "In the event of a proceeding being commenced against you or any of your servants or agents in connection with the delivery of the goods as aforesaid to provide you or them from time to time with sufficient funds to defend the same."  (Srinivas Aff. Ex. 8 at ¶ 3.)  The Guaranty contains a similar clause.  (Srinivas Aff. Ex. 4 at ¶ 3.)  If such an proceeding were commenced against the plaintiff, it appears that the plaintiff would at least be entitled to security for such funds.

---

[1] In arguing that its claim for express indemnity is ripe, the plaintiff relies on Bosma v. Larsen, [1966] 1 Lloyd's Rep. 22.  In Bosma, Justice McNair found that the specific express indemnification provision at issue in that case "imposes the obligation to indemnify against the incurring of a liability, not the discharge of that liability by payment or the determination of that liability by judicial process. . . . [O]n the agreed facts of this case the plaintiff's cause of action under . . . the charter-party arose at the date when the facts came into existence which created their liability to the cargo-owners."  Bosma, [1966] 1 Lloyd's Rep. 22, 28-29.  However, in County and District Properties, Justice Swanwick undertook a review of the relevant cases and noted that "it may be that the case of Bosma v. Larsen can be distinguished on its special facts; if not, I fear that I must differ from it."  County and Dist. Props., [1976] 2 Lloyd's Rep. at 735.  The Court agrees that Bosma appears to be inconsistent with the better-reasoned English cases that indicate that the plaintiff's claim for express indemnity is not ripe under English law.

IV.

Alternatively, the plaintiff asks the Court to exercise its equitable discretion to allow the attachment in respect of a contingent indemnity claim. However, it is not clear that after Aqua Stoli the Court has discretion to do so. See Sonito Shipping at 543-44 ("[I]t is unclear whether this discretion survived the Second Circuit's decision in Aqua Stoli, which directed that a 'district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule B and E.'"). In any event, the plaintiff has failed to establish the existence of compelling circumstances justifying the exercise of such discretion. See id.; Bottiglieri, 472 F. Supp. 2d at 591.

CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed they are either moot or without merit. Therefore, the defendant's motion to vacate the attachment is **granted**. The writ of attachment is **vacated** and the Verified Complaint is **dismissed**. The vacatur and dismissal are without prejudice to the plaintiff's ability to file a subsequent complaint and application for an attachment if

8

subsequent developments show that a claim for indemnity has accrued. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
July 31, 2008

_____
John G. Koeltl
United States District Judge